Slip Op. 21-57

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **BYUNGMIN CHAE**, | |
| Plaintiff, | |
| v. | **Before: Timothy M. Reif, Judge** |
| **SECRETARY OF THE TREASURY**, | **Court No. 20-00316** |
| Defendant. | |

## <u>OPINION</u>

[Denying defendant's motion to dismiss pursuant to USCIT Rule 12(b)(1) and granting leave to plaintiff for sixty (60) days to amend his complaint and summons.]

Dated: May 7, 2021

<u>Matthew C. Moench</u>, King Moench Hirniak & Mehta, LLP of Morris Plains, NJ, for plaintiff.

<u>Justin R. Miller</u>, Attorney-in-Charge, International Trade Field Office, of New York, NY, <u>Aimee Lee</u>, Assistant Director, U.S. Department of Justice, of New York, NY, and <u>Marcella Powell</u>, Senior Trial Counsel, Civil Division, U.S. Department of Justice, of New York, NY, for defendant. With them on the brief were <u>Jeffrey Bossert Clark</u>, Acting Assistant Attorney General, and <u>Jeanne E. Davidson</u>, Director. Of counsel on the brief was <u>Mathias Rabinovitch</u>, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

"What, like it's hard?"[1]  Well, in fact, yes — over 2,000 applicants annually sit for

the Customs Broker License Exam, with a pass rate of approximately 37%.[2]

---

[1] LEGALLY BLONDE (Robert Luketic/MGM Distribution Co. 2001).

[2] U.S. Customs and Border Protection, Status Report and Fee, available at https://www.cbp.gov/trade/programs-administration/customs-brokers (last visited May 6,

* * *

Reif, Judge: Plaintiff-appellant Byungmin Chae ("Mr. Chae" or "plaintiff") brings this action against the Secretary of the Treasury ("defendant" or "Government") to challenge the decision of U.S. Customs and Border Protection ("Customs") upholding the denial of credit for certain answers on the Customs Broker License Exam ("the exam"), pursuant to 19 U.S.C. § 1641(e).[3]  Defendant requests that the U.S. Court of International Trade ("USCIT") dismiss the action for lack of subject matter jurisdiction pursuant to USCIT Rule 12(b)(1), or, alternatively, for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 5 ("Def. Br.") at 1.  In response, plaintiff claims that the Court has subject matter jurisdiction over the claim and that the Government has not shown that the complaint fails to state a claim upon which relief can be granted.  Pl.'s Br. Resp. to Mot. to Dismiss and Supp. Cross-Mot. to Am. Summons, ECF No. 12 ("Pl. Resp. Br.") at 5, 7-8.

In its motion to dismiss, the Government argues that the Court lacks subject matter jurisdiction for two reasons: first, because plaintiff filed his complaint after the statute of limitations prescribed in 19 U.S.C. § 1641(e)(1) and 28 U.S.C. § 2636(g) lapsed and, second, because plaintiff allegedly failed to comply with the terms set forth

2021) ("The bi-annual Customs broker license exam (CBLE) was administered on October 8, 2020 resulting in a 37% pass rate prior to appeal decisions.").

[3] All references to the United States Code are to the 2018 edition, unless otherwise stated.

in 28 U.S.C. § 1581(g)(1) and 28 U.S.C. § 2632(a), which call for summons and

complaint to be filed concurrently with a clear identification of defendants in the action.

Def. Br. at 7-8.  The Government argues in the alternative that plaintiff's complaint fails

to state a claim upon which relief can be granted under USCIT Rule 12(b)(6) because

relief is barred by the applicable statute of limitations.  *Id*. at 10.

Plaintiff cross-motions for a denial of the Government's motion to dismiss and

requests leave to amend the summons.  Pl. Resp. Br. at 1, 5.  Plaintiff claims that the

statute of limitations is non-jurisdictional and that Customs' misleading actions favor the

application of equitable tolling.  *Id*. at 3.  He further argues that the court should allow

him to rectify the deficiencies of his pleadings under USCIT Rule 3(e) and that the

interests of justice call for leniency.  *Id*. at 6-7.  Additionally, plaintiff argues that his

complaint does not fail to state a claim because the Government has not alleged any

substantive deficiencies in it.  *Id*. at 7.  He contends that the fact that the Government

has not alleged any substantive deficiencies in plaintiff's complaint should defeat the

Government's procedural claims.  *Id*.

After review of the filings and applicable law, this court denies defendant's motion

to dismiss pursuant to USCIT Rule 12(b)(1) for lack of subject matter jurisdiction.[4]  The

---

[4] "A court presented with a motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and
12(b)(6) must decide the jurisdictional question first because a disposition of a Rule
12(b)(6) motion is a decision on the merits, and therefore, an exercise of
jurisdiction." *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*,
915 F. Supp. 2d 574, 588 (S.D.N.Y. 2013) (quoting *Homefront Organization, Inc.
v. Motz*, 570 F. Supp. 2d 398, 404 (E.D.N.Y. 2008) (internal quotation marks omitted)).
The Federal Rules of Civil Procedure and USCIT Rules generally parallel one another.

court grants plaintiff's request for leave to amend his claim under USCIT Rule 3(e) to

bring the complaint and summons into compliance with USCIT Rule 10(a) (providing

that "every pleading must have a caption with the court's name, a title, a court number

and a Rule 7(a) designation").  It is premature for the court to rule on defendant's motion

to dismiss pursuant to USCIT Rule 12(b)(6) because the court offers plaintiff leave to

amend his complaint and summons, which in their current form fail to state a claim upon

which relief can be granted.  At this time, the court grants plaintiff sixty (60) days to

amend his complaint to bring it into compliance with the procedural requirements of

USCIT Rule 10(a) and sua sponte invites plaintiff to amend his complaint within sixty

(60) days to bring it into compliance with the substantive requirements of USCIT Rule

12(b)(6).

## BACKGROUND

Plaintiff originally attempted to file his complaint before the Court on March 4,

2020, requesting a review of his Customs Broker License Exam responses.  Pl. Resp.

Br. at 1.  The complaint was received on March 6, 2020.[5]  *See* Byungmin Chae Compl.

Appealing Exam Results, ECF No. 2 ("Complaint").  It is unclear what exactly

---

*See United States v. Ziegler Bolt & Parts Co.,* 19 CIT 507, 514, 883 F. Supp. 740, 747
(1995) ("Because the Court's rules are substantially the same as the Federal Rules of
Civil Procedure (FRCP), this Court has found it appropriate to consider decisions and
commentary on the FRCP for guidance in interpreting its own rules.") (footnote and
citation omitted).

[5] A shipping receipt enclosed in plaintiff's electronic filing states: "[y]our item was
delivered to the front desk, reception area, or mail room at 1:34 pm on March 6, 2020 in
NEW YORK, NY 10278."  Byungmin Chae Compl. Appealing Exam Results, ECF No. 2
("Complaint").

precipitated such a lengthy delay between his filing and the Court's docketing; however,

the court notes that plaintiff's original filing coincided with the onset of the COVID-19

pandemic.  Plaintiff then filed electronically on September 11, 2020.  Pl. Resp. Br. at 2.

At that time, the case was docketed with the USCIT.  *See* Complaint at 1.

        Mr. Chae sat for the exam on April 25, 2018.  *See* Complaint.  By letter dated

May 18, 2018, Customs notified Mr. Chae that he had failed the exam with a score of

65% — 10% below the required 75% passing score.  Pl. Resp. Br. at 1.  Mr. Chae then

appealed his result to the Broker Management Branch ("BMB") of Customs.  *Id.*; *see

also* 19 C.F.R. § 111.13(f) (explaining that an individual can appeal results to the BMB).

        By letter dated August 23, 2018, the BMB informed Mr. Chae that, upon further

review, his score improved by two questions, giving him a 67.5% — still short of the

75% required to pass.  Pl. Resp. Br. at 1.  Mr. Chae then requested review of the BMB's

decision by Customs' Executive Assistant Commissioner ("Commissioner") on

September 28, 2018, which fell within 60 days of the initial appeal decision as required

by 19 C.F.R. § 111.13(e).  *Id.* at 2; Def. Br. at 3.

        On October 18, 2018, Mr. Chae moved to Nebraska, and he set up mail

forwarding for his former New York address.  Pl. Resp. Br. at 2.  The Commissioner

upheld the BMB's decision by letter dated May 23, 2019, since the score still fell below

a passing grade.  *Id.*  However, Mr. Chae claims never to have received the BMB's

letter because it was sent to his New York address.[6]  *Id.*  When Mr. Chae followed up

---

[6] There also is no documentation on the record that the letter was forwarded by the
United States Postal Service to the Nebraska residence.

with the BMB via email over the summer, he was erroneously informed on July 11, 2019, that appeals were "presently with Ruling and Regulations" — when, in fact, Customs had already issued a decision two months earlier.  Declaration of Plaintiff Byungmin Chae, Ex. A, ECF No. 12-1 ("Chae Decl.").

Following additional correspondence between Customs and Mr. Chae, on October 29, 2019, Mr. Chae finally received the May 23, 2019 letter as an email attachment — more than five months after Customs had sent it to his New York address.  Pl. Resp. Br. at 2.  The Commissioner advised Mr. Chae that he would receive credit for three additional questions, bringing his score up to 71.25%.  Def. Br. at 4.  When Mr. Chae subsequently inquired how to appeal that decision, Customs informed him on October 31, 2019, that "[t]here is no 3rd appeal."  Pl. Resp. Br. at 2. Mr. Chae pursued no further action at that time because he believed that he had no further recourse or ability to appeal the decision.  *Id.*

However, an applicant may seek review of an appeal of his Customs Broker License Exam results in this Court by filing an action within 60 days of the issuance of that decision.  19 U.S.C. § 1641(e)(1); 19 U.S.C. § 2636(g).  "Upon learning that he was mislead [sic] by [Customs]," Mr. Chae subsequently sought to rectify the situation and filed an appeal with the USCIT dated March 4, 2020.[7]  Pl. Resp. Br. at 1; *see also* Chae Decl. at 2, ECF No. 12-1.

---

[7] Mr. Chae estimates that this occurred in late January or early February. Teleconference, ECF No. 17 at 2:44-3:44.

As noted, the Commissioner upheld the BMB's decision by letter dated May 23,

2019.  Chae Decl., Ex. A.  Mr. Chae first attempted to file with this Court on March 4,

2020, Chae Decl., ¶ 10, and then the USCIT docketed an electronic copy of this filing on

September 11, 2020, almost a year and a half after Customs issued its decision on Mr.

Chae's appeal.  Pl. Resp. Br. at 2.  The threshold issue before this court, then, is

whether the Court retains subject matter jurisdiction over the dispute given the duration

of time that elapsed from May 23, 2019 to the date of Mr. Chae's filing before this Court.

### Subject Matter Jurisdiction

### STANDARD OF REVIEW

Adjudication of a case before the Court is not proper unless the court

has subject matter jurisdiction over the claims presented.  *See Steel Co. v. Citizens for

a Better Env't*, 523 U.S. 83, 94-95 (1998).  Whether jurisdiction exists is a question of

law.  *Sky Techs. LLC v. SAP AG,* 576 F.3d 1374 (Fed. Cir. 2009).  A plaintiff bears the

burden of establishing subject matter jurisdiction.  *See Norsk Hydro Can., Inc. v. United

States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006).

This Court has limited jurisdiction and, absent contrary evidence, must presume

that a cause of action lies outside of the Court's jurisdiction.  *Kokkonen v. Guardian Life

Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  When reviewing a motion to dismiss for lack

of subject matter jurisdiction, the Court proceeds according to whether the motion

"challenges the sufficiency of the pleadings or controverts the factual allegations made

in the pleadings."  *H & H Wholesale Servs., Inc. v. United States*, 30 CIT 689, 691, 437

F. Supp. 2d 1335, 1339 (2006).

The absence of a valid cause of action does not defeat the Court's subject matter jurisdiction. *See, e.g., Bell v. Hood*, 327 U.S. 678 (1946). In fact, even an arguable cause of action suffices. *Id*. To avoid dismissal in whole or in part for lack of subject matter jurisdiction, a plaintiff must "allege in his pleading the facts essential to show jurisdiction." *See McNutt v. Gen. Motors Acceptance Corp*., 298 U.S. 178, 189 (1936). In resolving a jurisdictional question, the Court must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party. *See Warth v. Seldin,* 422 U.S. 490, 501 (1975).

## LEGAL FRAMEWORK

28 U.S.C. § 1581(g)(1) establishes exclusive subject matter jurisdiction over the review of a denial of a customs broker's license. "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review — (1) any decision of the Secretary of the Treasury to deny a customs broker's license under section 641(b)(2) or (3) of the Tariff Act of 1930, or to deny a customs broker's permit under section 641(c)(1) of such Act, or to revoke a license or permit under section 641(b)(5) or (c)(2) of such Act." 28 U.S.C. § 1581(g)(1).

28 U.S.C. § 2636(g) and 19 U.S.C. § 1641(e) govern the time limits for bringing a section 1581(g)(1) action. The appeal of any decision of the Secretary denying a license must be filed in this Court "within 60 days after the issuance of the decision or order." 19 U.S.C. § 1641(e)(1). Tolling the statute of limitations is possible when the statutes are non-jurisdictional. *See John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 134 (2008) (instructing that the Court may "toll the time period in light of

special equitable considerations").  In such cases, equitable tolling may be appropriate if the delay is: (1) caused by extraordinary circumstance; and, (2) the plaintiff exercises due diligence in preserving their rights to the claim.  *See Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990).

To commence an action, a plaintiff must file a concurrent summons and complaint.  *See* USCIT R. 3(a)(3).  28 U.S.C. § 2632(a) dictates that, "a civil action in the Court of International Trade shall be commenced by filing concurrently with the clerk of the court a summons and complaint, with the content and in the form, manner, and style prescribed by the rules of the court."  USCIT Rule 3(e) provides the court with discretion to allow parties to amend pleadings and specifies that, "[t]he court may allow a summons to be amended at any time on such terms as it deems just, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the amendment is allowed."

**DISCUSSION**

**I.      Positions of the Parties**

Plaintiff seeks judicial review of Customs' decision regarding his exam score.  Pl. Resp. Br. at 2.  However, the Government states that Customs' decision is final and conclusive because plaintiff's action is time-barred under 28 U.S.C. § 2636(g) and 19 U.S.C. § 1641(e)(6).  Def.'s Reply Mem. in Supp. of Mot. to Dismiss and in Opp. to Pl.'s Mot. to Am. Summons, ECF No. 15 ("Def. Reply Br.") at 2.  Consequently, the Government maintains that this court lacks jurisdiction over the action.  *Id.*

Plaintiff raises two issues to challenge the Government's position.  The first issue is equitable tolling.  Plaintiff states that the principle of equitable tolling applies in this situation because Customs' "misrepresentation" caused him to miss the statutory deadline to appeal.  Pl. Resp. Br. at 4.  Plaintiff argues that he received his exam results from the Commissioner after the sixty-day period for appeal had run and, once he received them, he was told that an appeal was barred.  *Id*.  Plaintiff argues that he actively pursued judicial remedies — by filing with the USCIT — once he realized that an appeal to the USCIT was possible.  *Id*.

The Government claims that equitable tolling is not applicable here because no governmental wrongdoing occurred.  Def. Reply Br. at 2.  Further, the Government portrays Customs' communication as "accurately describ[ing] the administrative process."  *Id*. at 3.  Separately, the Government argues that the duration of time that elapsed from Customs' decision issued on May 23, 2019 — received by Mr. Chae on October 29, 2019 — to the USCIT docketing Mr. Chae's filing on September 11, 2020, demonstrates a lack of due diligence on his part.  *Id*. at 6.

A second issue concerns the lack of concurrent filing of plaintiff's summons and complaint.  An action brought under 28 U.S.C. § 1581(g)(1) must be commenced by filing a summons and complaint concurrently with a clear identification of the defendant in the action.  28 U.S.C. § 2632(a).  The Government argues that plaintiff's failure to satisfy the requirements of concurrent filing of summons and complaint under 28 U.S.C. § 2632(a) and the correct identification of defendant should result in dismissal for lack of jurisdiction or failure to state a claim for relief.  Def. Reply Br. at 7-8 (stating that one of

the requirements for "suing the United States in this court is that the action must be 'commenced by filing concurrently with the clerk of the court a summons and complaint, with the content and in the form, manner, and style prescribed by the rules of the court.'" (citing 28 U.S.C. § 2632(a))).

In turn, plaintiff argues that his initial summons satisfies the basic jurisdictional requirements of 28 U.S.C. § 2632(a) and that he should be permitted to amend his pleading to bring it into compliance with the formal requirements of 28 U.S.C. § 2632(a) and USCIT Rule 3.  Pl. Resp. Br. at 6.  Plaintiff argues further that this court has discretion to allow him to amend the summons and should not dismiss his complaint, as it would deny plaintiff his right of access to the courts.  *Id.* at 7.

## II.    Analysis

Plaintiff's argument in favor of equitable tolling raises three key issues: (1) whether the statute of limitations governing plaintiff's delay in filing is non-jurisdictional; (2) if it is, whether the elements required for equitable tolling are present; and, (3) whether plaintiff may amend the procedural defects of his pleadings to meet the requirements of the USCIT.  After careful consideration, this court answers all three queries in the affirmative and the court denies the Government's motion to dismiss under USCIT Rule 12(b)(1).

Turning to the first key issue, the time bars set forth in 19 U.S.C. § 1641(e) and 28 U.S.C. § 2636(g) are non-jurisdictional.  Accordingly, they do not divest the court of jurisdiction and plaintiff's complaint may be subject to equitable tolling, provided that the

two necessary elements — (1) extraordinary circumstances and (2) diligence — are
met.  The court determines that they are.

        USCIT Rule 3(e) states that the court may allow parties to amend a summons.
USCIT Rule 3(e) calls further for leniency and allowing plaintiff to amend the summons
"unless it clearly appears that material prejudice would result to the substantial rights of
the party against whom the amendment is allowed" (in this case, the Government).
*See, e.g., Kelley v. Sec'y U.S. Dept. of Lab.,* 812 F.2d 1378, 1380 (Fed. Cir. 1987)
(stating "that leniency with respect to mere formalities should be extended to a pro se
party, as was done in this case by the acceptance of Ms. Kelley's letter as a 'summons
and complaint'").

          The court concludes that exercising its discretion to allow plaintiff to amend the
summons is appropriate.

        **A.    Time Limits and Jurisdictional Statutes**

        To evaluate the validity of plaintiff's argument that equitable tolling applies to this
action under 28 U.S.C. § 1581(g)(1), the court first must determine whether the statutes
of limitations governing this claim may be tolled.  For a statute to be tolled, it must be
procedural and non-jurisdictional.  *See Henderson ex rel. Henderson v. Shinseki,* 562
U.S. 428, 435 (2011) ("[A] rule should not be referred to as jurisdictional unless it
governs a court's adjudicatory capacity, that is, its subject-matter or personal
jurisdiction.").  In the case of a "non-jurisdictional" statute of limitations, the court may
"toll the limitations period in light of special equitable considerations."  *John R. Sand &
Gravel Co.*, 552 U.S. at 134.

The statutes that outline the time bar of a claim under 28 U.S.C. § 1581(g)(1) are

procedural and non-jurisdictional.  § 1581(g)(1) provides that "the Court of International

Trade shall have exclusive jurisdiction of any civil action commenced to review any

decision of the Secretary of the Treasury to deny a customs broker's license . . . ."  The

statutes of limitations governing this claim in 19 U.S.C. § 1641(e)(1) and 28 U.S.C. §

2636(g) are non-jurisdictional as they are "quintessential claim-processing rules."  *See*

*Henderson ex rel.* at 435 ("These are rules that seek to promote the orderly progress of

litigation by requiring that the parties take certain procedural steps at certain specified

times.").

Both the Government and plaintiff agree that a prima facie case of a dispute

under 28 U.S.C. § 1581(g)(1) exists.  *See* Def. Br. at 7; *see also* Pl. Resp. Br. at 5.

However, the Government argues that plaintiff's complaint under that section is time-

barred and, accordingly, that this court does not possess jurisdiction to consider the

claim because the claim was not filed within 60 days of the decision's issuance.  Def.

Br. at 7 (citing 19 U.S.C. § 1641(e)(1)).

Plaintiff disputes the Government's motion to dismiss, contending that the

principle of equitable tolling applies.  Pl. Resp. Br. at 3.  The Supreme Court has found

that a non-jurisdictional federal statute of limitations is normally "subject to a 'rebuttable

presumption' in *favor* 'of equitable tolling.'"  *Holland v. Florida*, 560 U.S. 631, 645-46

(2010) (quoting *Irwin*, 498 U.S. at 95-96) (emphasis supplied).

Additionally, the Supreme Court has clarified that "most time bars, even if

mandatory and emphatic, are nonjurisdictional."  *United States v. Kwai Fun Wong*, 575

U.S. 402, 403 (2015); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) (stating that the Court will not conclude that a time bar is jurisdictional unless Congress provides a "clear statement" to that effect).  The Court ordinarily presumes that federal limitations periods are subject to equitable tolling unless tolling would be inconsistent with the statute.  *Young v. United States*, 535 U.S. 43, 49 (2002).  Here, the language of 19 U.S.C. § 1641(e)(1) and 28 U.S.C. § 2636(g) does not indicate that the statutes are jurisdictional, nor that tolling is inconsistent with the statutes.

In light of the foregoing, the court concludes that the time bars prescribed in 19 U.S.C. § 1641(e)(1) and 28 U.S.C. § 2636(g) are non-jurisdictional and subject to equitable tolling.

### B.    Equitable Tolling

Plaintiff requests that the court apply equitable tolling in this case because he actively pursued all reasonable steps to prosecute his case and, notwithstanding that his pleading was untimely, the delay is partially attributable to misleading information provided by Customs.  *See* Pl. Resp. Br. at 4-5.  The Government claims that equitable tolling is not applicable because no governmental wrongdoing occurred, Def. Reply Br. at 3, and that the duration of the gap between Customs' decision and Mr. Chae's filing demonstrates a lack of due diligence.  *Id*. at 6.

The court first will discuss the appropriate standard for equitable tolling. Equitable tolling requires that a plaintiff establish: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."   *Holland,* 560 U.S. at 649 (internal quotation marks omitted).

Plaintiff must meet both elements to meet the standard for equitable tolling.  *See*

*Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 257 (2016)

(characterizing "equitable tolling's two components as 'elements,' not merely factors of

indeterminate or commensurable weight").  The Federal Circuit has explained that

plaintiff must demonstrate due diligence during the extraordinary circumstance period.

*Checo v. Shinseki*, 748 F.3d 1373, 1379-80 (Fed. Cir. 2014) (adopting the "stop-clock

approach" in which the "clock measuring the . . . appeal period is 'stopped' during the

extraordinary circumstance period and starts ticking again only when the period is

over").

         In this case, there were two distinct periods of time during which extraordinary

circumstances "stood in [plaintiff's] way" over the period between Customs' issuance of

the decision on May 23, 2019 and plaintiff's filing with this Court in March 2020.[8]  *See*

*Menominee Indian Tribe of Wisconsin*, 577 U.S. at 256-257.  These circumstances —

the non-delivery of Customs' letter and Customs' misleading statements — affected

plaintiff's ability to file his complaint in a timely manner.  *See* Pl. Resp. Br. at 2.  Second,

plaintiff has demonstrated due diligence in pursuing his claim by following up with

Customs prior to his receipt of the letter.  *See id.*  Further, once he realized that a

judicial appeal was possible, he demonstrated diligence in preserving his rights.  *See id.*

Accordingly, the court concludes that the circumstances of plaintiff's case justify the

application of equitable tolling.

---

[8] Plaintiff's complaint was received by the Court on March 6, 2020.  *See* Complaint at 1.
Pursuant to USCIT Rule 5(4): "Filing is complete when received . . . ."

### 1.    First Period (May 23, 2019 to October 29, 2019)

Customs issued its decision on Mr. Chae's appeal on May 23, 2019; however, Mr. Chae did not become aware of the BMB's decision until October 29, 2019. On May 23, 2019, the Commissioner sent a letter upholding the BMB's decision to plaintiff's former address in New York. Def. Br. at 4. Plaintiff set up for his mail to forward from there to his Nebraska address, but he never received the BMB's letter. Pl. Resp. Br. at 2.

During this time, plaintiff followed up with Customs to inquire as to the status of his appeal. For example, on June 21, 2019, plaintiff emailed Customs requesting an update. Chae Decl, Ex. A. Weeks later, on July 11, 2019, Customs emailed him back to inform him: "The second appeals for October 2018 are presently with Rulings and Regulations, we are hoping to have finalized prior to the next exam."[9] *Id.* It was not until plaintiff followed up again on October 28, 2019 that Customs then emailed him a copy of the letter on October 29, 2019. *Id.*

The first question before the court is whether the circumstances that led to the passage of 159 days from the issuance of the decision to the date on which Mr. Chae became aware of the decision were extraordinary and caused delay to plaintiff's filing. The second question is whether Mr. Chae exercised due diligence during this period. The court finds that both elements are met.

---

[9] Notably, this information was incorrect, as Customs — unbeknownst to Mr. Chae and, apparently, unbeknownst to the Customs officer with whom he was corresponding — had already made a decision. *See* Chae Decl., Ex. A.

### a.      Extraordinary Circumstance

Meeting the "extraordinary circumstances" prong of the test requires the showing of some "external obstacle" to timely filing — a showing that "some extraordinary circumstance stood in [plaintiff's] way." *Menominee Indian Tribe of Wisconsin*, 577 U.S. at 256-257.  "[This] prong is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Id.* (emphasis in original).  The Federal Circuit has emphasized that equitable tolling is not "limited to a small and closed set of factual patterns." *Mapu v. Nicholson*, 397 F.3d 1375, 1380 (Fed. Cir. 2005).  Equitable tolling should not be determined based on whether a "particular case falls within the facts specifically identified in . . . prior cases." *Toomer v. McDonald*, 783 F.3d 1229, 1239 (Fed. Cir. 2015) (citations omitted).  Instead, the Federal Circuit has assessed such situations on a "case-by-case basis," with "flexibility" and "avoiding mechanical rules." *Id.* (citing to *Holland*, 560 U.S. at 631).

This court does not rely on whether the facts of any particular case match a prior instance of equitable tolling.  *See James v. Wilkie*, 917 F.3d 1368, 1374 (Fed. Cir. 2019) (overturning a categorical ban that foreclosed the possibility that a fallen mailbox flag could constitute an extraordinary circumstance because the "Veterans Court focused too narrowly on whether Mr. James's case fell into one of the factual patterns of past cases . . . .").  However, the court finds instructive the Federal Circuit's contemplation of a similar scenario, during which the Federal Circuit explained: "If a mailing delay resulted in a claimant receiving notice . . . after the appeal period has already run, or nearly expired, equitable tolling might well be available." *Palomer v. McDonald*, 646

Fed. Appx. 936, 940 (Fed. Cir. 2016) (upholding denial of equitable tolling because a 14-day delay due to a delay from international mail service was not an extraordinary circumstance).

The circumstances that led to the passage of 159 days from the issuance of the decision to the date on which Mr. Chae became aware of the decision were both outside of Mr. Chae's control and extraordinary.  Plaintiff set up mail forwarding with the United States Postal Service and, for reasons beyond his control, he did not receive the letter.  Chae Decl., ¶ 6.  Such a circumstance is extraordinary because individuals may typically rely on the United States Postal Service to forward and deliver mail.

This circumstance directly impacted Mr. Chae's ability to appeal his exam results before this Court within the 60-day statutory time frame.  *See* 19 U.S.C. § 1641(e)(1) ("[An] applicant . . . may appeal . . . by filing in the Court of International Trade, within 60 days after the issuance of the decision or order, a written petition requesting that the decision or order be modified or set aside in whole or in part."); *see also* 19 U.S.C. § 2636(g) ("A civil action contesting the denial . . . of a customs broker's license . . . is barred unless commenced in accordance with the rules of the Court of International Trade within sixty days after the date of the entry of the decision or order of such Secretary.").

The court finds that, accordingly, Mr. Chae's circumstance constitutes an extraordinary circumstance within the meaning of *Holland*.  *See Holland*, 560 U.S. at 649.

###### b.    Due Diligence

The Supreme Court has underscored the significance of a plaintiff's due diligence in pursuing a claim. *Holland*, 560 U.S. at 653 (explaining that "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence'") (citations omitted). Plaintiff "must only demonstrate due diligence during the extraordinary circumstance period . . . ." *Checo*, 748 F.3d at 1380. In determining whether plaintiff's actions constitute due diligence, this court conducts a fact-specific inquiry, guided by reference to the hypothetical reasonable person. *Former Emps. of Siemens Info. Commc'n Networks, Inc. v. Herman*, 24 CIT 1201, 1208-11, 120 F. Supp. 2d 1107, 1114-16 (2000).

The Government argues that plaintiff did not exercise the requisite level of diligence. Def. Reply Br. at 6 (citing to *Jackson v. United States*, 751 F.3d 712, 720 (6th Cir. 2014) (declining to apply equitable tolling when plaintiff did not receive agency's denial letter as a result of not updating the agency with a correct mailing address); *Foss v. National Marine Fisheries Serv.*, 161 F.3d 584, 590-91 (9th Cir. 1998); *Hill v. John Chezik Imports*, 869 F.2d 1122, 1124 (8th Cir. 1989)). In this regard, during a party conference, the Government first argued that plaintiff should have notified Customs of his change of address, then conceded that no regulation or statute requires an applicant to notify Customs of a change of address. Teleconference, ECF No. 17 at 23:22-23:40. The Government concluded by asserting that, in its view, it was "common sense" for plaintiff to have done so. *Id.* at 23:00-23:22.

The court finds that plaintiff exercised due diligence in setting up a mail

forwarding system with the United States Postal Service and by attempting to contact

Customs after extensive delays by Customs and after receiving inaccurate information.

Chae Decl., ¶ 6-7.  The court views plaintiff's efforts in light of Customs' confusing email

statement on July 11, 2019, that suggested that Mr. Chae's appeal had not yet been

"finalized," when it had in fact already been completed and a notification of such had

been mailed to his prior address on May 23, 2019.  *See id*., Ex. A.  Plaintiff had not

received a letter in the mail from Customs, nor did he have any reason to believe that

Customs had already sent one.  *See id.*  The court finds that plaintiff's consistent follow

up with Customs demonstrates that he acted with due diligence in these circumstances.

The court does not accept the Government's assertion that "it is incumbent on

plaintiff to actually file a change of address with Customs."  Teleconference, ECF No. 17

at 8:49-9:07.  While it may have been advisable, no statutory or regulatory requirement

that mandated that plaintiff do so, and it was reasonable for plaintiff to rely instead on a

United States Postal Service change of address to forward his mail.  This case differs

from equitable tolling cases in other contexts, in which there is a responsibility to inform

the relevant agency of a change of address.  *See, e.g., St. Louis v. Alverno College*,

774 F.2d 1315, 1316 (7th Cir. 1984) (noting that there has been a regulatory

requirement since 1977 for "people who have filed charges with the EEOC . . . to notify

the Commission of any change of address" due to a regulation which "makes mandatory

that which was dictated already by common sense"); *Carter v. Hickory Healthcare Inc.*,

905 F.3d 963, 969 (6th Cir. 2018) (explaining that "[t]he relevant [EEOC] regulations still

required [plaintiff] to 'provide the Commission with notice of any change in address'").

Accordingly, the court finds that the due diligence requirement is met and that

equitable tolling stopped the clock between May 23, 2019, and October 29, 2019.

### 2.    Second Period (October 31, 2019 to Early 2021)

#### a.    Extraordinary Circumstance

The second extraordinary circumstance covers the period between October 31,

2019 (when Customs' informed Mr. Chae that there was "no 3rd appeal") to late January

or early February 2020 (when plaintiff discovered that he could appeal to this Court).

When plaintiff emailed Customs on October 30, 2019, to inquire how he could appeal,

Customs informed him on the next day that "[t]here is no 3rd appeal."  Chae Decl., Ex.

B; Pl. Resp. Br. at 4.  When plaintiff subsequently learned that he could appeal to the

USCIT, he "immediately sought to rectify that situation and filed an appeal . . . ."  Pl.

Resp. Br. at 1; *see also* Teleconference, ECF No. 17 at 2:44-3:34 (in which plaintiff

clarified that he learned of the judicial review process around late January or early

February 2021).

The Government's statement was outside of Mr. Chae's control.  Further,

Customs' misleading statement to Mr. Chae for the second time was extraordinary.

Customs should be relied upon to provide accurate information when it is requested.

The Government's argument that Customs' email referred solely to administrative

remedies is unconvincing.  *See* Def. Reply Br. at 4-5.  The correspondence did not state

that there was no third *administrative* appeal.  *See* Chae Decl., Ex. B.  The court does

not share Customs' position that plaintiff — or any other ordinary person, for that matter — would recognize the difference between an administrative and a judicial remedy in that context.

Accordingly, Customs' misleading statement to Mr. Chae that "[t]here is no 3rd appeal" constitutes a second extraordinary circumstance that contributed to the lateness of his filing.

### b.    Due Diligence

As with the first time period, plaintiff exercised due diligence throughout the second time period to preserve his rights.  Once plaintiff became aware on October 29, 2019 of Customs' denial letter of May 23, 2019, he followed up the next day to inquire as to an appeal.  Chae Decl., Ex. A, Ex. B.  Accordingly, the diligence exercised by Mr. Chae here meets the second element necessary to apply equitable tolling.

The Government asserts that Mr. Chae "fails to explain what, if any, diligence he exercised between October 30, 2019 and March 4, 2020."  Gov. Reply Br. at 5.  To the contrary, Mr. Chae demonstrated diligence despite an explicit assertion by Customs — "[t]here is no 3rd appeal" — that he had no further recourse.  *See* Pl. Resp. Br. at 2.  Plaintiff argues that when Customs asserted that "there [was] no '3rd appeal . . .  the government provided misleading information which led to a delay in filing with the CIT.'"  *Id*. at 4.

Plaintiff notes correctly that the facts of his case are akin to the diligence exercised in *Former Employees of Quality Fabricating*, in which the court applied equitable tolling.  Pl. Resp. Br. at 4 (citing *Former Emps. of Quality Fabricating, Inc. v.*

*U.S. Sec'y of Lab.*, 27 CIT 419, 424, 259 F. Supp. 2d 1282, 1286 (2003)).  By contrast, the Government asserts that Mr. Chae needed to have undertaken certain additional conduct for his diligence to be equivalent to that exercised by the plaintiffs in *Former Employees of Quality Fabricating*.  Def. Reply Br. at 5.  The Government argues that plaintiff, as an applicant to become a licensed customs broker, should have researched "customs-related statutes, CBP's regulations, and the publicly available resources on CBP's website."  *Id.*

As in *Former Employees of Quality Fabricating*, here "a reasonably prudent person should be able to rely on the assurances and instructions of government officials in their field of expertise."  *Former Emps. of Quality Fabricating, Inc.*, 259 F. Supp. 2d at 1288.  Customs' explicit statement that "[t]here is no 3rd appeal" supports plaintiff's argument that he was misled and that he acted in accordance with what he believed to be true: that he had no further recourse.  *See* Chae Decl., Ex. B.  Accordingly, it was reasonable for Mr. Chae to rely on Customs' assurances to him.

Particularly in light of the erroneous information that Customs provided to Mr. Chae on multiple occasions, the court finds no reason to hold Mr. Chae to the elevated threshold with respect to diligence advocated by the Government.  Mr. Chae demonstrated diligence by pursuing an appeal with Customs and then filing with the USCIT once he realized that he could pursue judicial remedies.  Under the circumstances, given that Mr. Chae had been instructed that he had no further recourse, it is unclear what else Mr. Chae could reasonably have been expected to do.

*See id.*  In taking the steps that he did, he exercised sufficient diligence to justify the

court's application of equitable tolling to his claim.

### 3.    Summary — First and Second Periods: Extraordinary Circumstances and Due Diligence

Plaintiff's actions fulfill the two elements necessary for the court to apply

equitable tolling — diligent pursuit of rights and an extraordinary circumstance that

stood in the way of the timely pursuit of those rights — during both time periods.  *See*

*Holland*, 560 U.S. at 649.  As such, the court concludes that Mr. Chae's claim is subject

to equitable tolling.

To summarize, the stop-clock measuring the 60-day appeal period began with

Customs' issuance of the decision on May 23, 2019.  *See Checo*, 748 F.3d at 1379-80;

*see also* Chae Decl., Ex. A.  As discussed, the clock stopped during the period of the

first extraordinary circumstance — non-delivery of the BMB's letter to Mr. Chae until

October 29, 2019 — during which time plaintiff followed up with Customs regarding the

status of his appeal.  *See* Chae Decl., ¶ 6-7.  The clock was again stopped from

October 31, 2019, until late January or early February 2020 — from when Mr. Chae was

told by Customs there was "no 3rd appeal" to when he learned that he could in fact

appeal.  *See id.*, ¶ 8; *see also* Teleconference, ECF No. 17 at 2:44-3:34.  The clock

began ticking again, and Mr. Chae appropriately filed with the Court within 60 days, on

March 6, 2020.  *See* 19 U.S.C. § 1641(e)(1); *see also* 19 U.S.C. § 2636(g).

### C.    Discretion for Leave to Amend Defective Pleading

Plaintiff failed to file a concurrent summons and complaint and misidentified the

defendant in his complaint letter.  *See* Complaint at 1 (failing to identify a defendant).

The question presented is whether these errors present sufficient grounds to grant the

Government's motion to dismiss.  The court determines that they do not constitute such

grounds because plaintiff's errors are amendable in a manner that will not materially

prejudice the Government in this action.

Plaintiff must file a summons and complaint concurrently.  *See* 28 U.S.C. §

2632(a); *see also* USCIT R. 3(a).  28 U.S.C. § 2632(a) provides that, "a civil action in

the Court of International Trade shall be commenced by filing concurrently with the clerk

of the court a summons and complaint, with the content and in the form, manner, and

style prescribed by the rules of the court."  Similarly, USCIT Rule 3(a) provides that a

civil action under 28 U.S.C. § 1581(g)(1) is commenced by filing a "summons and

complaint concurrently."

However, the rules and apposite case law also affirm that the court has discretion

in the application of the statute.  USCIT Rule 3(e) states that the "court may allow a

summons to be amended at any time on such terms as it deems just, unless it clearly

appears that material prejudice would result to the substantial rights of the party against

whom the amendment is allowed."   Further, USCIT Rule 15(a) states that "a party may

amend its pleading only with . . . the court's leave.  The court should freely give leave

when justice so requires."

Similarly, the decisions of this Court support the application of leniency in the context of this case.  *See Former Emps. of AST Rsch., Inc. v. U.S. Dep't of Lab.,* 25 CIT 1391, 1391 (2001) (recalling that "briefs of *pro se* litigants are held to a less stringent standard than formal briefs filed by attorneys."); *see also, Atteberry v. United States,* 27 CIT 1070, 1075 n.15 (2003) ("[The right to self-representation] should not be impaired by harsh application of technical rules.  Trial courts have been directed to read *pro se* papers liberally." (citations omitted)).

When evaluating a plaintiff's pleadings, the court recalls that "the purpose of a summons is to provide notice to other parties of commencement of an action."  *Daimler Chrysler v. United States*, 442 F.3d 1313, 1318 (Fed. Cir. 2006).  The court considers in this light the significance of filing a concurrent summons and complaint, the incorrect identification of defendants and the possibility for amendment.

The Government contends that plaintiff's failure to file a summons and complaint concurrently bars this Court from exercising jurisdiction.  Def. Reply Br. at 8.  The Government asserts that, because plaintiff did not fulfill this requirement, his complaint must be dismissed.  *Id*.  In support, the Government recalls that in *Washington Int'l Ins. Co. v. United States,* plaintiffs filed a summons under 28 U.S.C. § 1581(a) and two years later filed a complaint alleging that the Court had jurisdiction under 28 U.S.C. § 1581(a) or, alternatively, under 28 U.S.C. § 1581(i).  Def. Br. at 8 (citing *Washington Int'l Ins. Co. v. United States*, 25 CIT 207, 212-13, 138 F. Supp. 2d 1314, 1320-21 (2001)).  The court dismissed two counts of the complaint, for which section 1581(a) jurisdiction did not exist, explaining that failure to comply with the procedural requirements for

bringing an action under section 1581(i) precluded the court from exercising jurisdiction over an otherwise legitimate basis for a legal claim.  *Washington Int'l Ins. Co*, 138 F. Supp. 2d. at 1327.

Plaintiff responds that the facts in *Washington* are readily distinguishable from those in plaintiff's appeal.  Pl. Br. at 6-7.  Plaintiff argues, in particular, that the two-year time gap in *Washington* is a much more significant length of time than the four-month gap in plaintiff's filing.  *Id.*

The court agrees with plaintiff.  In addition, the failure of the plaintiffs in *Washington* to file their summons and complaint concurrently did not constitute the principal issue before the court in *Washington.  Washington Int'l Ins. Co*, 138 F. Supp. 2d. at 1327.  The plaintiffs in *Washington* were denied jurisdiction on two complaints that plaintiffs sought to file under § 1581(i) because they were attempting to "bootstrap" them to their initial complaint under § 1581(a).  *Id.*  The court stated that it was not possible for the plaintiffs to tack on the § 1581(i) complaints using the two-year-old summons of the § 1581(a) complaint.  *Id.*  By contrast, in this case, plaintiff has filed only under § 1581(g)(1) and is attempting to modify the summons for that particular claim only.  Pl. Br. at 5-6.  In short, the facts of *Washington* are inapposite to this case.

In addition, the court is not persuaded that plaintiff's failure to identify the defendant correctly in his summons and complaint should bar the court from exercising jurisdiction.  The Government states in its reply brief that plaintiff's complaint letter does not identify a defendant.  Def. Reply Br. at 8.  The Government argues that plaintiff's letter does not qualify as a summons and that the action should be dismissed because

the letter does not name a defendant.  *See id.*; *see also* USCIT R. 10(a) (providing that

"every pleading must have a caption with the court's name, a title, a court number, and

a Rule 7(a) designation.  The caption of the summons and the complaint must name all

the parties.").  The Government relies on *AD HOC Utilities Group v. United States* to

argue that the failure to identify the parties of an action calls for a dismissal of the

action.  Def. Reply Br. at 8 (citing to *AD HOC Utilities Grp. v. United States*, 33 CIT

1284, 1291, 650 F. Supp. 2d 1318, 1327 (2009)).

      The Government's reliance on *AD HOC Utilities* is misplaced.  In that case, the

summons designated only a single plaintiff and failed to identify the group of plaintiffs

who later sought to take part in the action.  *AD HOC Utilities Grp*, 650 F. Supp. 2d at

1327.  In contrast, plaintiff in this case identified himself as the plaintiff in his summons

and complaint and there are no other plaintiffs.  *See* Complaint at 1.  The fact that

plaintiff erroneously listed Customs — rather than Treasury — as the department

against which he was bringing a complaint does not prejudice defendant. *See* USCIT R.

3(e) (specifying that a court may allow for a summons to be amended "unless it clearly

appears that material prejudice would result to the substantial rights of the party against

whom the amendment is allowed.").  Since the Department of Treasury and Customs

are both agencies of the federal government of the United States — and especially

since both are represented before this Court by the U.S. Department of Justice — the

impact of the misidentification is trivial.  In any event, the error of plaintiffs in *AD HOC

Utilities* is inapposite to this case.

Plaintiff's erroneous identification of the defendant also may be amended.  In his cover letter (which also serves as summons), plaintiff references "Customs and Border Protection," which is incorrect.[10]  Complaint at 1.  Plaintiff previously appealed to the BMB of Customs and then the Commissioner, pursuant to 19 C.F.R § 111.13(f), so his mistaken identification of Customs is reasonable.  *See* Pl. Resp. Br. at 1-2; *see also* 19 C.F.R § 111.13(f).  Moreover, the appeal before the USCIT is governed by 19 C.F.R. § 111.17(c), which does not mandate which defendant must be identified in the appeal.[11]

In most cases in which a plaintiff misidentifies the defendant, the court will order the plaintiff to amend his summons and bring the case into proper form.  *See, e.g., Odom v. Ozmint*, 517 F. Supp. 2d 764, 769 (D.S.C. 2007) (finding that *pro se* litigants' complaints, however inartfully pleaded, should be read liberally).  The court affords plaintiff this opportunity here.  Plaintiff's error is both excusable and amendable, given that the intention of his complaint is discernible.  *See* USCIT R. 3(e); *see also Haines v.*

---

[10]  The Government points out Mr. Chae's identification error but does not acknowledge its own failure to adhere to this standard in its own submissions before this court.  *See* Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 5 ("Def. Br.") at 9.  The Government names the "Department of Treasury" as the defendant in one filing and then names "the United States" in another.  *See* Def. Br.; *see also* Def.'s Reply Mem. in Supp. of Mot. to Dismiss and in Opp. to Pl.'s Mot. to Am. Summons, ECF No. 15 ("Def. Reply Br.").

[11] 19 C.F.R. 111.17(c) states: "Upon a decision of the Secretary of Homeland Security, or his designee affirming the denial of an application for a license, the applicant may appeal the decision to the Court of International Trade, provided that the appeal action is commenced within 60 calendar days after the date of entry of the Secretary's decision."

*Kerner*, 404 U.S. 519, 520-21 (1972) (holding that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers").

As stated above, USCIT Rule 3(e) anticipates that summons and pleadings may be amended in some circumstances and allows for the court to grant leave to amend. Plaintiff's misidentification does not prejudice defendant in any way here.

Considerations of equity as well as decisions of this Court weigh in favor of the court exercising its discretion to grant leave to amend the defective pleading.

## **Failure to State a Claim**

## STANDARD OF REVIEW

When the Court considers a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to USCIT Rule 12(b)(6), the allegations in the complaint must be accepted as true and should be construed favorably to the plaintiff. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal,* 556 U.S. 672, 678 (2009).  The complaint "must contain sufficient factual material to 'state a claim to relief that is plausible on its face.'"  *Husteel Co., Ltd. v. United States*, 43 CIT __, __, 375 F. Supp. 3d 1317, 1321 (2019) (quoting *Twombly*, 550 U.S. at 570).  "Allegations in a complaint must rest on a plausible legal theory to survive a motion to dismiss for failure to state a claim."  *Hutchinson Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1364 (Fed. Cir. 2016) (citing *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425-26 (2014)).

## DISCUSSION

### I.    Positions of the Parties

Neither party addresses directly whether plaintiff's complaint fails to state a claim

upon which relief can be granted due to lack of clarity.  The Government does not

address in either of its filings the question of whether a cognizable claim upon which

relief can be granted exists regardless of an applicable statute of limitations.  *See* Def.

Br.; *see also* Def. Reply Br.  Similarly, plaintiff does not address the issue in his

memorandum in opposition to the Government's motion to dismiss.  *See* Pl. Resp. Br.

Plaintiff requests leave to amend his summons but does not request leave to amend his

complaint.  *Id*. at 5.

### II.    Analysis

Plaintiff's complaint fails to state a claim upon which relief can be granted

because plaintiff did not state clearly what he is asking the court to do.  *See* USCIT R.

12(b)(6). However, the court concludes that it is appropriate sua sponte to offer him the

opportunity to seek leave to amend his complaint.

### A.    Lack of Specificity in Plaintiff's Complaint

Plaintiff's complaint does not state a claim on which relief can be granted and,

therefore, fails to meet the requirements for the commencement of an action before the

Court.  As the Government points out, "allegations in a complaint must rest on a

plausible legal theory to survive a motion to dismiss for failure to state a claim."  Def. Br.

at 6 (citing *Hutchinson Quality Furniture*, 827 F. 3d at 1364 n.4).

Plaintiff does not allege a plausible legal theory because he fails to state the relief he seeks.  Other cases concerning Customs Broker License Exam scores were filed with more precise complaints.  *See*, *e.g.*, Complaint at 4, *Kenny v. Snow*, 28 CIT 852, 401 F.3d 1359 (2004) ("Kenny Complaint"); Complaint at 9, *DePersia v. United States*, 33 CIT 1103, 637 F. Supp. 1244 (2009) ("DePersia Complaint").  For example, in *Kenny v. Snow*, the complaint stated, "Plaintiff respectfully requests he be given credit for Question No. 32 of the October 2001 Customs Broker Licensure Exam."  Kenny Complaint at 4.  Similarly, the complaint in *DePersia v. United States* stated, "Plaintiffs request that Customs Service be directed to provide credit to Plaintiffs for their answer on questions 9 [sic] and grant credit for the Plaintiff's [sic] answers on questions 17 and 19 . . . ."  DePersia Complaint at 9.

In plaintiff's initial complaint, he states that he "hereby request[s] the appeal of the following questions: Q5, Q33, Q39, Q43, Q50, Q57."  Complaint at 1.  Plaintiffs in *DePersia* and *Kenny* both specified in their complaints what actions they were requesting the court to take.  *See* Kenny Complaint at 4; *see also* DePersia Complaint at 9.  In contrast, Mr. Chae does not specify whether he seeks in his appeal that the court re-examine his answers to those questions, that the court compel Customs again to re-examine Mr. Chae's answers, or whether he seeks some other type of relief.  Without sufficient clarity regarding the type of relief sought, the court cannot determine whether the allegations supporting relief rest on a plausible legal theory.  *See* Complaint at 1.

### B.   Offer of Leave to Amend

The court's discretion to grant leave to amend a complaint is broad, and it "should freely give leave when justice so requires."  USCIT R. 15(a)(2).  In particular, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The court exercises its discretion to invite plaintiff to seek leave to amend his complaint for three reasons.  First, the *Tomoegawa* factors support the court in exercising its discretion in this case.  *See Tomoegawa (U.S.A.), Inc. v. United States*, 15 CIT 182, 186, 763 F. Supp. 614, 618 (1991) (citing *Budd Co. v. Travelers Indem. Co.*, 109 F.R.D. 561, 563 (E.D. Mich. 1986)).  Second, plaintiff may easily amend the complaint in a manner that remedies the identified deficiency.  Third, the court has the authority sua sponte to invite plaintiff to seek leave to amend his complaint in view of the fact that plaintiff has not himself sought leave to do so.  *See* Steven S. Gensler & Lumen N. Mulligan, *1 Federal Rules of Civil Procedure, Rules and Commentary*, Rule 15 (2021).

### 1.   When to Grant Leave to Amend

The court is required to consider certain factors — such as "1) the timeliness of the motion to amend the pleadings; 2) the potential prejudice to the opposing party; 3) whether additional discovery will be necessary; 4) the procedural posture of the litigation; 5) whether the omitted counterclaim is compulsory; 6) the impact on the court's docket; and 7) the public interest" — when exercising its discretion to invite a

Court No. 20-00316                                                    Page 34

plaintiff to seek leave to amend its complaint or to grant plaintiff leave to amend its

complaint.  *Tomoegawa*, 763 F. Supp. at 618.

      With respect to the first factor, a motion for leave to amend would not be

untimely.  Whether a motion for leave is timely depends upon when plaintiff learns that

his complaint fails to meet the Court's standards.  *See*, *e.g.*, *id.* at 186 ("Whether the

Government's motion to amend is timely depends upon when the Government acquired

knowledge of the facts and circumstances that form the basis of the counterclaims . . .

once the Government gained that knowledge, it had a duty to assert its counterclaims in

a timely fashion.").  Here, plaintiff has not yet been advised by the court that his

complaint fails to meet the Court's standards.  The Government does not advance such

an argument in its filings, and the court has not yet ruled on any motions related to

plaintiff's complaint.

      As to the second and fourth factors, granting a motion would not unduly prejudice

the Government.  The case has not progressed to a point at which the Government

would be prejudiced by the granting of such a motion.  For example, the Government

would not be "unfairly disadvantaged or deprived of the opportunity to present facts or

evidence which it would have offered had the amendment been timely."  *Ford Motor Co.

v. United States*, 19 CIT 946, 956, 896 F. Supp. 2d 1224, 1231 (1995) (quoting *Cuffy v.

Getty Ref. & Mktg. Co.*, 648 F. Supp. 802, 806 (D. Del. 1986)).  As in *Ford*, the

Government "faces no such problems as the amendment is based on the same

transactions or occurrences or events as the original complaint."  *See id.* at 956-57.

The fifth factor is not pertinent in this case as no counterclaim is at issue.  With

respect to the third and sixth factors, granting the motion is unlikely to lead to additional

discovery or other significant litigation and the consideration of plaintiff's claim will not

impact significantly the court's docket.  No regathering of evidence will be necessary,

and the parties will need to present few, if any, new facts, because the amended

complaint will likely be based on identical facts as the original complaint.

Finally, regarding the seventh factor, granting leave to amend is in the public

interest.  Rather than requiring plaintiff to refile his appeal by granting the Government's

motion to dismiss, granting leave to amend would likely allow plaintiff a chance at relief

for a plausible claim, as discussed further below.  Taking into account all of the

applicable factors, the *Tomoegawa* factors support the court's exercising its discretion

here.  *See Tomoegawa*, 763 F. Supp. at 618.

## 2.    The Amendment Must Remedy the Defect

The court should grant leave to amend only when amendment would likely

remedy the identified defect.  *See, e.g.*, *Foman*, 371 U.S. at 182.  Granting plaintiff the

opportunity to seek leave to amend would enable him to remedy a fatal flaw in his

complaint and, therefore, would not be futile.  The alleged circumstances of Mr. Chae's

situation are similar to the facts in cases like *Dunn-Heiser v. United States*, in which

plaintiff alleged that she did not receive a passing score on the Customs Broker License

Exam, that she petitioned Customs for credit on questions allegedly incorrectly graded

and that she appealed Customs' decision once again not to give credit for certain

questions.[12]  29 CIT 552, 554, 374 F. Supp. 2d 1276, 1278 (2005).  The similarity

between Mr. Chae's alleged facts and those in *Dunn-Heiser* suggests that Mr. Chae's

circumstances could constitute a plausible claim.  *See id.*  Mr. Chae should, therefore,

be able to remedy the complaint if granted leave, and an amended complaint is unlikely

to be futile.

### 3.    Offering Leave Sua Sponte

The Court's broad discretion to grant leave to amend includes doing so sua

sponte.  Gensler & Mulligan, *supra*, Rule 15 (stating that "[w]hile courts are free to

provide leave to amend whether or not a party has requested it, the majority rule is that

the trial court has no *obligation* to grant leave to amend sua sponte").  The Court has

exercised this capacity in the past, proactively offering plaintiffs with vague complaints

an opportunity to seek leave to amend.  *See United States v. Active Frontier Int'l, Inc.*,

37 CIT 94, 96 (2013) (offering plaintiffs leave to amend their complaint because of the

vague description of apparel items at issue in a tariff classification case).

In sum, the underlying facts and circumstances of plaintiff's claim may be a

proper subject of relief, as demonstrated by their similarities to the facts alleged in

---

[12] *Dunn-Heiser* is part of a line of cases in which the Court has examined whether
Customs incorrectly graded exam questions.  *See, e.g.*, *Dunn-Heiser v. United States*,
29 CIT 552, 374 F. Supp. 2d 1276 (2005); *Di Iorio v. United States*, 14 CIT 746 (1990);
*O'Quinn v. United States*, 24 CIT 324, 100 F. Supp. 2d. 1136 (2000); *Kenny v. Snow*, 28
CIT 852, 401 F.3d 1359 (2004).  In those cases, the Court reviewed whether the
administrative decision, the decision to withhold credit for exam answers, "was
'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"
*See, e.g.*, *Di Iorio*, 14 CIT at 747 (quoting 5 U.S.C. § 706(2)(A) (1988)).

Court No. 20-00316                                                              Page 37

*Dunn-Heiser* and similar cases.  Therefore, Mr. Chae "ought to be afforded an

opportunity to test his claim on the merits."  *Foman*, 371 U.S. at 182.

      Consistent with the foregoing, the court sua sponte offers plaintiff the opportunity

to seek leave to amend.

## CONCLUSION

      Mr. Chae has suffered significant delay and has been misled by several officers

of the United States Government in his quest to become a licensed customs broker.

This court takes seriously the application of its powers in equity under the doctrine of

equitable tolling.  *See* 28 U.S.C. § 1585.  Whether Mr. Chae's exam was deserving of a

passing grade is a question for another day; however, at the very least, Mr. Chae

deserves to have his case heard fairly and without further delay.

      For the reasons stated above, defendant's motion to dismiss pursuant to USCIT

Rule 12(b)(1) is denied, and the court grants leave to plaintiff for sixty (60) days to

amend his complaint and summons to bring them into compliance with the procedural

requirements of USCIT Rules 10(a) and 12(b)(6).  Consequently, it is premature for the

court to rule on defendant's motion to dismiss pursuant to USCIT Rule 12(b)(6) at this

time.  If plaintiff does not file an amended complaint within the allotted timeframe, the

court will grant the defendant's motion to dismiss pursuant to USCIT Rule 12(b)(6).


                     /s/      Timothy M. Reif
                     Timothy M. Reif, Judge


Dated:   May 7, 2021
        New York, New York