# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: HON. TIMOTHY M. REIF

| | |
|---|---|
| BYUNGMIN CHAE,<br><br>*Plaintiff*<br><br>v.<br><br>SECRETARY OF THE TREASURY, in his capacity as the Secretary of Homeland Security, JANET YELLON, in her capacity as the Secretary of Treasury, THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY, THE UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES CUSTOMS AND BORDER PROTECTION, and THE UNITED STATES OF AMERICA,<br><br>*Defendant.* | Court No.: 20-00316 |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE RECORD

Dated: October 1, 2021        By:    Respectfully submitted,

/s/Matthew C. Moench
Matthew C. Moench
King Moench Hirniak & Mehta, LLP
51 Gibraltar Drive, Suite 2F
Morris Plains, New Jersey 07950
Tel. (973) 998-6860
Fax  (973) 998-6863
mcm@kmhmlawfirm.com
*Attorneys for Byungmin Chae*

# **TABLE OF CONTENTS**

**TABLE OF CONTENTS** ...................................................................................................i

**TABLE OF AUTHORITIES** ........................................................................................... ii

**QUESTIONS PRESENTED** ............................................................................................1

**STATEMENT OF FACTS** ...............................................................................................1

**ARGUMENT** ....................................................................................................................3

      **POINT I –**    THE FAILURE TO CREDIT PLAINTIFF'S ANSWERS TO
                            THE CHALLENGED QUESTIONS IS NOT SUPPORTED BY
                            SUBSTANTIAL EVIDENCE………………………………………..……3
                            **A.** *Question No. 5*………………………………………………………..…3
                            **B.** *Question No. 27*…………………………………………………….......5
                            **C.** *Question No. 33*………………………………………………….…...6
                            **D.** *Question No. 39*……………………………………………………….7
                            **E.** *Question No. 43*……………………………………………………….8
                            **F.** *Question No. 50*……………………………………………………….9
                            **G.** *Question No. 57*……………………………………………………11

      **POINT II –**   PLAINTIFF IS ENTITLED TO ATTORNEY FEESS AND
                            EXPENSES……………………..……………………………….……..……3

**CONCLUSION**………………………………………………………………………………14

# **TABLE OF AUTHORITIES**

**CASES**

Carrier v. U.S., 20 CIT 227, 228, Slip. Op. 96-36 (Feb. 13, 1996) .................................................. 3
Dunn-Heiser v. U.S., 374 F.Supp.2d 1276, 1280 (CIT May 31, 2005) ........................................... 3
Former Empl. of Tyco Elec., Fiber Optics Div. v. United States, 28 CIT 1571, 1584 (2004)…....13
Germscheid v. U.S., 19 CIT 706, 708-9, 888 F.Supp. 1197, 1200 (1995) ...................................... 3
Kenny v. Snow, 401 F.3d 1359, 1361 (Fed.Cir. 2005) .................................................................... 3
O'Quinn v. U.S., 24 CIT 324, 325, 100 F.Supp.2d 1136, 1138 (2000) ..................................... 1, 3
Pierce v. Underwood, 487 U.S. 552 (1988)……………………………………………..………13
Nakamura v. Heinrich, 17 CIT 119, 120 (1993)………………………………………...………14

**STATUTES**

19 U.S.C. § 1641(e)(3) .................................................................................................................... 7
28 U.S.C. § 2412(d)…………………………………………………………………………………13
28 U.S.C. § 2412(d)(1)(A)(B)……………………………………………………………………13

**RULES**

Rule 56.1 ......................................................................................................................................... 3

**REGULATIONS**

19 C.F.R. § 111.11(a)(4) ................................................................................................................. 6
19 C.F.R. § 111.16 .......................................................................................................................... 6
19 C.F.R. § 133.23 ........................................................................................................................ 11
19 C.F.R. § 145.2(1)………………………………………………………………………….…..6
19 C.F.R. § 146.32(a)(1) ................................................................................................................. 4
19 C.F.R. § 146.62 ...................................................................................................................... 4,5
19 C.F.R. § 152.102(e) ................................................................................................................. 10

**INTRODUCTION**

This case involves the appeal of the administrative decision of the U.S. Customs and Border Protection ("CBP") denying Plaintiff's request for credit for a number of questions on the April 25, 2018, Customs Broker License Examination ("CBLE").

In reviewing legal questions in a CBLE, this Court reviews the basis of Customs' decision to deny credit in accordance with the Administrative Procedure Act ("APA"). O'Quinn v. United States, 24 C.I.T. 324, 325 (2000).  Such a review ensures that the agency engages in reasoned decision-making in grading the exam. Id. For the reasons set forth in the brief below, the record lacks substantial evidence to support CBP's decision to deny Plaintiff credit for the questions at issue in this matter. Therefore, Plaintiff requests that the CIT to review questions 5, 27, 33, 39, 43, 50, and 57 on the April 25, 2018 Customs Exam ("Challenged Questions"), and to award Plaintiff credit for those questions.

**QUESTIONS PRESENTED**

Whether the CBP's Failure to Credit Plaintiff's Answers to the Challenged Questions is Supported by Substantial Evidence?  Here, it is not, and Plaintiff should be awarded credit for the Challenged Questions, and as a result, should be awarded a passing score on his CBLE.

**STATEMENT OF FACTS**

On April 25, 2018, Plaintiff sat for the CBLE in Flushing, New York. On May 18, 2018, Plaintiff was informed that he had received a score of 65% on the Exam and had therefore not achieved the requisite minimum passing score of 75%. See Admin. Rec. Ex. A.  Subsequently, on June 18, 2018, Plaintiff timely appealed thirteen of the questions from the April 2018 Exam, namely question numbers 2, 5, 24, 27, 28, 33, 39, 43, 50, 54, 57, 68, and 77. See Admin. Rec. Ex. B.  On August 23, 2018, Plaintiff received written notification that he, along with other applicants

of the April 2018 exam, received credit for three additional questions, namely questions 28, 66, and 68. See Admin. Rec. Ex. C.  Because Plaintiff already had a correct answer to one of those questions, question 66, he received two additional correct answers, raising his score to 67.5%.

By way of the August 23, 2018, letter, Plaintiff was also informed that he did not receive credit for any of the questions originally appealed.  On September 28, 2018, Plaintiff filed a timely appeal of eleven questions to the Assistant Commissioner, Office of Trade, as instructed by the CBP's letter.  Specifically, Plaintiff appealed questions, 2, 5, 24, 27, 33, 39, 43, 50, 54, 57, and 77. See Admin. Rec. Ex. D. On October 29, 2019, the CBP emailed Plaintiff a copy of a letter dated May 23, 2019, granting his appeal on three questions (2, 24, and 54), but still leaving him short of a passing score. See Admin. Rec. Ex. E.

Plaintiff's current score is 71.25% and he requires a score of 75% to pass.  On October 30, 2019, Plaintiff asked the CBP how he could appeal the May 23, 2019, decision. Plaintiff was informed that he had no other recourse. Specifically, Plaintiff was told, "[t]here was no 3rd appeal." See Admin. Rec. Ex. M.   As a result of this false information from the CBP, Plaintiff took no immediate action, believing he had no further recourse.  Contrary to this false information, Plaintiff subsequently learned that the information provided by CBP was incorrect and that he could appeal to the Court of International Trade ("CIT").

Consequently, on March 4, 2020, Plaintiff filed a petition with the CIT seeking review of the previous denials of his appeals. Following motion practice, the Court entered an order permitting Plaintiff to file an amended Complaint and proceed with his claims. Plaintiff now brings this action contesting the CBP's denial of credit for questions 5, 27, 33, 39, 43, 50, and 57.

**ARGUMENT**

This motion is brought pursuant to Rule 56.1 of the Rules of the United States Court of International Trade ("Rule" or "Rules") for judgment upon the administrative agency record.

The denial of a broker's license will be overturned if the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Kenny v. Snow, 401 F.3d 1359, 1361 (Fed.Cir. 2005). A final administrative decision by the Secretary denying a Customs broker's license will be set aside if it is not supported by substantial evidence. Carrier v. U.S., 20 CIT 227, 228, Slip. Op. 96-36 (Feb. 13, 1996).

A license may be denied if the applicant fails to meet certain basic requirements. 19 C.F.R. § 111.16. One of the requirements is establishing that the applicant has sufficient knowledge of customs and related laws and regulations and procedures as evidenced by attaining a passing grade of 75% or higher on a written examination. 19 U.S.C. § 1641(b)(2). See also, 19 C.F.R. § 111.11(a)(4). However, "[t]he express objective of the customs broker license exam is to gauge an applicant's command of Customs' position on the relevant rules and regulations." Dunn-Heiser v. U.S., 374 F.Supp.2d 1276, 1280 (CIT May 31, 2005). The agency must have engaged in reasoned decision-making in grading the exam. O'Quinn v. U.S., 24 CIT 324, 325, 100 F.Supp.2d 1136, 1138 (2000).

**I.    THE FAILURE TO CREDIT PLAINTIFF'S ANSWERS TO THE CHALLENGED QUESTIONS IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

In order for the findings of the Secretary to be upheld, they must be supported by substantial evidence. 19 U.S.C. § 1641(e)(3). "Substantial evidence" is more than a mere scintilla of evidence. Germscheid v. U.S., 19 CIT 706, 708-9, 888 F.Supp. 1197, 1200 (1995). It is that which a reasonable person would accept as adequate to support a conclusion. Id.

1. **Question 5**

Plaintiff appeals the denial of credit for his response to Question 5 of the April 2018 customs broker license exam.

Question 5 states:

> Which of the following customs transactions is **not** required to be performed by a licensed customs broker?
> A. Temporary importation under bond
> B. Transportation in bond
> C. Permanent exhibition bond
> D. Trade fair entry
> E. Foreign trade zone entry

See Admin. Rec. Ex. H.  Plaintiff answered "E" on Question 5 on the exam.  Customs' official answer to Question 5 on the exam is "B". While answer "B" is accurate, Plaintiff's answer, choice "E", is also accurate as one does not need to have a customs broker license to enter goods into a Foreign Trade Zone.  19 C.F.R. § 146.32 (a)(1) provides "[m]erchandise may be admitted into a zone only upon application on a uniquely and sequentially numbered CBP Form 214 ("Application for Foreign Trade Zone Admission and/or Status Designation") and the issuance of a permit by the port director."

In its denial letter, CBP argues that "entry" is a term of art and defined by regulations. While true, the question does not indicate that entry is a defined term through capitalization or other demarcation to indicate as such, and the term "Foreign trade zone entry" as an entire phrase is not a term of art, is not defined in the regulations, and as a phrase does not appear anywhere in the regulations. Had the CBP wanted to designate "entry" within the meaning of 19 C.F.R. § 146.62, CBP should have capitalized the defined term or used it in context, such as "entry of goods" rather than the improper term utilized.

The common understanding of the word "entry" is the act of entering or the acting of making or entering a record. As such, one could do an FTZ entry without a license. Therefore, Plaintiff's answer, and his explanation for it, demonstrates that the question is ambiguous, and that Plaintiff understands the regulations and the material being questioned.

As the CBP argued in its May 23, 2019, response letter to the Plaintiff, See Admin. Rec. Ex. L., if an entry must conform to 19 CFR 146.62, answer choice D "trade fair entry" cannot be admitted into the customs territory of the United States as it is one kind of entry that must be performed by the customs broker. Furthermore, in the answer choices given, relevant parts of the regulation were omitted, which made the proposed responses unfairly confusing. If the CBP wanted to convey that all of the answer choices, apart from answer choice B, were required to be performed by a licensed customs broker, answer choice E should have included the word *filing*. The omission of this language in option E rendered it incomplete. The option, as a result, was ambiguous at best.

Based on the foregoing, there is not substantial evidence in support of the denial of Plaintiff's challenge to the denial of credit for his response to this question. Refusing to provide Plaintiff credit for his answer to Question 5 is arbitrary, unreasonable, and capricious as Plaintiff has demonstrated (a) that the question was at best ambiguous, and (b) by his explanation that Plaintiff understands the CBP's position on relevant rules and regulations.

2. **Question 27**

Plaintiff appeals the denial of credit for his response to Question 27 of the April 2018 CBLE.

Question 27 states:

> Which of the following mail articles are not subject to examination or inspection by customs?

      A. Bona fide gifts with an aggregate fair retail value not exceeding $800 in the country of shipment
      B. Mail packages addressed to officials of the U.S Government containing merchandise
      C. Diplomatic pouches bearing the official seal of France and certified as only containing documents
      D. Personal and household effects of military and civilian personnel returning to the United States upon the completion of extended duty abroad
      E. Plant material imported by mail for purposes of immediate exportation by mail

See Admin. Rec. Ex. I.  Plaintiff answered "B" on Question 27 on the exam. Customs' official answer to Question 27 on the exam is "C". Plaintiff contends there are multiple correct answers to this question. While answer "C" is accurate, Plaintiff's answer, choice "B", is also accurate under 19 C.F.R. § 145.2(1).

      The question does not indicate where the mail packages are coming from like the CBP's answer.  If the mail packages are domestic there are no reasons to be subject to examination or inspection by the CBP at all. If the mail packages are international there is no indication about the merchandise in regard to the duty.  If the merchandise contains no dutiable items of the certified organization this merchandise could be exempt. In contrast, the purported correct answer, specified the country of origin for the merchandise, which would be to be subject to examination or inspection by the CBP. As a result, the question is unfairly confusing.

      Based on the foregoing, there is not substantial evidence in support of the denial of Plaintiff's challenge to the denial of credit for his response to this question. Credit should be given for any questions answered by Plaintiff where there are multiple correct answers amongst the choices.  Refusing to provide Plaintiff credit for his answer to Question 27 is arbitrary, unreasonable, and capricious as Plaintiff has demonstrated (a) that the question was at best ambiguous, and (b) by his explanation that Plaintiff understands the CBP's position on relevant rules and regulations.

3. **Question 33**

Plaintiff appeals the denial of credit for his response to Question 33 of the April 2018 CBLE.

Question 33 states:

> What is the classification of current production wall art depicting abstract flowers and birds that is mechanically printed, via lithography, onto sheets of paper, the paper measuring .35mm in thickness that have been permanently mounted onto a backing of .50mm thick paperboard?
>
> A. 4911.91.2040
> B. 4911.91.3000
> C. 4911.99.6000
> D. 9701.10.0000
> E. 9702.00.0000

See Admin. Rec. Ex. E. Plaintiff answered "E" on question 33 on the exam. Customs' official answer to Question 33 on the exam is "B". However, Customs' answer presupposes a certain time-frame within which the goods are produced but does not provide such a time in the question, instead expecting the undefined phrase "current production" to signify the answer. Such phrase does not provide sufficient information to answer the question. As an example, the item could have been consistently produced for an extended period of time (i.e., it has been produced consistently for 19 years, and is still in current production). As a result, the question is unfairly confusing.

Based on the foregoing, there is not substantial evidence in support of the denial of Plaintiff's challenge to the denial of credit for his response to this question. Refusing to provide Plaintiff credit for his answer to Question 33 is arbitrary, unreasonable, and capricious as Plaintiff has demonstrated (a) that the question was at best ambiguous, and (b) by his explanation that Plaintiff understands the CBP's position on relevant rules and regulations.

4. **Question 39**

Plaintiff appeals the denial of credit for his response to Question 39 of the April 2018 CBLE.

Question 39 states:

> What is the CLASSIFICATION of a teacup that is made of porcelain containing 28 percent of tricalcium phosphate, valued at $18 and offered for sale in the same pattern as all of the other articles listed in Additional U.S. Note 6(b) to Chapter 69, HTSUS, with the aggregate value of all those articles listed in that note being $900?
>
> A. 6911.10.2500
> B. 6911.10.3810
> C. 6911.10.5800
> D. 6911.10.8010
> E. 6912.00.4500

See Admin. Rec. Ex. H. Plaintiff answered "B" on Question 39 on the exam. Customs' official answer to Question 39 on the exam is "A". Plaintiff contends there is no correct answer to this question. In the alternative, this question should be disqualified as it confuses the price of a single teacup versus the price of a dozen teacups. 6911.10.2500 states "tableware and kitchenware of bone chinaware valued over $31.50 per dozen pieces."

Therefore, this brings up the price discrepancy of the bone chinaware over $31.50 per dozen pieces which contradicts the $18 presented in the question. Rather, 6911.10.1500 which states "valued not over $31.50 per dozen pieces," and would be best fit as the correct answer to the question. Customs relies upon reference to a set of a dozen teacups, however, given that there is no reference to anything other than "a" teacup, Plaintiff should not be required to guess as to the number or value therein. As such, this question is at best confusing, and at worst contains no correct answer.

Based on the foregoing, there is not substantial evidence in support of the denial of Plaintiff's challenge to the denial of credit for his response to this question. Therefore, credit should be given for any questions answered by Plaintiff where there are no correct answers amongst the choices. Refusing to provide Plaintiff credit for his answer to Question 39 is arbitrary, unreasonable, and capricious as Plaintiff has demonstrated (a) that the question was at best ambiguous, and (b) by his explanation that Plaintiff understands the CBP's position on relevant rules and regulations.

### 5. Question 43

Plaintiff appeals the denial of credit for his response to Question 43 of the April 2018 CBLE.

> Question 43 states:
>
> What is the classification of a work glove, made of synthetic suede (a non-woven polyester fabric with the textile making up 85% of the weight and the plastic marking up 15%)? The glove features fourchettes, thermo-plastic rubber attachments on the knuckles on the back side, rubber overlays on the palm side of the thumb, and a cuff with a hook and loop closure to tighten the glove at the wrist?
>
>     A.  6116.10.7520
>     B.  6216.00.2425
>     C.  6216.00.2925
>     D.  6216.00.5425
>     E.  6216.00.5820

See Admin. Rec. Ex. G.  Plaintiff answered "E" on Question 43 on the exam. Customs' official answer to Question 43 on the exam is "A". Plaintiff contends there are multiple correct answers to this question. The CBP's answer of 6216.00.5820 points out the gloves of the man-made fibers with fourchettes but the gloves were coated or covered with the plastics or rubber, which is noted in the article description 6216.00. This requirement is fulfilled under answer choices C and E. Therefore, credit should be given for any questions answered by Plaintiff where there are multiple correct answers amongst the choices. In the alternative, the question should be invalidated.

Based on the foregoing, there is not substantial evidence in support of the denial of Plaintiff's challenge to the denial of credit for his response to this question.

### 6. Question 50

Plaintiff appeals the denial of credit for his response to Question 50 of the April 2018 customs' broker license exam.

Question 50 states:

> The importer, company A, imports 1,000 batteries from an unrelated overseas seller at a price of $0.50 CIF per battery. The overseas seller buys the batteries in bulk from an overseas manufacturer. Company A requires each battery to be individually wrapped in polythene with a cardboard backing for display at retail outlets in the United States. Company A provides the polythene and cardboard backing materials free of charge to the overseas seller. Company A obtains the materials from a supplier in the United States at a cost of $40 for the quantity required to wrap 1,000 batteries. The seller of the imported batteries arranges for an overseas packing company to carry out the wrapping/packing. This company charges the seller of the imported goods, $60 per 1,000 batteries for this service. The documents show that the total overseas freight and insurance cost totaled $10. What is the customs value in the United States for a shipment of 1,000 batteries?
>
> **A.** $530
> **B.** $500
> **C.** $600
> **D.** $540
> **E.** None of the above

See Admin. Rec. Ex. F. Plaintiff answered "C" on Question 50 on the exam. Customs' official answer to Question 50 on the exam is "A". Per CBP customs, CIF generally means the Price Paid or Payable includes the cost of the goods, insurance, and freight. There is no indication in the prompt to suggest that freight and insurance should be subtracted. No proof of actual cost of insurance and freight has been made available to subtract them from the transaction value.

Therefore, Plaintiff performed the following calculations leading him to answer choice "C":

$500 batteries (including freight and insurance, which cannot be subtracted)

$40 for the packing (19 CFR 152.102 (e))

$60 for the labor (19 CFR 152.102 (e))

= $600

Based on the foregoing, there is not substantial evidence in support of the denial of Plaintiff's challenge to the denial of credit for his response to this question. Therefore, credit should be given for any questions answered by Plaintiff where there are no correct answers amongst the choices. In the alternative, the question should be invalidated based on its confusing and ambiguous nature.

### 7. Question 57

Plaintiff appeals the denial of credit for his response to Question 57 of the April 2018 CBLE.

Question 57 states:

> Which of the following shipments does not contain restricted gray market merchandise as defined in 19 C.F.R. 133.23?
>
> A. A shipment of jeans, bearing a trademark registered and recorded in the United States, applied by a U.S. trademark owner's foreign licensee independent of the U.S. trademark owner
>
> B. A shipment of shoes, bearing a trademark registered and recorded in the United States, applied under the authority of a foreign trademark owner other than the U.S. owner, a parent or subsidiary of the U.S. owner, or a party under common ownership or control with the U.S. owner, to who the U.S. owner sold the foreign title.
>
> C. A shipment of jacket, bearing a trademark registered and recorded in the United States, applied under the authority of a foreign trademark owner other than the U.S. owner, a parent or subsidiary of the U.S. owner, or a party under common ownership or control with the U.S. owner, from whom the U.S. owner acquired the domestic title
>
> D. A shipment of books, bearing a U.S. registered and recorded trademark applied by a foreign subsidiary of the U.S. owner, determined by CBP to be

> different from the books authorized by the U.S. owner for importation or sale in the United States. The books feature a conspicuous label that they are not authorized by the U.S. owner for importation into the U.S. and are physically and materially different from the authorized ones.
>
> **E.** A shipment of shirts, bearing a genuine foreign trademark owned by a foreign trademark owner, identical with or substantially indistinguishable from a trademark registered and recorded in the United States. The shipment was imported without the authorization of the U.S. owner who is not related to the foreign owner.

See Admin. Rec. Ex. J. Plaintiff answered "D" on Question 57 on the exam. Customs' official answer to Question 57 on the exam is "E" predicated on 19 C.F.R. § 133.23. Pursuant 19 C.F.R. §133.23 (a)(1) & (2) & (3), choice D has all the requirements to qualify but does not contain the restricted gray market merchandise since

- the label is attached in close proximity to the trademark;
- and it appears in its most prominent location on the books;
- and it was determined by CBP to be different from the books authorized by the U.S. owner for importation or sale in the United States.

Therefore, choice D is the correct answer to the question. Choice E is inaccurate since the shipment which was imported was not authorized by the U.S. owner who is not related to the foreign owner and no regulation on foreign trademark and foreign trademark owner is defined under 19 CFR 133.23.

As 19 C.F.R. 133.23 notes, the restricted gray market articles are foreign made articles bearing a genuine trademark or trade name identical with or substantially indistinguishable from one owned and recorded in the United States and imported without the authorization of the United States owner, and that is what the CBP's answer E states.

Based on the foregoing, there is not substantial evidence in support of the denial of Plaintiff's challenge to the denial of credit for his response to this question. Therefore, credit should be given for Plaintiff's answer to this question. In the alternative, the question should be invalidated. Refusing to provide Plaintiff credit for his answer to Question 57 is arbitrary, unreasonable, and capricious as Plaintiff has demonstrated (a) that the question was at best ambiguous, and (b) by his explanation that Plaintiff understands the CBP's position on relevant rules and regulations.

## II.    PLAINTIFF IS ENTITLED TO ATTORNEY FEES AND EXPENSES

Plaintiff is eligible to receive attorney fees and costs under the Equal Access to Justice Act ("EAJA"). To be eligible for relief under the EAJA, a party must have a net worth less than two million dollars at the time his or her action is filed. 28 U.S.C. § 2412(d); Former Employees of Tyco Elec., Fiber Optics Div. v. United States, 28 CIT 1571, 1584 (2004). The net worth of the Plaintiff at the time of this action's commencement was less than two million dollars.

Plaintiff is an eligible party, pursuant to the EAJA, 28 U.S.C. § 2412(d)(l)(A)(B), and attorney fees and expenses must be awarded if:

(1) The claimant is a prevailing party;

(2) The government's position during litigation was not substantially justified;

(3) No special circumstances make an award unjust; and

(4) The fee application is timely and supported by an itemized fee statement. See Former Emples of Tyco Elec., Fiber Optics Div., 28 CIT at 1584.

CBP has already conceded that Plaintiff was entitled to credit for questions 28, 66, and 68. Plaintiff's attorney fees must be awarded for credit received, as well as the questions at issue

herein, as no special circumstances make an award unjust, and the CBP's position is not substantially justified. Should Plaintiff prevail, attorney's fees should also be awarded.

In order for the CBP's position to be substantially justified it must have had a reasonable basis in both law and in fact or, in other words, justified to a degree that could satisfy a reasonable person. Pierce v. Underwood, 487 U.S. 552 (1988). The CBP's position in this case is not substantially justified. The exam answers that the CBP claimed to be incorrect were consistent with Customs Regulations and Practice. To the contrary, The CBP's questions were vague, ambiguous, and unfairly confusing. All of Plaintiff's answers relied on Customs' regulations, and the CBPs position in this case is untenable. See Nakamura v. Heinrich, 17 CIT 119, 120 (1993).

Therefore, Plaintiff is eligible to receive attorney fees and costs under the EAJA.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiff's motion for Judgment on the Record and remand the case to the U.S. Customs and Border Protection with directions to allow credit for Plaintiff's answers to questions number 5, 27, 33, 39, 43, 50, and 57 of the April 2018 Customs Broker License Examination. Furthermore, Plaintiff is entitled to receive costs and fees pursuant to the EAJA.