UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY M. REIF, JUDGE
_____

BYUNGMIN CHAE,                                          :
                                                        :
                                                        :
                              Plaintiff,                :            Court No. 20-00316
                                                        :
              v.                                        :
                                                        :
SECRETARY OF THE TREASURY,                              :
                                                        :
                              Defendant.                :
_____ :

## <u>ORDER</u>

Upon consideration of defendant's motion to correct the record, it is hereby

ORDERED that defendant's motion is granted, and it is further

ORDERED that the agency administrative record in this proceeding is corrected to

include the document attached to the motion as Exhibit A, and the declaration certifying the

record attached to the motion as Exhibit B.


Dated: _____                      _____
          New York, New York                            Timothy M. Reif, Judge

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY M. REIF, JUDGE

_____

BYUNGMIN CHAE,                                    :
                                                  :
                                                  :
                    Plaintiff,                    :          Court No. 20-00316
                                                  :
            v.                                    :
                                                  :
SECRETARY OF THE TREASURY,                                    :
                                                  :
                    Defendant.                    :
_____ :


## DEFENDANT'S MOTION TO CORRECT THE RECORD

Defendant, Secretary of the Treasury, respectfully moves this Court pursuant to USCIT

Rules 7(b) and 73.3 to correct the administrative record of this proceeding to include the *April*

*2018 Customs Broker License Examination Series 840,* Exhibit A.  We have also attached as

Exhibit B a declaration from Jennelle Cray, the representative from the U.S. Customs and Border

Protection (CBP) certifying the completeness of the administrative record with the inclusion of

this document.  We regret any inconvenience that may result from filing this motion.  We do not

request additional briefing based upon this document or wish to modify our prior brief or

positions in any way.  Instead, we seek to include the exhibit in the record only so that the Court

will have an accurate and complete record.

On February 18 and 23, 2022, undersigned counsel conferred with Mr. Matthew Moench,

Esq. of King, Moench, Hirniak & Mehta, LLP, counsel for plaintiff, via email and telephone to

discuss the administrative record and Question 5 of the exam, and to obtain plaintiff's position

on the relief requested in this motion.  Mr. Moench advised that plaintiff does not consent to the

inclusion of the entire *April 2018 Customs Broker License Examination Series 840* in the record.

Plaintiff only consents to the inclusion of the page on which Question 5 appears.

On September 1, 2021, the Government filed the administrative record in this matter, which constitutes the "records considered by the Executive Assistant Commissioner, Office of Trade, U.S. Customs and Border Protection, rendering her decision upholding the U.S. Customs and Border Protection denial of the Customs Broker License Exam appeal" in this case." Declaration of Sharolyn McCann dated August 19, 2021 (ECF No. 36). Plaintiff filed its motion for judgment on the agency record on October 1, 2021, defendant filed its response to plaintiff's motion on November 5, 2021, and the Court will hear oral argument on February 24, 2022. In advance of the oral argument, on February 17, 2022, the Court issued a letter containing questions that will be addressed by the parties during the oral argument. While reviewing the Court's questions, the Government consulted the actual April 2018 Customs Broker License Examination and realized that the examination was not in the administrative record. The April 2018 Customs Broker License Examination should have been included in the record because it was considered indirectly by CBP when it rendered its decision denying plaintiff's administrative appeal.

Whether to permit correction of the record is an evidentiary matter that is a discretionary determination by this Court. *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374, 1378 (Fed. Cir. 2009) (citing *Murakami v. United States*, 398 F.3d 1342, 1346 (Fed. Cir. 2005). A court's determination of an evidentiary matter constitutes an abuse of discretion if it is "'clearly unreasonable, arbitrary or fanciful, or is 'based on an erroneous construction of the law.'" *Axiom*, 564 F.3d at 1378 (quoting *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1341 (Fed. Cir. 1999)).

The administrative record consists of documents that were "directly or indirectly considered by the [agency] decisionmaker(s)." *Pacific Shores Subdivision California Water District v. United States Army Corps of Engineers*, 448 F. Supp. 2d 1, 7 (D.D.C. 2012); *JSW Steel (USA) Inc. v. United States*, 466 F. Supp. 3d 1320, 1328 (Ct. Int'l Trade 2020) (administrative record includes documents considered directly or indirectly) (citing *Ammex, Inc. v. United States*, 62 F. Supp. 2d 1148, 1156 (Ct. Int'l Trade 1999)). Here, granting the Government leave to "correct" or "complete" the record is appropriate because CBP considered the April 2018 exam when it considered plaintiff's appeals. *Center for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1274 n.7 (D. Colo. 2010) (explaining the difference between "completing" versus "supplementing the record") (citing *The Cape Hatteras Access Preservation Alliance v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 114 (D.D.C. 2009)); *Joint Venture of Comint Sys., Corp. v. United States*, 100 Fed. Cl. 159, 167 (Fed. Cl. 2011) ("Incorporating materials into the administrative record that were previously omitted is not novel."). Thus, our motion is distinguishable from a situation in which the moving party seeks to modify the administrative record with outside materials that were not considered by the agency decision maker, which are disfavored. *See AgustaWestland North America, Inc. v. United States*, 880 F.3d 1326, 1331 (Fed. Cir. 2018) (explaining that "supplementation of the record should be limited to cases in which the omission of extra-record evidence precludes effective judicial review.") (internal quotation omitted).

For these reasons, we respectfully request that the Court grant this motion to correct the administrative record and deem the document attached as Exhibit A as part of the administrative record along with the declaration attached as Exhibit B.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge,
International Trade Field Office

By:    /s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Marcella Powell
MARCELLA POWELL
Senior Trial Counsel
Civil Division, Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York l0278
Attorneys for Defendant
Dated: February 25, 2022    Tel. No. 2l2-264-9230 or 1873

# EXHIBIT A

# ADMINISTRATIVE RECORD
# EXHIBIT N

**Series 840**
**April 25, 2018**

## U.S. CUSTOMS AND BORDER PROTECTION

_____

### Customs Broker License Examination

### DIRECTIONS - READ CAREFULLY

This examination consists of 80 questions. The minimum passing score is 75%. For each question choose the letter representing your answer (**A**, **B**, **C**, **D**, or **E**). There is no penalty for guessing; therefore, you should attempt to answer every question. **Each question has a single best answer.**

You are responsible for having the following references:

- Harmonized Tariff Schedule of the United States (2017 Basic Edition, No Supplements)

- Title 19, Code of Federal Regulations (2016 Revised as of April 1, 2016 or 2017)

- Instructions for Preparation of CBP Form 7501 (July 24, 2012)

- Right to Make Entry Directive 3530-002A

You have four and a half (4.5) hours to complete this examination.

In addition to the 80 exam questions, U.S. Customs and Border Protection (CBP) will be administering six **voluntary** process evaluation questions. The first three questions, located in Section 1, will take place before you begin the test. The last three survey questions, located in Section 3, will take place after you complete the test, but within the test timeframe. Each set of questions is expected to take no longer than 2 minutes each. The purpose of the survey questions is to inform future testing processes. These survey questions are completely **voluntary** and will have **NO** impact on your scores.**DO NOT TURN THIS PAGE UNTIL TOLD TO DO SO BY THE EXAMINER.**

## Section 1: Pre-Examination Process Evaluation Survey

This survey is administered to collect information about the examination process. The survey is **voluntary** and your responses will have no  impact on your score.

1) What is your background regarding Customs laws and regulations?

    A)  Former CBP employee
    B)  Currently works or has worked for a broker in the past
    C)  Currently works or has worked for an importer on trade issues in the past
    D)  No working experience with Customs laws and regulations
    E)  Currently works or has worked for both broker and importer in the past

2) How did you prepare for the Customs Broker Examination?

    A)  Took an in-person course through an educational institution
    B)  Took an online course through an educational institution
    C)  Self-prepared
    D)  Did not spend time preparing for examination

3) Approximately how many hours did you spend preparing for
the examination?
    A)  1-10
    B)  11-25
    C)  26-100
    D)  More than 100
    E)  Did not spend time preparing for examination

## Section 2: Customs Broker License Examination

**Category I – Broker Compliance**                   **Questions 1 - 8**

**Category II – Practical Exercise**                  **Questions 9 - 16**

**Category III – Anti-Dumping/Countervailing Duties**  **Questions 17 - 19**

**Category IV – Entry**                               **Questions 20 - 29**

**Category V – Classification**                       **Questions 30 - 44**

**Category VI – Value**                               **Questions 45 - 50**

**Category VII – Drawback**                           **Questions 51 - 53**

**Category VIII – Intellectual Property Rights**      **Questions 54 - 58**

**Category IX – Bonds**                               **Questions 59 - 61**

**Category X – Free Trade Agreements**                **Questions 62 - 65**

**Category XI – Fines and Penalties**                 **Questions 66 - 69**

**Category XII – Foreign Trade Zones/Warehouses**     **Questions 70 - 73**

**Category XIII – Marking**                           **Questions 74 – 77**

**Category XIV – Power of Attorney**                  **Questions 78 – 80**

**Category I – Broker Compliance**

**1.**  You, the broker, decide to open an office at a port within a district for which you already have a permit.  Which of the following information about your employees do you **NOT** need to submit to the Port Director in that district prior to transacting business?

    A. Social Security Number
    B. Date and place of birth
    C. Date and place of broker exam
    D. Current home address and last prior home address
    E. Name and address of each prior employer and dates of employment for the previous 3
      years

**2.**  Which of the following will not provide for revocation of the broker's permit?

    A. Nonpayment of the user fee.
    B. Neglecting to obtain a timely permit waiver.
    C. Neglecting to advise CBP of the replacement permit qualifier within 120 days of loss
    D. Nonpayment of permit qualifiers triennial fee
    E. Neglecting to advise CBP of a replacement permit qualifier within 180 days of loss

**3.** In the case of a new employee, a customs broker must notify the CBP port director that the broker has hired the new employee within _____.

    A. Five calendar days after the new employee has been employed by the broker for 60
      consecutive days
    B. Seven calendar days of hiring the new employee
    C. Ten working days of hiring the new employee
    D. Ten calendar days after the new employee has been employed by the broker for 30
      consecutive days
    E. 30 calendar days of hiring the new employee

**4.** Payment for the _____ is required every three years.

    A.  Local Permit fee
    B.  National Permit fee
    C.  Merchandise Processing fee
    D.  Triennial Status Report fee
    E.  Harbor Maintenance fee

**5.** Which of the following customs transactions is **NOT** required to be performed by a licensed customs broker?

      A. Temporary Importation under Bond
      B. Transportation in bond
      C. Permanent Exhibition Bond
      D. Trade Fair Entry
      E. Foreign Trade Zone Entry

**6.** Bills resulting from dishonored checks or dishonored Automated Clearinghouse (ACH) transactions are due?

      A. within 10 days of the date of issuance of the bill
      B. within 30 days of the date of issuance of the bill
      C. within 15 days of the date of issuance of the bill
      D. within 2 days of the date of issuance of the bill
      E. within 20 days of the date of issuance of the bill

**7.** What statement is **FALSE**?

      A. District means the geographic area covered by a customs broker permit other than a national permit
      B. Employee of Broker, acting solely for his employer, is not required to be licensed
      C. In order for a corporation to qualify for a broker's license all officers must be a broker
      D. In order to obtain a broker's license an individual must be of good moral character
      E. The status report fee is $100.00 to defray the cost of administering the reporting requirement.

**8.** Which of the following is **NOT** a factor that is indicative of a lack of supervision or lack of working knowledge of customs procedures for which CBP may issue a $5,000 penalty against a broker?

      A. A high rate of late filing liquidated damages cases when compared with other brokers in the permitted district
      B. A high rate of entry rejections when compared with other brokers in a permitted district
      C. Failure to settle liquidated damages claims in a timely manner
      D. An inordinate number of entries for which free entry is claimed with documentation
      E. A high number of missing entry summary documents when compared with other brokers in the permitted district

## Category II – Practical Exercise

Use the below-identified commercial invoice to answer questions **9** through **13**.

| | |
|---|---|
| **BLUE CREST EXPORTS, LTD. S**henzhen, China | |
| Shipper/Exporter<br>Blue Crest Exports, Ltd.<br>Bldg. 45, No 8002 Shennan Rd.<br>Futian District, Shenzhen, China | No. and Date of Invoice<br>US0001E        February 14, 2017 |
| For Account and Risk of Messers<br>Rosa's Italian Kitchen<br>5423 Mission<br>S. San Francisco, CA 45682 | Marks and No. of Pkgs.<br>Subject to Antidumping Duty A-570-831 at 0.06 $/kg.<br><br>L/C Issuing Bank |
| Notify Party<br>James Brokers, Inc.<br>658 Adams Plaza<br>Dallas, TX 78045 | Remarks<br>DDP San Francisco<br>P/O No.: OMAL587236<br>Chinese Origin |
| Port of Lading<br>Qingdao, China | Final Destination<br>Oakland, CA |
| Carrier<br>COSCO | Departure on or about<br>February 14, 2017 |

| Description of Goods | Quantity | Unit Price | Amount |
|---|---|---|---|
| Fresh whole chilled garlic bulbs packed in water. Shipped in bulk | 25,719 kgs. | 49,167 USD | |
| **TOTAL** | | | **$49,167** |

| Master Bill: 001-63324833<br>House Bill: COSC6676406 | |
|---|---|

**9.** What is the **CLASSIFICATION** of the imported merchandise?

    A. 0703.20.0015
    B. 0703.20.0020
    C. 0703.20.0090
    D. 0712.90.4040
    E. 2005.99.9700

**10**. The port code to be identified in Block 20 of CBP Form 7501 is _____.

    A. 0901
    B. 1808
    C. 2811
    D. 3881
    E. 5501

**11.** The amount of the harbor maintenance and merchandise processing fees is _____.

    A. $61.46
    B. $86.46
    C. $103.25
    D. $231.77
    E. $340.62

**12.** The amount of the duty due to U.S. Customs and Border Protection is _____.

    A. $110.59
    B. $342.36
    C. $5506.70
    D. $11059.17
    E. $14651.77

13. The antidumping duty amount is _____.

    A. $15.43
    B. $1,543.14
    C. $1824.04
    D. $2950.02
    E. $3402.01

Use the below-identified abbreviated CBP Form 7501 "Entry Summary" to answer questions **14** through **16**.

| DEPARTMENT OF HOMELAND SECURITY U.S. Customs and Border Protection | | 1. Filer Code / EntryNo. ABC-1234567-8 | | 2. Entry Type 01 ABI/A | 3. Summary Date 01/17/17 |
|---|---|---|---|---|---|
| **ENTRY SUMMARY** | | 4. Surety No. 891 | 5 Bond Type 8 | 6. Port Code 3901 | 7. Entry Date 01/04/17 |
| 8. Importing Carrier MAERSK SENANG | 9. Mode of Transport 11 | | 10. Country of Origin ID | | 11. Import Date 01/02/17 |
| 12. B/L or AWB No. MAEU751824346 | 13. Manufacturer ID IDBAKFUR5896JAK | | 14. Exporting Country MY | | 15. Export Date 12/03/16 |
| 16. I.T. No. V0670830522 | 17. I.T. Date 01/02/17 | 18 Missing Docs | 19. Foreign Port of Lading 55700 | | 20. U.S. Port of Unlading 3001 |
| 21. Location of Goods/GO No. H572 BNSF LOGISTICS PARK - CHI | | 22. Consignee No. SAME | 23. Importer No. 04-0422353-00 | | 24. Reference No. |
| 26. Ultimate Consignee Name and Address City State TX Zip | | | 26. Importer of Record Number and Address INSIDE INTERIORS, INC. 602 AVENUE J City LUBBOCK State TX Zip 79401 | | |

**14.** Which date is used for calculating the applicable rate of duty?

> A. Export
> B. Import
> C. Entry
> D. Entry Summary
> E. Immediate Transportation

**15.** Block 39 of CBP Form 7501 should reflect which Fee Class Code?

> A. 012
> B. 013
> C. 311
> D. 501
> E. 610

**16.** What is the entered merchandise?

> A. Extruded rubber thread from Malaysia that is subject to an antidumping duty
> B. Oil circular tubular goods from Indonesia subject to a countervailing duty
> C. Tuna caught in Indonesian waters that is subject to a tariff rate quota
> D. Women's apparel that is placed in a foreign trade zone
> E. Wooden bedroom furniture from Indonesia

## Category III – Anti-Dumping/Countervailing Duties

**17.** If CBP believes that acceptance of an antidumping entry secured by a continuous bond would place the revenue in jeopardy or otherwise hamper the enforcement of applicable laws or regulations, CBP shall require additional security pursuant to_____.

    A. 19 CFR 151.65
    B. 19 CFR 113.13(d)
    C. 19 CFR 152.101(3)
    D. 19 CFR 351.203(a)
    E. 19 CFR 351.205(b)(1)

**18.** The determination of the applicable AD/CVD investigations or orders is governed by the "time of entry" according to which:

    A. 19 CFR 142.3 and 19 CFR 158.41
    B. 19 CFR 141.0(a) and 19 CFR141.20
    C. 19 CFR 159.10 and 19 CFR141.62
    D. 19 CFR 141.68 and 19 CFR 151.69
    E. 19 CFR 132.4 and 19 CFR 10.31

**19.** Company A imported seven ball bearings with integral shafts from Germany, which are classified under subheading 8482.10.1080, Harmonized Tariff Schedule of the United States, at a 2.4 percent *ad valorem* duty rate and are subject to antidumping duties. The ball bearings are shipped by air and formally entered at John F. Kennedy International Airport. The total value of the shipment is $5,798.00. The applicable antidumping duty cash deposit rate is 68.89 percent. What are the total amount of fees and estimated duties that should be reported on CBP Form 7501?

    A.  $4,019.24
    B.  $3,994.24
    C.  $4133.39
    D.  $4,158.39
    E.  $164.15

**Category IV – Entry**

**20.** Absolute Quota merchandise imported in excess of the admissible quantity must be disposed
   of using an approved method.  Which of the following is not an approved method of
disposal?

      A.  Place into a Foreign Trade Zone, until the next quota opening period
      B.  Enter into a Warehouse, until the next quota opening period
      C.  Enter into the U. S. Commerce
      D.  Exported under Customs supervision
      E.  Destroyed under Customs supervision

**21.** Which part of 19 CFR addresses Inspection, Search, and Seizure?

      A. 112
      B. 128
      C. 133
      D. 134
      E. 162

**22.**  Whenever goods subject to different rates of duty are so packed together that the quantity or
value of each class of goods cannot be readily ascertained by customs officers by means
sampling, verification of packing lists, or commercial settlement tests, then the commingled
goods shall be subject to _____.

      A. the lowest rate of duty applicable to any part of the shipment
      B. the average rate of duty applicable to any part of the shipment
      C. the highest rate of duty applicable to any part of the shipment
      D. 10% the value of the shipment
      E. 100% the value of the shipment

**23.** Under which situation below would HTSUS General Notes 3(e)(v) apply?

    A. Merchandise was exported from Houston, TX on December 30, 2014, and arrived in Panama City, Republic of Panama, on January 10, 2015.  The merchandise was released by the Panamanian National Customs Authority and moved to the consignee's warehouse where the sale was canceled by the purchaser.  The merchandise was returned to the carrier and returned to Houston, TX on January 25, 2015.

    B. Merchandise was exported from Houston, TX on December 30, 2014, and arrived in Panama City, Republic of Panama, on January 10, 2015.  The merchandise remained in possession of the carrier at the shipping terminal where the sale was canceled. The merchandise was returned to Houston, TX on February 20, 2015.

    C. Merchandise was exported from Houston, TX on December 30, 2014, and arrived in Panama City, Republic of Panama, on January 10, 2015.  The merchandise remained in possession of the carrier at the shipping terminal where the sale was canceled.  The merchandise was returned to Houston, TX on February 6, 2015.

    D. Merchandise was exported from Houston, TX on December 30, 2014, and arrived in Panama City, Republic of Panama, on January 10, 2015.  The merchandise was released by the Panamanian National Customs Authority and delivered to the buyer at the buyer's storage facility.  The carrier realized that the wrong merchandise was delivered to the buyer and immediately notified the buyer of the error.  The buyer returned the merchandise to the carrier with the original seal intact.  The carrier shipped the merchandise back to Houston, TX on February 6, 2015.

    E. Merchandise was exported from Houston, TX on December 30, 2014, and arrived in Panama City, Republic of Panama, on January 10, 2015.  The merchandise was held by Panamanian National Customs Authority and determined to be inadmissible into Panama.  The container was returned by Panamanian Customs directly to the carrier and shipped back to Houston, TX on February 26, 2015.

**24.** Loudspeakers mounted in an enclosure were previously exported from the U.S. to Canada for repairs.  The repaired speakers are re-exported to the U.S.  and the importer claims preferential treatment under the North American Free Trade Agreement.  The speakers are classifiable under subheading 8518.21.00 of the Harmonized Tariff Schedule of the United States (HTSUS), dutiable at 2.4% *ad valorem*.  The importer enters the speakers under subheading 9802.00.50, HTSUS and substantiates the claim. The speakers are appraised at $8,000.00 and the value of the repairs is $1,800.00.  What is the consumption duty on this merchandise?

    **A.** $0.00
    **B.** $43.20
    **C.** $235.20
    **D.** $192.00
    **E.** $148.80

**25.** A nominal consignee is unable to secure the services of a broker to make entry on his behalf. What option is available to the nominal consignee?

    A.  He may make entry as the importer of record
    B.  He may notify the purchaser of the goods to designate him as the importer of record
    C.  He may serve as the ultimate consignee
    D.  He may notify the owner or the purchaser to designate a licensed Customs broker to make entry
    E.  He may secure the permission of the actual owner of the goods to be importer of record

**26.** Which of the following is eligible for informal entry?

    A. Shipments of commercial merchandise valued between $3,000 and $9,500
    B. Personal effects not exceeding $2,500 in value of citizens who have died abroad.
    C. An open container of 100 cigars for personal use by, and in the possession of, a crewmember upon arrival of the vessel
    D. Antique 1940s furniture shipped from Italy, valued at $10,000
    E. Household effects used abroad and imported in pursuance of an agreement for purchase.

**27.** Which of the following mail articles are not subject to examination or inspection by Customs?

    A.  Bona-fide gifts with an aggregate fair retail value not exceeding $800 in the country of shipment

    B.  Mail packages addressed to officials of the U.S. Government containing merchandise

    C.  Diplomatic pouches bearing the official seal of France and certified as only containing documents

    D.  Personal and household effects of military and civilian personnel returning to the United States upon the completion of extended duty abroad

    E.  Plant material imported by mail for purposes of immediate exportation by mail

**28.** Which of the following scenarios is **<u>NOT</u>** subject to NAFTA restrictions on the duty referral program?

    A.  Qualifying imported metal-bearing materials placed in a bonded warehouse for smelting or refining that is processed and subsequently withdrawn for exportation to Canada or Mexico

    B.  Merchandise imported from Chile and entered under subheading 9813.00.05 of the Harmonized Tariff Schedule of the United States (HTSUS) for repair, alteration and processing that is destined for exportation to Canada or Mexico

    C.  Merchandise in domestic status that is withdrawn from a foreign trade zone for exportation to Canada or Mexico

    D.  Merchandise in non-privileged foreign status that is withdrawn from a foreign trade zone for exportation to Canada or Mexico

    E.  Merchandise in privileged foreign status that is withdrawn from a foreign trade zone for exportation to Canada or Mexico

**29.** Which one of the following is exempt from duties?

    A. Articles exported from the United States which are returned within 45 days after such exportation from the United States as undeliverable and which have not left the custody of the carrier or foreign customs service

    B. Articles exported from the United States which are returned within 90 days after such exportation from the United States as undeliverable and which have not left the custody of the carrier or foreign customs service

    C. An individual shipment valued at $1,000

    D. Flowers shipped to the United States for funeral homes

    E. An informal mail entry, not exceeding $2,500 in value

**Category V – Classification**

**30.** What is the **CLASSIFICATION** for a lace-trimmed bed sheet made from printed, non-napped 55% cotton and 45% polyester woven fabric?

      A. 6302.10.0008
      B. 6302.21.3020
      C. 6302.21.5020
      D. 6302.21.9020
      E. 6302.31.5020

**31.** What is the **CLASSIFICATION** of a men's sweater vest constructed of 50% polyester, 50% cotton, knit fabric, the outer surface of which measures 8 stitches per 2 centimeters in the direction the stitches were formed?

      A.  6110.20.2010
      B.  6110.20.2030
      C.  6110.30.3010
      D.  6110.30.3030
      E.  6211.33.9054

**32.** What is the **CLASSIFICIATION** of glazed ceramic mosaic cubes on a mesh backing which measure approximately 1 centimeter wide by 1 centimeter long by 1 centimeter thick, and have a water absorption coefficient by weight of .3 percent?

      A. 6802.10.0000
      B. 6907.21.2000
      C. 6907.21.3000
      D. 6907.30.3000
      E. 6914.10.8000

**33**. What is the **CLASSIFICATION** of current-production wall art depicting abstract flowers and birds  that is mechanically printed, via lithography, onto sheets of paper, the paper measuring .35 mm in thickness that have been permanently mounted onto a backing of .50 mm thick paperboard?

      A. 4911.91.2040
      B. 4911.91.3000
      C. 4911.99.6000
      D. 9701.10.0000
      E. 9702.00.0000

**34**. Company XYZ plans to import an insulated cooler bag constructed with an exterior surface of textile material that is 55 percent nylon and 45 percent polyester, of man-made fibers.  The bag features a fabric strap and a top zipper closure around three sides.  The interior of the bag is lined with a waterproof plastic sheeting material and has a mesh pocket on one interior wall to hold a can or bottle in place.  The bag is designed to maintain the temperature of food and beverages during travel.

What is the **CLASSIFICATION** for the insulated cooler bag?

> A. 3923.29.0000
> B. 4202.92.0807
> C. 4202.92.1000
> D. 4202.92.4500
> E. 6307.90.9889

**35.** What is the correct **CLASSIFICATION** of 1 kilogram of peanuts, not roasted or cooked, in the shell from Brazil imported for personal use to make peanut butter?

> A. 1202.30.0500
> B. 1202.41.0540
> C. 1207.10.0000
> D. 2008.11.0020
> E. 2008.11.4200

**36.** What is the **CLASSIFICATION** of full-sized, unshelled, frozen lima beans, of the Phaseolus genus, entered on June 10, 2017?

> A. 0708.20.1000
> B. 0708.20.9010
> C. 0710.22.1000
> D. 0710.22.1500
> E. 0713.39.2140

**37.** Which of the following is **<u>NOT</u>** a feature or requirement listed in the definition of recreational performance outerwear?

> A. Pockets with a zipper closure
> B. Reinforced knees
> C. Adjustable powder skirt
> D. Sealed inner leg seams
> E. Multi-adjustable hood

**38**. What is the **CLASSIFICATION** of a pair of boys' 100% polyester trousers with the following features:  water resistant within the meaning of Additional U.S. Note 2 to Chapter 62, critically sealed seams, hook and loop cargo pockets, outer leg vents, articulated knees, hidden elastic leg sleeve, and a weatherproof front zipper closure?

> A. 6203.43.0920
> B. 6203.43.1110
> C. 6203.43.1190
> D. 6203.43.7510
> E. 6203.43.7590

**39.** What is the **CLASSIFICATION** of a teacup that is made of a porcelain containing 28 percent of tricalcium phosphate, valued at $18, and offered for sale in the same pattern as all of the other articles listed in Additional U.S. Note 6(b) to Chapter 69, HTSUS, with the aggregate value of all those articles listed in that note being $900?

> A. 6911.10.2500
> B. 6911.10.3810
> C. 6911.10.5800
> D. 6911.10.8010
> E. 6912.00.4500

**40.** The submitted sample, identified by the importer as "Zori-style # SF123," is a pair of women's, open-toe/open-heel, and flip-flop thong sandals with foamed rubber or plastic outer soles. The "V" shaped strap uppers consist of textile straps and thongs which go between the first and second toes.  The upper straps and thongs are assembled to the soles by rubber/plastic plugs. The thickness of the outer soles of the sample measure 1.75 inches at the thickest point and 1.25 inches at the thinnest point. Rubber or plastics accounts for more than 10 percent total weight of the shoe.  The F.O.B. value is $6.50 per pair.

What is the **CLASSIFICATION** subheading, within the Harmonized Tariff Schedule of the United States (HTSUS), for these sandals?

> A. 6402.20.0000
> B. 6402.99.3165
> C. 6403.20.0000
> D. 6404.19.3960
> E. 6404.19.4260

**41.** You have a mixture of the following chemical substances ((1,2-phenylene)bis-(iminocarbonothioyl)) bis(carbamate) (CAS # 23564-05-8), and 30 percent other additives and dispersing agents.  The main chemical ingredient listed is a fungicide, used to kill fungus on various plants.  In its pure chemical form the main ingredient is an "Organo-sulfur compounds: Other: Aromatic: Pesticides of Heading 2930.  The product is packaged for sale as imported for retail sale directly to consumers.

In which of the following 6 digit subheadings would you classify the imported product described above?

> A. 2924.11
> B. 2930.90
> C. 3302.10
> D. 3808.92
> E. 3824.99


**42.** What is the **CLASSIFICATION** of a mixture of an essential oil and odoriferous compounds obtained from extraction of peach pits, mixed with colorant, and not containing any alcohol, for use in the manufacturing of a soda type beverage?

> A. 1507.10.0000
> B. 1511.10.0000
> C. 1518.00.4000
> D. 3302.10.1000
> E. 3824.99.9295

**43.** What is the **CLASSIFICATION** of a work glove, made of a synthetic suede (a non-woven polyester fabric with the textile making up 85% of the weight and the plastic making up 15%)?  The glove features fourchettes, thermo-plastic rubber attachments on the knuckles on the back side, rubber overlays on the palm side of the thumb, and a cuff with a hook and loop closure to tighten the glove at the wrist.

> A. 6116.10.7520
> B. 6216.00.2425
> C. 6216.00.2925
> D. 6216.00.5420
> E. 6216.00.5820

**44.** What is the **CLASSIFICATION** of a floor-standing, coin-operated, shoe brushing/polishing machine used in public places such as hotels and airports, the user inserts the required monetary payment and places his/her foot onto the foot plate.  Using rotating internal brushes powered by a self-contained electric motor, the machine automatically brushes/polishes the surface and both sides of the shoe. While waiting for the process to be completed, the user can view material posted on the machine's advertising board.  The process stops when (1) the user removes his/her foot or (2) the fixed brushing/polishing time is over.

    A.  8453.20.0000
    B.  8467.29.0035
    C.  8476.89.0000
    D.  8479.10.0080
    E.  8479.89.9499

## Category VI – Value

45. Transaction value means:

> A. The price actually paid or payable for the merchandise
> B. The price actually paid or payable for the merchandise plus buying commissions, royalties, assists, packing costs and proceeds
> C. The price actually paid or payable for the merchandise plus selling commissions, royalties, assists, packing costs and proceeds
> D. The price actually paid or payable for the merchandise plus selling commissions, royalties, packing costs and U.S. inland freight
> E. The price actually paid or payable plus buying commissions, royalties, assists, packing and freight costs

**46.** A U.S. importer and a foreign manufacturer enter into a contract for 500 wooden tables. In the contract, the manufacturer agrees to provide 500 tables at a price of $500 per table. The tables are to be delivered in lots of 100 tables on the first of each month for a period of five months.

The importer provided the foreign manufacturer with an assist in the form of special tools. The tools were purchased from an unrelated party in Chicago, and delivered for free to the manufacturer abroad. The tools have a useful life of 500 tables.

Several weeks later, the first shipment under the contract, which contains the first 100 tables, arrives in the United States.

Which of the following methods of apportioning the assist is **NOT** acceptable?

> A. Apportion the entire value of the assist to the first 100-table shipment
> B. Apportion the value of the assist over the entire anticipated production
> C. Apportion the entire value of the assist to the second 100-table shipment when it arrives
> D. Apportion the value of the assist over the number of units produced up to the time of the first shipment
> E. Apportion the value of the assist in another manner in accordance with GAAP

**47.** Your client is importing a used aircraft engine manufactured in England from a Canadian shipper. Your client has accepted the aircraft engine on consignment and has promised to find a US buyer for the engine.  Your client will receive a commission on the sale of 5%. The asking price for the engine is $90,000. The shipper paid all of the transportation costs ($1,000) from its dock to your client's dock on a through bill of lading. What is the entered value of the used aircraft engine?

> A. Under transaction value, the entered value of the aircraft engine is the asking price of $90,000
>
> B. Under transaction value, the dutiable value of the aircraft engine is the asking price of $90,000, minus the $1,000 transportation cost, plus the sales commission due the importer of $4,500 ($90,000x5%), or $93,500
>
> C. Under transaction value, the entered value of the aircraft engine is the asking price of $90,000, plus the $1,000 transportation cost, plus the sales commission due the importer of $4,500 ($90,000 x 5%), or $95,500
>
> D. Under transaction value, the entered value of the aircraft engine is the asking price of $90,000, minus the $1,000 transportation cost, minus the sales commission due the importer of $4,500 ($90,000 x 5%), or $84,500
>
> E. Transaction value cannot be used on a consignment shipment, the entered value of the aircraft engine cannot be determined under transaction value and one of the other bases of appraisement must be applied

**48.** A shipment of Evaporative Air Coolers with a documented U.S. value of $100,000 was exported to Taiwan for $2000 in repairs, and then reimported into the U.S. Which of the following value(s) and classification(s) apply to the Evaporative Air Coolers?

> A. $98,000 under 9802.00.5060
> B. $102,000 under 8479.60.0000
> C. $100,000 under 8479.60.0000 and $2000 under 9802.00.5060
> D. $100,000 under 9802.00.5060 and $2000 under 8479.60.0000
> E. $102,000 under 9802.00.5060

**49.** Seller S offers the following quantity discounts on the goods purchased by the importer prior to their importation.

      - 1 to 49 units - no discount
      - 50 to 99 units - 5% discount
      - Over 100 units - 10% discount

In the first case, importer A purchases and imports 60 units in a single shipment.  The invoice price reflects a 5% discount.  In the second case, importer B purchases 60 units in a single transaction at a price which reflects a 5% discount but imports them in 3 separate shipments each comprising 20 units.  What is the customs value of the imported merchandise in both cases?

      A. In both cases, the customs value is the price actually paid or payable for the imported goods reflecting a 5% discount.
      B. In the first case, the customs value is the price actually paid or payable for the imported goods reflecting a 5% discount.  In the second case, the customs value is the price actually paid or payable for the imported goods reflecting no discounts.
      C. In both cases, the customs value is the price actually paid or payable for the imported goods reflecting a 10% discount.
      D. In the first case, the customs value is the price actually paid or payable for the imported goods reflecting a 5% discount.  In the second case, the customs value is the price actually paid or payable for the imported goods reflecting a 10% discount.
      E. In both cases, the customs value is the price actually paid or payable for the imported goods reflecting no discounts.

**50.** The importer, Company A, imports 1,000 batteries from an unrelated overseas seller at a price of $0.50 CIF per battery.  The overseas seller buys the batteries in bulk from an overseas manufacturer.  Company A requires each battery to be individually wrapped in polythene with a cardboard backing for display at retail outlets in the United States.  Company A provides the polythene and cardboard backing materials free of charge to the overseas seller.  Company A obtains the materials from a supplier in the United States at a cost of $40 for the quantity required to wrap 1,000 batteries.  The seller of the imported batteries arranges for an overseas packing company to carry out the wrapping/packing.  This company charges the seller of the imported goods, $60 per 1,000 batteries for this service.  The documents show that the total overseas freight and insurance costs totaled $10.

What is the customs value in the United States for a shipment of 1,000 batteries?

      A. $530
      B. $500
      C. $600
      D. $540
      E. None of the above.

## Category VII – Drawback

**51.** Which of the following documents is an acceptable proof of export for drawback purposes?

    A.  Notice of Intent to Export
    B.  Certificate of Delivery
    C.  Certificate of Manufacture and Delivery
    D.  Bill of lading with laden on board date
    E.  Waiver of Prior Notice of Intent to Export

**52.**  When can a claimant amend an unliquidated drawback claim?

    A. Claims may be amended at any time provided the claim is unliquidated
    B. Within 90 days of the date the claim was received by CBP
    C. Within 180 days of the date the claim was received by CBP
    D. Within 3 years after the date of exportation or destruction of the articles which are the subject of the original drawback claim
    E. Within 5 years after the date of exportation or destruction of the articles which are the subject of the original drawback claim

**53.** Based on the information below, what is the claimed amount for the merchandise processing fee (MPF) on an Unused Direct Identification 1313(j)(1) drawback claim?

- Imported merchandise:
  500 bikes ($200 per unit) $100,000
  500 spare parts ($175 per unit) $87,500
  Invoice value $187,500
  Less Non-Dutiable Charges (NDC) -$2,500
  Total Entered Value $185,000
  Total MPF paid $485.00
  MPF rate .3464%

- Exported merchandise for drawback purposes: 200 bikes

    A. $103.47
    B. $102.43
    C. $138.56
    D. $137.17
    E. $480.15

## Category VIII – Intellectual Property Rights

**54.** What is the difference between restricted gray market goods and goods bearing counterfeit marks?

    A. There is no difference. Gray Market and counterfeit goods are considered the same.
    B. Gray Market goods are harder to distinguish than counterfeit goods.
    C. The seizure process is different between Gray Market and counterfeit goods.
    D. Gray Market goods bear a trademark or trade name which has been applied with the approval of the trademark owner as genuine and is recorded with Customs and Border Protection.
    E. Gray Market products are of lesser quality products just like counterfeit products.

**55.** If imported merchandise is detained because CBP suspects it bears a counterfeit version of a mark that is registered with the U.S. Patent and Trademark Office and recorded with CBP, and the importer, upon written notification, does not provide information within seven days of such notification that establishes to CBP's satisfaction that the suspect mark is not counterfeit, or provides information that is insufficient to establish that the suspect mark is not counterfeit, CBP may disclose to the right holder:

    A. The entry documents and a sample or digital images of the merchandise including serial numbers, dates of manufacture, lot codes, batch numbers, universal product codes or other identifying marks appearing on the merchandise or its retail packaging
    B. The names and addresses of the exporter and importer
    C. The entry documents and the name and address of the manufacturer
    D. A sample or digital images of the merchandise including serial numbers, dates of manufacture, lot codes, batch numbers, universal product codes or other identifying marks appearing on the merchandise or its retail packaging, but no entry documents
    E. All of the above

**56.** While examining your client's shipment of 1,000 handbags at the container examination station, CBP discovered that the goods bear a mark suspected of infringing a trademark associated with a well-known designer.  The designer's mark is registered on the Principal Register of the U.S. Patent and Trademark Office and recorded with CBP.  The suspect mark is not identical with or substantially indistinguishable from the registered and recorded mark; rather, CBP determines that it copies or simulates the registered and recorded mark and, consequently, detains the handbags.  Which of the following options is available to the importer to obtain relief from detention within 30 days?

A. The importer may remove or obliterate the suspect marks from the handbags in such a manner that they are incapable of being reconstituted

B. The importer may label the merchandise with the following statement: "This product is not a product authorized by the United States trademark owner for importation and is physically and materially different from the authorized product"

C. The importer  may file a petition under 19 CFR pt. 171, persuasively arguing that the  suspect marks do not actually so resemble the recorded mark as to be likely to confuse the public

D. The importer may claim the personal use exemption under 19 CFR 148.55

E. None of the above

**57.** Which of the following shipments does not contain restricted gray market merchandise as defined in 19 C.F.R. § 133.23?

A.  A shipment of jeans, bearing a trademark registered and recorded in the United States, applied by a U.S. trademark owner's foreign licensee independent of the U.S. trademark owner.

B.  A shipment of shoes, bearing a trademark registered and recorded in the United States, applied under the authority of a foreign trademark owner other than the U.S. owner, a parent or subsidiary of the U.S. owner, or a party under common ownership or control with the U.S. owner, to whom the U.S. owner sold the foreign title.

C.  A shipment of jackets, bearing a trademark registered and recorded in the United States, applied under the authority of a foreign trademark owner other than the U.S. owner, a parent or subsidiary of the U.S. owner, or a party under common ownership or control with the U.S. owner, from whom the U.S. owner acquired the domestic title.

D.  A shipment of books, bearing a U.S. registered and recorded trademark applied by a foreign subsidiary of the U.S. owner, determined by CBP to be different from the books authorized by the U.S. owner for importation or sale in the United States. The books feature a conspicuous label that they are not authorized by the U. S. owner for importation into the U.S. and are physically and materially different from the authorized ones.

E.  A shipment of shirts, bearing a genuine foreign trademark owned by a foreign trademark owner, identical with or substantially indistinguishable from a trademark registered and recorded in the United States. The shipment was imported without the authorization of the U.S. owner who is not related to the foreign owner.

**58.** Regarding "prohibited or restricted importations" relative to "articles involved in unfair competition," after the U.S. International Trade Commission issues an exclusion order pursuant to 19 U.S.C. § 1337, an importer of record has the following option(s) with respect to the entry of merchandise subject to that exclusion order:

A.  The importer may enter merchandise subject to an exclusion order if the importer's basic importation bond contains a provision authorizing such action.

B.  The importer may enter merchandise subject to an exclusion order for thirty days after the exclusion order issues, at which point the Commission's exclusion order becomes final and entry is no longer permitted.

C.  Until the time the Commission's exclusion order becomes final, the importer may enter merchandise subject to the exclusion order by filing a single entry bond with CBP in an amount determined by the U.S International Trade Commission to be sufficient to protect the complainant from any injury.

D.  Until the time the Commission's exclusion order becomes final, the importer may enter merchandise subject to the exclusion order by filing a single entry bond with CBP in an amount set by the port director to ensure compliance with the customs and related laws.

E.  None of the above because an exclusion order is effective on the date it is issued and merchandise subject to that exclusion order cannot be entered lawfully after this point.

**Category IX – Bonds**

**59.** A principal is permitted to file drawback claims under the exporter's summary procedure and the principal's claims are paid prior to final determination.  The bond for that principle must include an agreement that contains all of the following conditions except:

    A. The principal correctly described the exported articles in the claim
    B. The principal agrees to provide proof of export upon request
    C. The principal agrees to pay any charges due CBP as provided by law or regulation
    D. Correctly stated the facts of exportation in the claim; the principal and surety, jointly and severally agree to refund, on demand, any money claimed by CBP to have been erroneously paid as a result of an incorrect statement on the drawback claim
    E. The Principal is entitled to the drawback claimed

**60.** Under 19 CFR 113 Custom Bonds which statement is **<u>FALSE</u>**.

    A.  The surety, as well as the principal, remain liable on a terminated bond for obligations incurred prior to termination
    B.  The amount of any CBP bond must not be less than $100, except where the law or regulation expressly provides that a lessor amount may be taken
    C.  Each bond must bear the date it was executed
    D. If a bond is terminated, all new customs transactions may be charged against the bond
    E.  No person will be accepted as surety on any CBP bond while in default as principal on any other CBP bond

61.   Which one of the following bonds is required to be Single Entry?

    A.  Basic Custodial Bond
    B.  Control of Containers and instruments on International traffic Bond
    C. Commercial Gauger Bond
    D. Production of Bill of Lading Bond
    E.  Foreign Trade Zone Operator Bond

**Category X – Free Trade Agreements**

**62.** The NAFTA Certificate of Origin must be retained in the _____.

    A. U.S. by the importer until notification of liquidation is received from CBP
    B. NAFTA country of origin by the producer for one year after liquidation
    C. NAFTA country of origin by the producer for five years after liquidation
    D. U.S. for five years after entry of the good with all relevant documentation
    E. NAFTA country of origin for five years after date of liquidation

**63**. If the port director/center director finds a NAFTA Certificate of Origin to be illegible, defective or incomplete, the importer must be given a period of not less than _____ to present a corrected certificate.

    **A.**    5 working days
    **B.**    5 calendar days
    **C.**    10 calendar days
    **D.**    10 working days
    **E.**    30 calendar days

**64.**  The chemical Rutoside will be imported into the U.S. from Germany in powder form, packed in drums. The tariff number is 2938.10.00.00, which qualifies for use of the Special Program Indicator (SPI) K. What other reference must comply to provide for a free rate of duty?

    A.  Note 3 for HTS Chapter 29
    B.  General Note (GN) 5
    C.  Pharmaceutical Appendix
    D.  Chemical Appendix
    E.  No other reference is required with SPI K

**65**. Under the North American Free Trade Agreement (NAFTA), which of the following processes does NOT confer origin for verification of heading 2710?

    A. Catalytic hydroprocessing
    B. Cracking
    C. Vacuum distillation
    D. Eliminating solvents, including solvent water
    E. Atmospheric distillation

**Category XI – Fines and Penalties**

**66. A** broker unknowingly employs a convicted felon and 1 year after employment discovers the existence of such a conviction.  Which penalty action listed below would not lie?

A. If he seeks approval of the Secretary within 30 days after discovery of the existence of the conviction, no penalty will be assessed
B. If he seeks approval at some time after 30 days from the date of discovery, a $5,000 penalty would be assessed
C. If he does not seek approval until after Customs becomes aware of the violation, a $10,000 penalty would be assessed
D. If he does not seek approval until after Customs becomes aware of the violation, a $25,000 penalty would be assessed
E. If he seeks approval, but is denied, and continues to employ the convicted felon, a $30,000 penalty would be assessed

**67.**  A false statement contained in a petition may subject the petitioner to prosecution under the provisions of:

A. 18 U.S.C. 1001
B. 19 U.S.C. 1497
C. 19 U.S.C. 1592
D. 19 U.S.C. 1641
E. 19 U.S.C. 1593a

**68.** Blue-sky customs broker is filing a petition for the restoration of sale under section 613, Tariff Act of 1920, as amended. Blue-sky's petition must be file when:

A. within 60 days when Blue-sky is notified in writing
B. within 90 days when Blue-sky is notified in writing
C. must be filed within1 month after the date of sale
D. must be filed within 3 months after the date of sale
E. no time limits is required.

**69.** Petitions for relief from seizures must be filed within _____ from the date of mailing of the notice of seizure.

     A. 5 days
     B. 10 days
     C. 30 days
     D. 60 days
     E. 90 days

## Category XII – Foreign Trade Zones/Warehouses

**70.** Which of the following terms describe the association of final products removed from or consumed within a petroleum refinery foreign trade subzone to feedstock admitted into the petroleum refinery foreign trade subzone in the current or prior manufacturing period?

    A. Relative value
    B. Feedstock factor
    C. Producibility
    D. Attribution
    E. Privileged foreign status

**71.** What status designation should be applied to merchandise taken into a Foreign Trade Zone for the sole purpose of exportation, destruction or storage?

    A. Privileged Foreign Status
    B. Non-Privileged Foreign Status
    C. Domestic Status
    D. Activated Status
    E. Zone-Restricted Status

**72.** Customs warehouses used for the storage of heavy and bulky imported merchandise are designated as what class of warehouse?

    A.  Class 4
    B.  Class 5
    C.  Class 7
    D.  Class 8
    E.  Class 11

**73.** A _____ is used to apply for admission of merchandise into a Foreign Trade Zone.

    A.  CBP Form 28
    B.  CBP Form 214
    C.  CBP Form 301
    D.  CBP Form 3461
    E.  CBP Form 7501

**Category XIII – Marking**

**74.** Which article is **NOT** exempt from country of origin marking requirements when imported into the United States?

    A. A unicycle that was manufactured in 1953
    B. A clothes dryer machine made in Wisconsin
    C. An original oil painting produced in France
    D. A lithograph printed poster produced in Italy
    E. A set of glasses to be used by the importer

**75.** Which of the below is not an approved marking method?

    A. Goods of a NAFTA country may be marked with the name of the country of origin in English, French or Spanish
    B. Country of Origin marking shall be marked in a conspicuous place, legibly, indelibly, and permanently
    C. When technically infeasible to permanently mark a good of a NAFTA country, the article may be marked by means of a string tag or adhesive label securely affixed
    D. Articles marked with paper sticker labels must be affixed in a conspicuous place and must be sufficiently permanent
    E. The country or origin label may be sewn into the inside of the pocket

**76.** Any intentional removal, defacement, destruction, or alteration of a marking of the country of origin required by section 304, Tariff Act of 1930, as amended (19 U.S.C. 1304), and 19 CFR 134 in order to conceal this information may result in criminal penalties of :

    A. up to $1,000 and/or imprisonment for 1 year, as provided in 19 U.S.C. 1304(h).
    B. up to $2,000 and/or imprisonment for 1 year, as provided in 19 U.S.C. 1304(h).
    C. up to $3,000 and/or imprisonment for 1 year, as provided in 19 U.S.C. 1304(h).
    D. up to $4,000 and/or imprisonment for 1 year, as provided in 19 U.S.C. 1304(h).
    E. up to $5,000 and/or imprisonment for 1 year, as provided in 19 U.S.C. 1304(h).

**77.** Which item is listed on the j-list?

    A. Bundles of red-cedar shingles
    B. Finished Leather
    C. Snelled Fish Hooks
    D. Barbed Wire
    E. Sponges

## Category XIV – Power of Attorney

**78.** How long must a Broker retain a revoked Powers of Attorney to be retained by a broker?

    A. For 5 years after the date of revocation
    B. For 3 years after the date the client ceases to be an active client
    C. Until client advises no longer needed
    D. 12 months after the last entry the broker prepared on behalf of client
    E. As long as broker is in business

**79.** Powers of Attorney issued by a partnership shall be limited to a period not to exceed
_____ from the date of execution.

    A. 1 year
    B. 2 years
    C. 3 years
    D. 5 year
    E. 10 years

**80.** Which is the best form to use to execute a Corporate Surety Power of Attorney?

    A. 4455
    B. 4811
    C. 5291
    D. 5297
    E. 7501

**STOP**
**THIS IS THE END OF THE TEST.**

**You may use the remaining time to go back and check your answers.**
**Please double check that your address is CORRECTLY bubbled in on your answer sheet.**
**Your entire address must be filled in, including apartment numbers. Incorrect bubbling of**
**your address will delay notifications of the results of the exam. If your address does not fit into**
**the appropriate boxes, provide the Test Administrator with your full address AFTER the**
**exam. If you have finished double checking your information and would like to participate in**
**the survey, please turn the page and respond to the following questions.**

## Section 3: Post-Examination Process Evaluation Survey

This survey is being administered to collect information about the examination process for the
Customs Broker Exam. The survey is completely **voluntary** and your responses will have no impact
on your scores for this exam.

1) How difficult was the examination?

A) Very Easy
B) Easy
C) Moderate
D) Difficult
E) Very Difficult

2) How clear were the examination questions?

A) Very clear
B) Clear
C) Neither clear nor difficult to understand
D) Difficult to understand
E) Very difficult to understand

3) Would you have liked more, less, or the same amount of time for this examination?

A) Less time – I finished early
B) Same amount of time – it was just right
C) Slightly more time – to consider or review my answers
D) More time – I did not finish the examination

# EXHIBIT B

# DECLARATION OF JENNELLE CRAY

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY M. REIF, JUDGE

_____

BYUNGMIN CHAE,                                    :
                                                  :
                                                  :
                    Plaintiff,                    :          Court No. 20-00316
                                                  :
          v.                                      :
                                                  :
ALEJANDRO MAYORKAS, in his capacity as the :
Secretary of Homeland Security, JANET             :
YELLEN, in her capacity as the Secretary of       :
Treasury, THE UNITED STATES DEPARTMENT :
OF HOMELAND SECURITY, THE UNITED                  :
STATES DEPARTMENT OF TREASURY,                    :
UNITED STATES CUSTOMS AND BORDER                  :
PROTECTION, and THE UNITED STATES OF              :
AMERICA,                                          :
                                                  :
                    Defendant.                    :
_____          :

Declaration of Certification of Administrative Record:

1.     I am Jennelle Cray, Acting Director, Commercial Operations, Revenue & Entry, U.S.
       Customs and Border Protection (CBP).

2.     I am the current custodian of records for administrative appeals of U.S. Customs and
       Border Protection's customs broker license denial cases.

3.     On August 19, 2021, the Commercial Operations, Revenue & Entry Division prepared
       the administrative record in the above-referenced action, which consisted of what CBP
       considered a complete list of the documents and materials specified in paragraphs (1), (2)
       and (3) of U.S. Court of International Trade (CIT) Rule 73.3(a).  *See* ECF No. 36.

4.     Since the administrative record was filed, CBP has discovered that the following
       document was inadvertently omitted from the administrative record.  The document is
       attached to the Government's Motion to Correct the Record:  Exhibit A, *April 25, 2018
       Customs Broker License Examination Series 840*.

5.     CBP was aware of the contents of this document and, in addition to the documents
       referenced by CIT Rule 73.3, would have been considered directly or indirectly by CBP
       when making the challenged decisions.

6.     I declare under penalty of perjury that the foregoing is true and correct to the best of my
       knowledge.

Signed February 24, 2022:


Jennelle Cray
Acting Director, Commercial Operations, Revenue & Entry,
Trade Policy & Programs, Office of Trade
U.S. Customs and Border Protection