Slip Op. 22-59

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **BYUNGMIN CHAE,** | |
| Plaintiff, | |
| v. | |
| **JANET YELLEN, United States Secretary of the Treasury, ALEJANDRO MAYORKAS, United States Secretary of Homeland Security, UNITED STATES DEPARTMENT OF THE TREASURY, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES,** | **Before: Timothy M. Reif, Judge**<br><br>**Court No. 20-00316** |
| Defendants. | |

### <u>OPINION</u>

[Denying plaintiff's motion for judgment on the agency record.]

Dated: <u>June 6, 2022</u>

<u>Matthew C. Moench</u>, King Moench Hirniak & Mehta, LLP, of Morris Plains, N.J., argued for plaintiff.

<u>Marcella Powell</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for defendants.  With her on the brief were <u>Brian M. Boynton</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, <u>Justin R. Miller</u>, Attorney-in-Charge, International Trade Field Office, and <u>Aimee Lee</u>, Assistant Director.  Of counsel on the brief was <u>Mathias Rabinovitch</u>, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

* * *

Reif, Judge: Plaintiff, Byungmin Chae, brings this action pursuant to U.S. Court of International Trade ("USCIT" or the "Court") Rule 56.1 to challenge the decision of U.S. Customs and Border Protection ("Customs") upholding the denial of plaintiff's appeal of his result on the Customs Broker License Exam ("CBLE" or "exam").[1]  Am. Compl., ECF No. 20; Br. in Supp. of Pl.'s Mot. for J. on the R. ("Pl. Br."), ECF No. 39; Reply ("Pl. Reply Br."), ECF No. 43; section 641(e) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1641(e) (2018).[2]  Customs denied plaintiff's appeal based on his failure to attain a passing score of 75% or higher on the CBLE held on April 25, 2018 ("April 2018 exam").  Def.'s Opp. to Pl.'s Mot. for J. on the R. ("Def. Resp. Br."), ECF No. 40; 19 C.F.R. § 111.11(a)(4).

Plaintiff appeals to the court Customs' decision to deny plaintiff credit for five questions on the April 2018 exam.[3]  *See* Pl. Reply Br. at 2.  Should plaintiff receive credit for three of the five contested questions, he would attain a passing score of 75%. Plaintiff contends also that he is eligible to receive attorney fees and other expenses

---

[1] The court notes with appreciation the participation of Matthew C. Moench as pro bono counsel in this action.

[2] Further citations to the Tariff Act of 1930, as amended, are also to the relevant portions of Title 19 of the U.S. Code, 2018 edition.

[3] Plaintiff appealed initially Customs' decision to deny plaintiff credit for seven questions on the exam.  *See* Pl. Br. at 1; Am. Compl.  Following the filing of defendants' memorandum in opposition to plaintiff's motion, however, plaintiff "concede[d] to the Government's interpretation and explanation" of two questions on the exam, and consequently withdrew his challenges to those questions.  Pl. Reply Br. at 2. Accordingly, plaintiff contends that he should receive credit for five questions: questions 5, 27, 33, 39 and 57.  *Id.*

under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  *See* Pl. Br. at 13-14.

Defendants oppose plaintiff's motion and argue that Customs' decision to deny plaintiff credit for each contested question was supported by substantial evidence.  *See* Def. Resp. Br. at 8; Def.'s Answer to First Am. Compl., ECF No. 27.  On this basis, defendants assert that plaintiff did not attain a passing score of 75% or higher on the April 2018 exam and, consequently, that Customs' "decision not to grant plaintiff a license due to his failure to attain a passing score . . . was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  Def. Resp. Br. at 5-6, 22-23; 5 U.S.C. § 706(2)(A).  Defendants contest also plaintiff's argument that he is entitled to attorney fees and other expenses under the EAJA.  *See id.* at 21-23.

For the reasons discussed below, plaintiff's motion is denied.

## BACKGROUND

Plaintiff sat for the CBLE on April 25, 2018.  *See* Am. Admin. R., Ex. A, ECF No. 51.  On May 18, 2018, Customs notified plaintiff that he had received a score of 65% — 10% below the passing score of 75%.  *See id.*  Plaintiff appealed this result, and the Broker Management Branch ("BMB") of Customs notified plaintiff on August 23, 2018, that, upon further review, his score had improved by two questions, resulting in a score of 67.5% — still short of the 75% score required to pass.  *See* Am. Admin. R., Exs. B, C.  Plaintiff then initiated with Customs' Executive Assistant Commissioner ("EAC") a review of the BMB's decision.  *See* Am. Admin. R., Ex. D.  By letter dated May 23, 2019, the EAC informed plaintiff that his score had improved by three additional

questions, resulting in a 71.25% score — again, short of 75%.  *See* Am. Admin. R., Ex. L.

Plaintiff inquired how to appeal the EAC's decision but was informed that "[t]here is no 3rd appeal."  Am. Admin. R., Ex. M.  Plaintiff learned subsequently, however, that he had been able to appeal his result to the USCIT and attempted to file a complaint on March 4, 2020.  *See* Pl. Br. at 2.  The Court docketed plaintiff's complaint on September 11, 2020.[4]

In a decision dated May 7, 2021, the court denied defendants' motion to dismiss plaintiff's complaint, granted plaintiff leave to amend his complaint to bring it into compliance with the procedural requirements of USCIT Rule 10(a), and sua sponte invited plaintiff to amend his complaint to bring it into compliance with the substantive requirements of USCIT Rule 12(b)(6).  *Chae I*, 45 CIT at __, 518 F. Supp. 3d at 1389-90.  On July 6, 2021, plaintiff filed an amended complaint seeking review of Customs' decision to deny plaintiff's appeal.  *See* Am. Compl. at 1-2.

**LEGAL FRAMEWORK**

**I.      Application for a customs broker's license**

Customs brokers are responsible for the application of statutes and regulations "governing the movement of merchandise into and out of the customs territory of the United States."  *Dunn-Heiser v. United States*, 29 CIT 552, 553, 374 F. Supp. 2d 1276,

---

[4] "It is unclear what exactly precipitated such a lengthy delay between [plaintiff's] filing and the Court's docketing; however, the court notes that plaintiff's original filing coincided with the onset of the COVID-19 pandemic."  *Chae v. Sec'y of the Treasury* (*Chae I*), 45 CIT __, __, 518 F. Supp. 3d 1383, 1390 (2021).

1278 (2005).  Pursuant to 19 U.S.C. § 1641(b)(2), the Secretary of the Treasury is

vested with "broad powers" with respect to the licensing of customs brokers.  *DePersia*

*v. United States*, 33 CIT 1103, 1105, 637 F. Supp. 2d 1244, 1247 (2009).  19 U.S.C. §

1641(b)(2) provides:

> The Secretary may grant an individual a customs broker's license only if
> that individual is a citizen of the United States.  Before granting the license,
> the Secretary may require an applicant to show any facts deemed
> necessary to establish that the applicant is of good moral character and
> qualified to render valuable service to others in the conduct of customs
> business.  In assessing the qualifications of an applicant, the Secretary may
> conduct an examination to determine the applicant's knowledge of customs
> and related laws, regulations and procedures, bookkeeping, accounting,
> and all other appropriate matters.

19 U.S.C. § 1641(b)(2).

Customs has promulgated several regulations to implement this statute.  For

instance, 19 C.F.R. § 111.11(a) details the "[b]asic requirements" for an individual to

obtain a customs broker's license:

> (a) INDIVIDUAL.  In order to obtain a broker's license, an individual must:
>
> (1) Be a citizen of the United States on the date of submission of the
> application . . . and not an officer or employee of the United States
> Government;
>
> (2) Attain the age of 21 prior to the date of submission of the
> application . . . ;
>
> (3) Be of good moral character; and
>
> (4) Have established, by attaining a passing (75 percent or higher)
> grade on an examination taken within the 3-year period before
> submission of the application . . . that he has sufficient knowledge of
> customs and related laws, regulations and procedures, bookkeeping,
> accounting, and all other appropriate matters to render valuable
> service to importers and exporters.

19 C.F.R. § 111.11(a)(1)-(4).  Further, 19 C.F.R. § 111.12(a) provides information with

respect to the submission of an application for a customs broker's license, and 19

C.F.R. § 111.13 regulates the examination that is described in 19 C.F.R. § 111.11(a)(4).

*See* 19 C.F.R. §§ 111.12(a), 111.13.

## II.     Customs Broker License Exam

Customs' regulations provide that "[t]he examination for an individual broker's

license" — referred to as the CBLE — is "designed to determine the individual's

knowledge of customs and related laws, regulations and procedures, bookkeeping,

accounting, and all other appropriate matters necessary to render valuable service to

importers and exporters."  *Id.* § 111.13(a); *see* 19 U.S.C. § 1641(b)(2).  The fact that

this "comprehensive written licensing exam" constitutes one of the requirements to

obtain a customs broker's license reflects the "complex[ity]" of the applicable statutes

and regulations as well as the "integral role [of customs brokers] in international trade."

*Dunn-Heiser*, 29 CIT at 553-54, 374 F. Supp. 2d at 1278.

Customs administers the CBLE twice each year, in April and October.  19 C.F.R.

§ 111.13(b).  The exam consists of 80 multiple choice questions.  *See* Am. Admin. R.,

Ex. N, at *1.  In addition, "[t]he exam is open book," and applicants are advised to bring

certain specified materials to which they may refer during the exam, including the

Harmonized Tariff Schedule of the United States ("HTSUS") and Title 19 of the Code of

Federal Regulations ("CFR").[5]  *Dunn-Heiser*, 29 CIT at 554, 374 F. Supp. 2d at 1278.

As noted, an applicant is required to attain a score of 75% or higher to pass the

CBLE.  19 C.F.R. § 111.11(a)(4); 19 U.S.C. § 1641(b)(2).  However, an applicant who

does not attain a passing score is entitled to retake the exam without penalty.  19 C.F.R.

§ 111.13(e).  In addition, an applicant who does not attain a passing score is entitled to

appeal this result to the BMB.  *Id.* § 111.13(f).  Should the BMB affirm the result, the

applicant is entitled to request that the EAC review the BMB's decision.  *Id.*  Should the

EAC uphold the BMB's decision, the applicant is then entitled to appeal the EAC's

decision to the USCIT.  19 U.S.C. § 1641(e)(1) ("[An] applicant . . . may appeal . . . by

filing in the Court of International Trade, within 60 days after the issuance of the

decision or order, a written petition requesting that the decision or order be modified or

set aside in whole or in part.").

## STANDARD OF REVIEW

This Court has jurisdiction to hear plaintiff's appeal pursuant to 28 U.S.C. §

1581(g)(1) ("The Court of International Trade shall have exclusive jurisdiction of any civil

action commenced to review . . . any decision of the Secretary of the Treasury to deny a

customs broker's license.").

---

[5] *See also Customs Broker License Exam (CBLE)*, U.S. CUSTOMS AND BORDER PROT.,
https://www.cbp.gov/trade/programs-administration/customs-brokers/license-
examination-notice-examination (last visited June 1, 2022) (providing a list of permitted
reference materials).

The U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has determined that two elements of review apply with respect to the appeal of an applicant's result on the CBLE.  *See Kenny v. Snow*, 401 F.3d 1359, 1361 (Fed. Cir. 2005).  The first element addresses whether Customs' decision to deny an applicant credit for a contested question was supported by "substantial evidence."  *Id.* at 1361-62 (concluding that the "decision to deny credit [for the contested question] [was] supported by substantial evidence") (citing 19 U.S.C. § 1641(e)(3)).  The second element addresses whether, on the basis of an applicant's failure to attain a passing score on the CBLE, Customs' decision to deny the applicant a customs broker's license was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at 1361 (citing 5 U.S.C. § 706).

I.      **"Substantial evidence"**

In reviewing Customs' decision to deny an applicant credit for a contested question on the CBLE, the Court must determine whether the decision was supported by "substantial evidence."  19 U.S.C. § 1641(e)(3).  In *Kenny*, a case involving the appeal of an applicant's result on the CBLE, the Federal Circuit stated:

> Underpinning a decision to deny a license arising from an applicant's failure to pass the licensing examination are factual determinations grounded in examination administration issues . . . which are subject to limited judicial review because "[t]he findings . . . as to the facts, if supported by substantial evidence, shall be conclusive."

*Kenny*, 401 F.3d at 1361 (citing 19 U.S.C. § 1641(e)(3)).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Further, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent the agency's finding from being supported by substantial evidence." *DePersia*, 33 CIT at 1104, 637 F. Supp. 2d at 1247.

With respect to the appeal of questions on the CBLE, the substantial evidence standard does not require that Customs draft perfect questions.  *See Di Iorio v. United States*, 14 CIT 746, 748-49 (1990) ("While not perfect, the question was adequate so that, as to this question, plaintiff's appeal was rejected reasonably."); *Harak v. United States*, 30 CIT 908, 922-23 (2006) ("[A] question or answer choice need not reflect the precise wording of the regulation in order to be valid. . . .  Though the question is not a perfect reflection of the regulation's language, it is not inadequate.").  For instance, in *Di Iorio*, the court reviewed the plaintiff's appeal of a question concerning copyright infringement as provided in 19 C.F.R. § 133.43(a):

> (a) NOTICE TO THE IMPORTER.  If the district director has any reason to believe that an imported article may be an infringing copy or phonorecord of a recorded copyrighted work, he shall withhold delivery, notify the importer of his action, and advise him that if the facts so warrant he may file a statement denying that the article is in fact an infringing copy and alleging that the detention of the article will result in a material depreciation of its value, or a loss or damage to him.  The district director also shall advise the importer that in the absence of receipt within 30 days of a denial by the importer that the article constitutes an infringing copy or phonorecord, it shall be considered to be such a copy and shall be subject to seizure and forfeiture.

19 C.F.R. § 133.43(a) (1989); *see Di Iorio*, 14 CIT at 748.  The question that the plaintiff contested stated:

> Your client, who is just starting to import toy stuffed dinosaurs, has a shipment under detention by Customs for possible copyright violation.  Following your advice, he wrote to the District Director of Customs asserting that: (1) the articles are not piratical copies, and (2) because the dinosaurs

are sold seasonally, continued detention will force him out of business. The District Director will:

A. Release the shipment to the importer unconditionally because they are seasonal and the District Director has authority to determine if they violate the copyright.

B. Furnish the copyright owner with a sample and release the shipment if he does not respond within 30 days.

C. Release the shipment if the importer agrees to post an additional bond.

D. Consider the goods to be restricted and seize the shipment.

*Id.* The plaintiff selected answer choice (D), whereas Customs designated answer choice (B) as the correct response. *See id.*

In support of his appeal, the plaintiff argued that the contested question was ambiguous because the question required an applicant to make three assumptions: (1) the District Director of Customs "actually received" a written statement from the client; (2) the District Director received such a statement within 30 days; and (3) such a statement constituted "an acceptable denial" within the meaning of 19 C.F.R. § 133.43(a). *Id.* According to the plaintiff, Customs "erred in rejecting [his] appeal because requiring the examinee to leap through these assumptions in arriving at the correct answer placed an unreasonable burden on any test-taker." *Id.*

In rejecting this appeal, the court stated that the question, "[w]hile not perfect" in view of the absence of the foregoing information, nonetheless provided the applicant with sufficient information to apply 19 C.F.R. § 133.43(a) and to select the correct answer choice. *Id.* at 748-49. On this basis, the court concluded that Customs' decision to deny the plaintiff credit for this question was reasonable. *See id.*

The Court's standard of review with respect to questions on the CBLE is one of

reasonableness.  *See Rudloff v. United States*, 19 CIT 1245, 1249 (1995), *aff'd*, 108

F.3d 1392 (Fed. Cir. 1997) ("[T]he question is fair as it reasonably tests 'an applicant's

knowledge of customs and related laws, regulations and procedures.'" (citing 19 U.S.C.

§ 1641(b)(2))); *Di Iorio*, 14 CIT at 747 ("[T]his court notes that, as a general matter, it will

not substitute its own judgment on the merits of the Customs examination, but will

examine decisions made in connection therewith on a reasonableness standard.").  The

Court "must necessarily conduct some inquiry into plaintiff's arguments and defendant's

responses concerning each of the . . . challenged test questions."  *Di Iorio*, 14 CIT at

747.  However, the Court is not "some kind of final reviewer" of the CBLE, *id.* at 752,

and Customs is "entitled to certain latitude in the design and scoring of" the exam.

*Dunn-Heiser*, 29 CIT at 556, 374 F. Supp. 2d at 1280.

In determining whether Customs' position with respect to a contested question is

reasonable and meets the substantial evidence standard, the Court previously has

stated that "susceptibility of different meanings" does not necessarily render a question

or term used therein ambiguous, and that the meaning of the question or term "may be

colored by the context in which it is used."  *DePersia*, 33 CIT at 1110-12, 637 F. Supp.

2d at 1251.  Further, the fact that a question or term is susceptible of more than one

interpretation will fail to meet the substantial evidence standard only in limited

circumstances.  *See, e.g.*, *Harak*, 30 CIT at 928; *O'Quinn v. United States*, 24 CIT 324,

328, 100 F. Supp. 2d 1136, 1140 (2000).  These circumstances include that: (1) the

omission of relevant statutory or regulatory language would result in the question falsely

characterizing the applicable provision, *see Harak*, 30 CIT at 928 (citing *Carrier v.
United States*, 20 CIT 227, 232 (1996)); (2) the inclusion or omission of language would
result in "the question's incorrect use of" a relevant term, *O'Quinn*, 24 CIT at 328, 100 F.
Supp. 2d at 1140; or (3) the inclusion or omission of language would result in the
question "not contain[ing] sufficient information [for an applicant] to choose an answer."
*Id*.

## II.    "Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"

Customs' regulations list four requirements for an individual to obtain a customs
broker's license, one of which is that the applicant "attain[] a passing (75 percent or
higher) grade on" the CBLE.  19 C.F.R. § 111.11(a)(1)-(4).  In reviewing Customs'
decision to deny a customs broker's license, the Court must determine whether such a
decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in
accordance with law."  5 U.S.C. § 706(2)(A); *see Kenny*, 401 F.3d at 1361; *Dunn-
Heiser*, 29 CIT at 555, 374 F. Supp. 2d at 1279; *Di Iorio,* 14 CIT at 747.

Should the Court determine that Customs' decision to deny an applicant credit for
contested questions on the CBLE was supported by substantial evidence, and
consequently that an applicant attained less than a 75% score on the exam, then
Customs' denial of a customs broker's license will not have been "arbitrary, capricious,
an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

## DISCUSSION

The court concludes that Customs' decision to deny plaintiff credit for questions
5, 27, 33 and 39 on the April 2018 exam was supported by substantial evidence, but

that Customs' decision with respect to question 57 was not supported by substantial

evidence.  On this basis, plaintiff does not establish that he scored 75% or higher on the

April 2018 exam.  Accordingly, the court concludes that Customs' decision to deny

plaintiff a customs broker's license was not "arbitrary, capricious, an abuse of discretion,

or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The court concludes

also that plaintiff is not entitled to receive attorney fees and other expenses under the

EAJA.  28 U.S.C. § 2412(d).

## I.      Customs' denial of credit for the contested questions

### A.      Question 5

First, plaintiff appeals Customs' decision to deny plaintiff credit for question 5 on

the April 2018 exam.  *See* Pl. Br. at 4.  Question 5 states:

> Which of the following customs transactions is **NOT** required to be
> performed by a licensed customs broker?
>
> A. Temporary Importation under Bond
>
> B. Transportation in bond
>
> C. Permanent Exhibition Bond
>
> D. Trade Fair Entry
>
> E. Foreign Trade Zone Entry

Am. Admin. R., Ex. N, at *5.

#### 1.      Positions of the parties

Customs designated answer choice (B) as the correct response to question 5.

*See* Def. Resp. Br. at 8.  Plaintiff selected answer choice (E) but does not contest that

answer choice (B) is also correct.  *See* Pl. Br. at 4.  Accordingly, the parties dispute only

whether Customs' decision to deny plaintiff credit for his selection of answer choice (E) was supported by substantial evidence.  *See id.* at 5; Def. Resp. Br. at 9-10.

Plaintiff contends that Customs' decision to deny plaintiff credit for his selection of answer choice (E) was not supported by substantial evidence.  *See* Pl. Br. at 5. Plaintiff argues that answer choice (E) is correct because "Foreign Trade Zone Entry" is *not* required to be performed by a licensed customs broker.  *See id.* at 4.  Plaintiff applies a "common understanding" of the term "entry" and contends that the process of "admission" set forth in 19 C.F.R. § 146.32(a)(1) — which does not require a customs broker's license pursuant to 19 C.F.R. § 111.2(a) — constitutes a type of "Foreign Trade Zone Entry."  *Id.*

Plaintiff points first to 19 C.F.R. § 146.32(a)(1).  *See id.*  This regulation provides:

§ 146.32 APPLICATION AND PERMIT FOR ADMISSION OF MERCHANDISE.

(a)(1) APPLICATION ON CBP FORM 214 AND PERMIT.  Merchandise may be admitted into a zone only upon application on a uniquely and sequentially numbered CBP Form 214 ("Application for Foreign Trade Zone Admission and/or Status Designation") and the issuance of a permit by the port director. . . .  The applicant for admission shall present the application to the port director and shall include a statistical copy on CBP Form 214-A for transmittal to the Bureau of Census, unless the applicant has made arrangements for the direct transmittal of statistical information to that agency.

19 C.F.R. § 146.32(a)(1).  Plaintiff and defendants agree that the process of admission set forth in this provision does not constitute "customs business" that is required to be performed by a licensed customs broker.  *See* Pl. Br. at 4; Oral Arg. Tr. at 4:3-9, ECF No. 52; 19 C.F.R. §§ 111.1 (defining "customs business"), 111.2(a)(2)(vi) (providing that an activity such as admission into a foreign trade zone, which does not "involve the

transfer of merchandise to the customs territory of the United States," is not required to be performed by a licensed customs broker).

Next, plaintiff argues that the process of "admission" set forth in 19 C.F.R. § 146.32(a)(1) falls within a "common understanding" of the term "entry," which plaintiff asserts to be "the act of entering or the acting of making or entering a record."  Pl. Br. at 5.  Plaintiff contends that the use of this "common understanding" is appropriate because answer choice (E) — "Foreign Trade Zone Entry" — is not a term of art that appears in Customs' regulations.[6]  *See id.* at 4; Oral Arg. Tr. at 20:9-13 (contending that use of a "common understanding" of a term is appropriate if the term is "not otherwise defined").

In support of his interpretation of the term "entry," plaintiff refers also to an article on Customs' website, of which plaintiff requests that the court take judicial notice.  *See* Pl. Reply Br. at 4-5 n.1; Oral Arg. Tr. at 9:18-10:19.  Plaintiff points to the use in this article of the term "entry" to challenge defendants' "hyper-technical distinction between 'admission' and 'entry.'"  *See* Oral Arg. Tr. at 10:15-17.

---

[6] In addition, plaintiff argues in his memorandum in support of his motion for judgment on the agency record that the use of a "common understanding" of the term "entry" is appropriate because the phrase in answer choice (E) is not capitalized.  *See* Pl. Br. at 4. At oral argument, however, plaintiff notes that the parties learned subsequent to the submission of their respective briefs that the phrase in answer choice (E) — "Foreign Trade Zone Entry" — had in fact been capitalized in the April 2018 exam.  *See* Oral Arg. Tr. at 11:21-14:6.  The record has since been corrected to include the full exam.  *See* Am. Admin. R., Ex. N.  Accordingly, plaintiff withdraws his argument with respect to the capitalization of the term "entry."

On this basis, plaintiff argues that, applying a "common understanding" of the term "entry," the process of "admission" set forth in 19 C.F.R. § 146.32(a)(1) constitutes a type of "Foreign Trade Zone Entry" that does not require a customs broker's license pursuant to 19 C.F.R. § 111.2(a).  Pl. Br. at 4-5.  Accordingly, plaintiff contends that answer choice (E) is also correct.  *See id.* at 4.

Defendants argue that answer choice (E) is not correct.  *See* Def. Resp. Br. at 8-10.  According to defendants, plaintiff applies mistakenly a "common understanding" of the term "entry," which leads plaintiff to rely incorrectly upon 19 C.F.R. § 146.32(a)(1). *See id.*  Rather, defendants argue that plaintiff should have but did not rely upon 19 C.F.R. § 146.62 in responding to the question.  *See id.*

To start, defendants refer to 19 C.F.R. § 146.62, which provides:

§ 146.62 ENTRY.

> (a) GENERAL.  Entry for foreign merchandise that is to be transferred from a zone, or removed from a zone for exportation or transportation to another port, for consumption or warehouse, will be made by filing an in-bond application pursuant to part 18 of this chapter, CBP Form 3461, CBP Form 7501, or other applicable CBP forms.  If entry is made on CBP Form 3461, the person making entry shall file an entry summary for all the merchandise covered by the CBP Form 3461 within 10 business days after the time of entry.

19 C.F.R. § 146.62(a); *see id.* § 146.63-146.64.  Defendants note that Customs' regulations provide that the process of "entry" set forth in 19 C.F.R. § 146.62 constitutes "customs business" that is required to be performed by a licensed customs broker.  *See* Def. Resp. Br. at 10; 19 C.F.R. §§ 111.1, 111.2(a)(1).  According to defendants, plaintiff should have relied upon 19 C.F.R. § 146.62 in responding to question 5, as the phrase in answer choice (E) — "Foreign Trade Zone Entry" — "reasonably refers" to the

process of "transferring or removing merchandise from an FTZ" that is described in the

regulation.  Def. Resp. Br. at 9-10.

Defendants argue that, rather than relying upon 19 C.F.R. § 146.62, plaintiff

applies mistakenly a "common understanding" of the term "entry."  *See id.*  Defendants

contend that this "common understanding" leads plaintiff to rely incorrectly upon the

process of "admission" set forth in 19 C.F.R. § 146.32(a)(1).  *See id.* at 9.

Defendants point to the substantive differences between the process of

"admission" set forth in 19 C.F.R. § 146.32(a)(1) and the process of "entry" set forth in

19 C.F.R. § 146.62.  *See id.*  According to defendants, "admission" as set forth in 19

C.F.R. § 146.32(a)(1) concerns the process through which "an importer brings

merchandise into a [foreign trade zone]."  *Id.*  In contradistinction, defendants note that

"entry" as set forth in 19 C.F.R. § 146.62 concerns the process through which

"merchandise is transferred or removed from a zone for consumption or warehouse."

*Id.*  To emphasize further this distinction, defendants note that 19 C.F.R. § 146.32(b)(2),

a subsection of the regulation to which plaintiff points, itself distinguishes "admission"

from "entry."  *See* Oral Arg. Tr. at 8:1-8 (citing 19 C.F.R. § 146.32(b)(2) ("The applicant

for *admission* shall submit with the application a document similar to that which would

be required as evidence of the right to make *entry* for merchandise in Customs

territory.") (emphasis supplied)).

On this basis, defendants argue that plaintiff conflates erroneously "admission"

pursuant to 19 C.F.R. § 146.32(a)(1) with "entry" pursuant to 19 C.F.R. § 146.62.  *See*

Def. Resp. Br. at 8-9.  According to defendants, the proper interpretation and application

of 19 C.F.R. § 146.62 supports the conclusion that "Foreign Trade Zone Entry" *is*

required to be performed by a licensed customs broker and, consequently, that answer

choice (E) is not correct.  *See id.* at 8-10.

Accordingly, defendants argue that Customs' decision to deny plaintiff credit for

question 5 was supported by substantial evidence.  *Id.* at 10.

### 2.    Analysis

Customs' decision to deny plaintiff credit for question 5 was supported by

substantial evidence.

Plaintiff's position with respect to question 5 is not persuasive for three reasons.

First, plaintiff applies mistakenly a "common understanding" of the term "entry" in

arguing that answer choice (E) is correct.  Second, the article on Customs' website to

which plaintiff refers does not support his position with respect to question 5.  Third,

plaintiff conflates erroneously the process of "admission" set forth in 19 C.F.R. §

146.32(a)(1) with the process of "entry" set forth in 19 C.F.R. § 146.62.

First, plaintiff applies mistakenly a "common understanding" of the term "entry."

The Court previously has stated that an applicant is required to consult "customs and

related laws, regulations and procedures" in responding to questions on the CBLE.

*Rudloff*, 19 CIT at 1249 (citing 19 U.S.C. § 1641(b)(2)).  Provided that a contested

question "reasonably tests" an applicant's knowledge of the foregoing authorities, the

Court will accord "a measure of deference" to Customs' determination with respect to

the question.  *Id.*; *Dunn-Heiser*, 29 CIT at 556, 374 F. Supp. 2d at 1280.

Plaintiff argues that his use of a "common understanding" of the term "entry" is appropriate because the phrase "Foreign Trade Zone Entry" is not a term of art that appears as a standalone phrase in Customs' regulations.  *See* Pl. Br. at 4-5.  This argument, however, is not consistent with the Court's standard for evaluating questions on the CBLE.  A phrase in a contested question is not required to appear in Customs' regulations for the phrase to refer "reasonably" to the regulations.  *See Harak*, 30 CIT at 922 ("[A] question or answer choice need not reflect the precise wording of the regulation in order to be valid."); *Di Iorio*, 14 CIT at 748-49 ("While not perfect, the question was adequate so that, as to this question, plaintiff's appeal was rejected reasonably.").

With respect to question 5, the phrase in answer choice (E) — "Foreign Trade Zone Entry" — "reasonably test[ed]" plaintiff's ability to identify the relevance of and to apply 19 C.F.R. § 146.62.  *See Rudloff*, 19 CIT at 1249.  19 C.F.R. § 146.62 concerns the process of "*[e]ntry* for foreign merchandise that is to be transferred from a *zone*, or removed from a *zone* for exportation or transportation to another port, for consumption or warehouse."[7]  19 C.F.R. § 146.62(a) (emphasis supplied).  Further, 19 C.F.R. § 146.62, which is entitled "Entry," is located in Part 146, "Foreign Trade Zones," of Title 19 of the CFR.  Based on the language of 19 C.F.R. § 146.62 and the context within which the provision is located in Customs' regulations, Customs concluded reasonably that the phrase in answer choice (E) — "Foreign Trade Zone Entry" — is drafted in a

---

[7] *See* 19 C.F.R. § 146.1(a) (defining terms used in Part 146 of Title 19 of the CFR) (citing 19 U.S.C. § 81a(i) ("The term 'zone' means a 'foreign-trade zone.'")).

manner that indicates its reference to this provision.  Am. Admin. R., Ex. N, at *5.

Consequently, Customs determined reasonably that the use of a "common

understanding" of the term "entry" is not appropriate in responding to question 5.

Turning to plaintiff's second argument, plaintiff does not establish that the article

on Customs' website supports his position with respect to question 5.  *See* Pl. Reply. Br.

at 4-5 n.1.  Plaintiff requests that the court take judicial notice of this article pursuant to

Federal Rule of Evidence ("FRE") 201(b)(2), which provides that a "court may judicially

notice a fact that is not subject to reasonable dispute because it . . . can be accurately

and readily determined from sources whose accuracy cannot reasonably be

questioned."  Fed. R. Evid. 201(b)(2); 28 U.S.C. § 2641(a).

Other federal courts have taken judicial notice of information published by a

government agency on a government website on the basis that such a website

constitutes a "source[] whose accuracy cannot reasonably be questioned."  Fed. R.

Evid. 201(b)(2); *see Lopez v. Bank of Am., N.A.*, 505 F. Supp. 3d 961, 970 (N.D. Cal.

2020) ("The Court will . . . take judicial notice . . . of the document . . . as it is clear on

the face of the document — and the Court has independently confirmed — that it comes

from a government agency website."); *Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp.

3d 482, 490 n.2 (N.D.N.Y. 2020), *appeal dismissed, cause remanded sub nom. Dark

Storm Indus. LLC v. Hochul*, No. 20-2725-CV, 2021 WL 4538640 (2d Cir. Oct. 5, 2021).

In such circumstances, courts have "considered separately" the "relevan[ce]" of the

information of which judicial notice is taken.  *Michael v. New Century Fin. Servs.*, 65 F.

Supp. 3d 797, 804 (N.D. Cal. 2014).

The article to which plaintiff points is featured on the "Information Center" section of Customs' website, and it is "clear on the face of" the article that it was published by Customs.  *Lopez*, 505 F. Supp. 3d at 970.  The "accuracy" of Customs' website "cannot reasonably be questioned," and consequently the court concludes that this article meets the standard for judicial notice.  Fed. R. Evid. 201(b)(2).

However, the court concludes that this article does not support plaintiff's argument with respect to question 5.  The article, which is entitled, "Do I need a Customs Broker to clear my goods through Customs and Border Protection (CBP)?" states that "[t]here is no legal requirement for you to hire a Customs Broker to clear your goods."  Pl. Reply Br. at Ex. A.  In addition, the article cites to a publication by Customs, entitled "Importing into the United States,"[8] which provides more comprehensive information to individuals who "choose to file [their] own customs entry."  *Id.*  However, this publication expressly states that "the information provided [therein] is for general purposes only" and that "reliance solely on th[is] information . . . may not meet the 'reasonable care' standard required of importers."  Customs Importing Publication at 1-2; *see* 19 U.S.C. § 1484(a)(1) (requiring the use of "reasonable care" in providing Customs with "documentation" or "information" with respect to the entry of merchandise).  Moreover, the CBLE expressly directs applicants to refer to the following materials: the HTSUS, Title 19 of the CFR, the Instructions for the Preparation of

---

[8] *Importing into the United States*, U.S. CUSTOMS AND BORDER PROT., https://www.cbp.gov/sites/default/files/documents/Importing%20into%20the%20U.S.pdf (last revised 2006) ("Customs Importing Publication").

Customs Form 7501, and the Right to Make Entry Directive 3530-002A.  *See* Am.

Admin. R., Ex. N, at *1.

The third reason that plaintiff's argument with respect to question 5 is not

persuasive is that plaintiff conflates erroneously the processes set forth in 19 C.F.R. §

146.32(a)(1) and 19 C.F.R. § 146.62.  19 C.F.R. § 146.32(a)(1) concerns the process to

apply and secure a permit for the "admission of merchandise" into a foreign trade zone.

19 C.F.R. § 146.1 defines "admit" as "to bring merchandise into a zone with zone

status."  In contradistinction, 19 C.F.R. § 146.62 concerns the process of "[e]ntry for

foreign merchandise that is to be transferred from a zone, or removed from a zone for

exportation or transportation to another port, for consumption or warehouse."  Pursuant

to 19 C.F.R. §§ 111.1 and 111.2, this process of entry constitutes "customs business"

that is required to be performed by a licensed customs broker.  *See* 19 C.F.R. § 111.1

(providing that activities that "concern[] the entry . . . of merchandise" constitute

"customs business").

In sum, 19 C.F.R. § 146.32(a)(1) involves bringing merchandise *into* a foreign

trade zone, while 19 C.F.R. § 146.62 involves "transferr[ing]" or "remov[ing]"

merchandise *from* a foreign trade zone for "consumption or warehouse."  *Compare id.* §

146.32(a)(1) *with id.* § 146.62.  The provisions regulate distinct administrative processes

that question 5 reasonably called upon an applicant to distinguish.  Plaintiff's counsel

presented the most effective possible arguments in briefing and at oral argument;

however, ultimately, the arguments cannot save the choice plaintiff made during the

exam.  Customs' decision to deny plaintiff credit for question 5 was supported by

substantial evidence.

### B.    Question 27

Second, plaintiff appeals Customs' decision to deny plaintiff credit for question 27

on the April 2018 exam.  *See* Pl. Br. at 5.  Question 27 states:

> Which of the following mail articles are not subject to examination or inspection by Customs?
>
> A. Bona-fide gifts with an aggregate fair retail value not exceeding $800 in the country of shipment
>
> B. Mail packages addressed to officials of the U.S. Government containing merchandise
>
> C. Diplomatic pouches bearing the official seal of France and certified as only containing documents
>
> D. Personal and household effects of military and civilian personnel returning to the United States upon the completion of extended duty abroad
>
> E. Plant material imported by mail for purposes of immediate exportation by mail

Am. Admin. R., Ex. N, at *13.

### 1.    Positions of the parties

Customs designated answer choice (C) as the correct response to question 27.

*See* Def. Resp. Br. at 10.  Plaintiff selected answer choice (B), but does not contest that

answer choice (C) is correct.  *See* Pl. Br. at 6.  Accordingly, the parties dispute only

whether Customs' decision to deny plaintiff credit for his selection of answer choice (B)

was supported by substantial evidence.  *See id.*; Def. Resp. Br. at 11-12.

Plaintiff advances two arguments with respect to question 27.  First, plaintiff

contends that question 27 is ambiguous because the question does not indicate "where

the mail packages are coming from."  Pl. Br. at 6.  Answer choice (B) points to "[m]ail

packages addressed to officials of the U.S. Government containing merchandise."  Am.

Admin. R., Ex. N, at *13.  Plaintiff argues that if the mail packages are sent from a

domestic source, then the packages described in this answer choice would not be

subject to examination or inspection by Customs.  *See* Pl. Br. at 6.  Without this

information, however, plaintiff argues that the question is ambiguous.  *See id.*

Second, plaintiff contends that answer choice (B) also is correct.  *See id.*; Pl.

Reply Br. at 6.  In support of this contention, plaintiff points to two of Customs'

regulations.  *See* Pl. Br. at 6.  To start, 19 C.F.R. § 145.2(b)(1) provides that "[m]ail

known or believed to contain only official documents addressed to officials of the U.S.

Government" is not "subject to Customs examination."  Plaintiff next turns to 19 C.F.R. §

145.37.  *See* Pl. Reply Br. at 6.  This regulation provides that certain "[b]ooks . . . and

engravings, etchings, and other articles . . . shall be passed free of duty without issuing

an entry when they are addressed to the Library of Congress or any department or

agency of the U.S. Government."  *Id.* (quoting 19 C.F.R. § 145.37(b)).  Plaintiff contends

that the articles described in 19 C.F.R. § 145.37(b) constitute "[m]ail packages

addressed to officials of the U.S. Government containing merchandise" that shall be

passed free of duty.  *See id.*; Am. Admin. R., Ex. N, at *13.  On this basis, plaintiff

argues that answer choice (B) is correct.  *See* Pl. Br. at 6; Pl. Reply Br. at 6-7.

Defendants contest both of plaintiff's arguments.  *See* Def. Resp. Br. at 10-12.

First, defendants challenge plaintiff's contention that the mail articles described in

question 27 might be sent from a domestic source.  *See id.* at 11-12.  According to

defendants, question 27 "reasonably assumes that all mail articles identified are

imported into the United States" because "[i]f the merchandise was not imported . . .

then custom laws would not apply" to the question.  *Id.* at 11.  Defendants argue that the

question and answer choice (B) as drafted reasonably "test the [applicant's] ability to

distinguish between imports that require examination or inspection and those that do

not."  *Id.*

Second, defendants challenge plaintiff's reliance upon 19 C.F.R. § 145.2(b)(1)

and 19 C.F.R. § 145.37.  *See id.* at 10-11.  With respect to 19 C.F.R. § 145.2(b)(1),

defendants note that this provision excepts from examination by Customs "[m]ail known

or believed to contain *only* official documents addressed to officials of the U.S.

Government."  *See id.* at 11 (citing 19 C.F.R. § 145.2(b)(1)) (emphasis in original).

According to defendants, the plain language of this provision contradicts plaintiff's

conclusion that "[m]ail packages addressed to officials of the U.S. Government

containing *merchandise*" are not subject to examination or inspection by Customs.  Am.

Admin. R., Ex. N, at *13 (emphasis supplied); *see* Def. Resp. Br. at 11.

Defendants then turn to 19 C.F.R. § 145.37.  *See* Def. Resp. Br. at 11.

Defendants raise two points with respect to this regulation.  First, defendants note that

19 C.F.R. § 145.37(c) distinguishes mail articles that contain "only official documents"

from articles that contain "merchandise."  *See id.*  According to defendants, this

regulation provides that articles that contain "only official documents[] shall be passed free of duty without issuing an entry."  19 C.F.R. § 145.37(c).  In contrast, defendants note that articles that contain "merchandise[] shall be treated in the same manner as other mail articles of merchandise."  *Id.*  Accordingly, defendants assert that 19 C.F.R. § 145.37(c) indicates that articles that contain "merchandise" shall be subject to examination by Customs.  *See* Def. Resp. Br. at 11.  On this basis, defendants contend that answer choice (B) is not correct.  *See id.* at 10-12.

In the alternative, defendants note that 19 C.F.R. § 145.37 does not concern "Customs' examination" of the subject articles, but rather concerns how the articles "should be treated . . . for duty purposes."  Oral Arg. Tr. at 27:12-16.  According to defendants, the articles described in 19 C.F.R. §§ 145.37(b) and (c) "still would be subject to Customs' examination" even if those articles are "passed free of duty."  *Id.* at 27:13-14; 19 C.F.R. § 145.37(b)-(c).  On this basis, defendants contend that 19 C.F.R. § 145.37 is not responsive to question 27 and consequently does not support plaintiff's selection of answer choice (B).  *See* Def. Resp. Br. at 11; Oral Arg. Tr. at 27:12-16.

Accordingly, defendants argue that Customs' decision to deny plaintiff credit for question 27 was supported by substantial evidence.  *See* Def. Resp. Br. at 12.

### 2.    Analysis

Customs' decision to deny plaintiff credit for question 27 was supported by substantial evidence.

To start, Customs determined reasonably that question 27 presumes that the mail articles described in the question are imported into the United States.  This

presumption is reasonable based on the fact that the CBLE is designed to examine an

applicant's ability to interpret and apply "customs and related laws, regulations and

procedures."  *Rudloff*, 19 CIT at 1249 (citing 19 U.S.C. § 1641(b)(2)).  Without the

presumption that the mail articles described in question 27 are imported into the United

States, the foregoing authorities would not apply to this question.  In view of the purpose

of the CBLE, Customs engaged in "reasoned decision-making" in concluding that

question 27 is drafted in a manner that indicates Customs' intention to examine whether

an applicant is able to distinguish imports that are subject to examination or inspection

by Customs from imports that are not subject to such examination or inspection.  *Harak*,

30 CIT at 919.  For this reason, the court accords Customs a "measure of deference"

with respect to Customs' "design" of question 27 and concludes that the question is not

ambiguous.  *Dunn-Heiser*, 29 CIT at 556, 374 F. Supp. 2d at 1280.

        Next, Customs determined reasonably that 19 C.F.R. § 145.2(b)(1) and 19

C.F.R. § 145.37 do not support plaintiff's conclusion that answer choice (B) is correct.

19 C.F.R. § 145.2(b)(1) excepts from examination by Customs "[m]ail known or believed

to contain *only official documents* addressed to officials of the U.S. Government."  19

C.F.R. § 145.2(b)(1) (emphasis supplied).  This regulation does *not* except from

examination or inspection by Customs the articles described in answer choice (B) —

"[m]ail packages addressed to officials of the U.S. Government containing

*merchandise*."  Am. Admin. R., Ex. N, at *13 (emphasis supplied).  Further, "official

documents" under 19 C.F.R. § 145.2(b)(1) do not constitute "merchandise" within the

meaning of Customs' regulations.  *See, e.g.*, 19 C.F.R. § 145.37(c) (distinguishing mail

articles that contain "official documents" from mail articles that contain "merchandise").

Accordingly, the plain language of 19 C.F.R. § 145.2(b)(1) contradicts plaintiff's

argument with respect to his selection of answer choice (B).

Turning to 19 C.F.R. § 145.37, this provision is not responsive to question 27,

which instructs the applicant to determine "[w]hich of the following mail articles are not

*subject to examination or inspection by Customs*."  Am. Admin. R., Ex. N, at *13

(emphasis supplied).  19 C.F.R. § 145.37 does not address whether certain mail articles

are subject to "examination" or "inspection" by Customs.  Rather, this provision

addresses whether the articles "shall be passed free of duty without issuing an entry."

19 C.F.R. § 145.37(b)-(c).  Whether an article "shall be passed free of duty" is a distinct

question from whether an article "shall be subject to examination or inspection by

Customs."  *Id.*; Am. Admin. R., Ex. N, at *13.  On this basis, 19 C.F.R. § 145.37 does

not support plaintiff's selection of answer choice (B).

Accordingly, Customs' decision to deny plaintiff credit for question 27 was

supported by substantial evidence.

### C.    Question 33

Third, plaintiff appeals Customs' decision to deny plaintiff credit for question 33

on the April 2018 exam.  *See* Pl. Br. at 7.  Question 33 states:

> What is the **CLASSIFICATION** of current-production wall art depicting
> abstract flowers and birds that is mechanically printed, via lithography, onto
> sheets of paper, the paper measuring .35 mm in thickness that have been
> permanently mounted onto a backing of .50 mm thick paperboard?
>
> A. 4911.91.2040
>
> B. 4911.91.3000

C. 4911.99.6000

D. 9701.10.0000

E. 9702.00.0000

Am. Admin. R., Ex. N, at *14.

### 1.      Positions of the parties

Customs designated answer choice (B) as the correct response to question 33. *See* Def. Resp. Br. at 12.  Plaintiff selected answer choice (E).  *See* Pl. Br. at 7.

Plaintiff argues that Customs' decision to deny plaintiff credit for question 33 was not supported by substantial evidence.  *See id.*  Plaintiff does not contend that his selection of answer choice (E) is correct; rather, plaintiff argues that question 33 is ambiguous.  *See id.*

Question 33 describes the subject merchandise as "current-production wall art . . . that is mechanically printed, via lithography, onto sheets of paper, the paper measuring .35 mm in thickness that have been permanently mounted onto a backing of .50 mm thick paperboard."  Am. Admin. R., Ex. N, at *14.  Customs designated answer choice (B) as the correct response to question 33.  *See* Pl. Br. at 7.  Answer choice (B) points to subheading 4911.91.3000 of the HTSUS,[9] which applies to "[l]ithographs on paper or paperboard" that are "[o]ver 0.51 mm in thickness" and that were "[p]rinted not over 20 years at the time of importation."  HTSUS, 4911.91.3000; *see* Am. Admin. R., Ex. N, at *14.  Further, Additional U.S. Note 1 to Chapter 49 of the HTSUS states that

---

[9] All citations to the HTSUS, including Chapter Notes and General Notes, are to the 2017 Basic Edition.  This edition was in effect on April 25, 2018, when plaintiff sat for the CBLE.  *See* Am. Admin. R., Ex. N, at *1.

"[f]or the purposes of determining the classification of printed matter produced in whole or in part by a lithographic process . . . the thickness of a permanently mounted lithograph is the combined thickness of the lithograph and its mounting."  Additional U.S. Note 1, Chapter 49, HTSUS.

Plaintiff argues that question 33 is ambiguous due to Customs' use of the phrase "current-production."  *See* Pl. Br. at 7.  Plaintiff asserts that Customs' designated answer choice (B) "presupposes a certain timeframe within which the goods are produced."  *Id.*  However, plaintiff argues that Customs "does not provide such a time in the question, instead expecting the undefined phrase 'current production' to signify the answer."  *Id.*  Plaintiff contends that the phrase "current-production" does not provide sufficient information to determine that the subject merchandise was "[p]rinted not over 20 years at time of importation" and consequently is classified properly under subheading 4911.91.3000.  *See id.*; Oral Argument Tr. at 28:20-29:2.  Accordingly, plaintiff argues that question 33 is ambiguous and that Customs' decision to deny plaintiff credit for the question was not supported by substantial evidence.  *See* Pl. Br. at 7.

Defendants contend that Customs' decision to deny plaintiff credit for question 33 was supported by substantial evidence.  To start, defendants contest plaintiff's argument that Customs' use of the phrase "current-production" renders question 33 ambiguous.  *See* Def. Resp. Br. at 12-14.  Defendants contend that Customs determined that "the term 'current-production' . . . reasonably means that the printed lithography is not over 20 years old."  *Id.* at 13.  According to defendants, this phrase,

while "not a number of years . . . gives the test-taker a time reference" that provides

sufficient information to determine that the subject merchandise is classified properly

under subheading 4911.91.3000.  Oral Arg. Tr. at 30:3-11; *see* Def. Resp. Br. at 13-14.

On this basis, defendants contend that answer choice (B) is correct.  *See* Def. Resp. Br.

at 13-14.

In addition, defendants argue that plaintiff's selected answer choice (E) is not

correct.  *See id.* at 14.  Answer choice (E) points to Heading 9702.00.000 of the

HTSUS, which applies to "[o]riginal engravings, prints and lithographs, framed or not

framed."  HTSUS, 9702.00.000; *see* Am. Admin. R., Ex. N, at *14.  Note 2 to Chapter 97

of the HTSUS states that "[f]or purposes of heading 9702, the expression 'original

engravings, prints and lithographs' means impressions produced directly . . . of one or

of several plates wholly executed by hand by the artist . . . *not including any mechanical

or photomechanical process.*'"  Note 2, Chapter 97, HTSUS (emphasis supplied).

Notably, question 33 describes the subject merchandise as "mechanically printed."  Am.

Admin. R., Ex. N, at *14.  Accordingly, defendants argue that in view of Note 2, Heading

9702.00.000 does not apply to the subject merchandise.  *See* Def. Resp. Br. at 14.  On

this basis, defendants contend that answer choice (E) is not correct.  *See id.*

Accordingly, defendants argue that Customs' decision to deny plaintiff credit for

question 33 was supported by substantial evidence.  *See id.* at 13-14.

## 2.   Analysis

Customs' decision to deny plaintiff credit for question 33 was supported by

substantial evidence.

Question 33 evaluates the ability of an applicant to interpret and apply the

HTSUS.  In determining the proper tariff classification of subject merchandise, the Court

is required to apply in numerical order the General Rules of Interpretation ("GRIs") of

the HTSUS.  *See BASF Corp. v. United States*, 482 F.3d 1324, 1325-26 (Fed. Cir.

2007).  GRI 1 states that the classification of merchandise "shall be determined

according to the terms of the headings and any relative section or chapter notes."  GRI

1, HTSUS.  In addition, the Section and Chapter Notes featured in the HTSUS are not

"optional interpretive rules," but rather have the force of statutory law.  *Avenues in*

*Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005) (quoting *Park B.*

*Smith, Ltd. v. United States*, 374 F.3d 922, 927 (Fed. Cir. 2003)).

With respect to question 33, Customs determined reasonably that answer choice

(B) — subheading 4911.91.3000 of the HTSUS — is correct.  The merchandise

described in question 33 is a permanently mounted lithograph, printed onto sheets of

paper and paperboard with a combined thickness of 0.85 mm.  *See* Am. Admin. R., Ex.

N, at *14.  Subheading 4911.91.3000 of the HTSUS applies to "*[l]ithographs* on paper or

paperboard" that are "[o]*ver 0.51 mm in thickness*," HTSUS, 4911.91.3000 (emphasis

supplied), and Additional U.S. Note 1 to Chapter 49 of the HTSUS states that "[f]or the

purposes of determining the classification of *printed matter produced in whole or in part*

*by a lithographic process* . . . the thickness of a permanently mounted lithograph is the

combined thickness of the lithograph and its mounting."  Additional U.S. Note 1, Chapter

49, HTSUS (emphasis supplied).  Accordingly, the merchandise described in question

33 tracks closely to subheading 4911.91.3000 in answer choice (B).

In addition, Customs determined reasonably that plaintiff's selected answer choice (E) is *not* correct.  As noted, answer choice (E) refers to Heading 9702.00.000 of the HTSUS, which, pursuant to Note 2 to Chapter 97, expressly does *not* cover merchandise that is produced by "any mechanical or photomechanical process."  Note 2, Chapter 97, HTSUS; Am. Admin. R., Ex. N, at *14.  Accordingly, answer choice (E) by its terms directly contradicts the language of question 33, which explicitly describes the subject merchandise as "mechanically printed."  Am. Admin. R., Ex. N, at *14.

Plaintiff argues that the phrase "current-production" in question 33 is not sufficiently precise to indicate that the merchandise was "[p]rinted not over 20 years" ago, per subheading 4911.91.3000 in answer choice (B).  *See* Pl. Reply Br. at 7; HTSUS, 4911.91.3000.  However, the Court previously has stated that "a question or answer choice need not reflect the precise wording of [a statute or regulation] in order to be valid" and supported by substantial evidence.  *Harak*, 30 CIT at 922; *see* 19 U.S.C. § 1202.  Moreover, Heading 9702.00.000, in answer choice (E), does not classify subject merchandise with reference to *any* timeframe for production, thereby providing a further indication — particularly, in comparison with answer choice (B) — that answer choice (E) was not *a* or *the* correct choice.  Am. Admin. R., Ex. N, at *14; HTSUS, 9702.00.000; *see Di Iorio*, 14 CIT at 748.  Accordingly, the express terms of answer choice (B) track closely to question 33, while the express terms of answer choice (E) directly contradict question 33.  "While not perfect, the question was adequate so that, as to this question, plaintiff's appeal was rejected reasonably."  *Di Iorio*, 14 CIT at 748-49.

Consequently, and despite the compelling advocacy of plaintiff's counsel in briefing and at oral argument — on this point and, in fact, as to each of the five questions in dispute — the court concludes that Customs' decision to deny plaintiff credit for question 33 was supported by substantial evidence.

### D.      Question 39

Fourth, plaintiff appeals Customs' decision to deny plaintiff credit for question 39 on the April 2018 exam.  *See* Pl. Br. at 8.  Question 39 states:

> What is the **CLASSIFICATION** of a teacup that is made of porcelain containing 28 percent of tricalcium phosphate, valued at $18, and offered for sale in the same pattern as all of the other articles listed in Additional U.S. Note 6(b) to Chapter 69, HTSUS, with the aggregate value of all those articles listed in that note being $900?
>
> A. 6911.10.2500
>
> B. 6911.10.3810
>
> C. 6911.10.5800
>
> D. 6911.10.8010
>
> E. 6912.00.4500

Am. Admin. R., Ex. N, at *16.

### 1.      Positions of the parties

Customs designated answer choice (A) as the correct response to question 39. *See* Def. Resp. Br. at 14.  Plaintiff selected answer choice (B).  *See* Pl. Br. at 8.

Plaintiff argues that Customs' decision to deny plaintiff credit for question 39 was not supported by substantial evidence.  *See id.* at 9.  Plaintiff does not contend that his

selection of answer choice (B) is correct; rather, plaintiff argues that question 39 is ambiguous.  *See id.* at 8.

Question 39 describes the subject merchandise as "a teacup that is made of porcelain containing 28 percent of tricalcium phosphate, valued at $18 and offered for sale in the same pattern as all of the other articles listed in Additional U.S. Note 6(b) to Chapter 69, HTSUS."  Am. Admin. R., Ex. N, at *16.  Customs designated answer choice (A) as the correct response to the question.  Pl. Br. at 8.  Answer choice (A) points to subheading 6911.10.2500 of the HTSUS, which applies to "[t]ableware and kitchenware" that is made of "bone chinaware" and that is valued at "[o]ther" than "not over $31.50 per dozen pieces" — *i.e.*, valued at over $31.50 per dozen pieces.  HTSUS, 6911.10.2500.  Further, Additional U.S. Note 5(b) to Chapter 69 of the HTSUS states that "the term 'bone chinaware' embraces chinaware or porcelain the body of which contains 25 percent or more of calcined bone or tricalcium phosphate."  Additional U.S. Note 5(b), Chapter 69, HTSUS.

Plaintiff asserts that the reference in question 39 to "a" single teacup is inconsistent with the reference in subheading 6911.10.2500 to a "dozen pieces."  Pl. Br. at 8.  In view of this inconsistency, plaintiff contends that question 39 is ambiguous, as the question "confuses the price of a single teacup versus the price of a dozen cups." *Id.*  Plaintiff argues that he "should not be required to guess as to the number or value" of the merchandise to which the question refers.  *Id.*  Further, plaintiff contends that the value of the described merchandise, $18, indicates that subheading 6911.10.1500 — which applies to merchandise "valued *not over* $31.50 per dozen pieces" — is the "best

fit as the correct answer to the question." *Id.*; HTSUS, 6911.10.1500 (emphasis

supplied).  Given that subheading 6911.10.1500 is not listed as one of the answer

choices to question 39, plaintiff contends that Customs' decision to deny plaintiff credit

for this question was not supported by substantial evidence.  *See* Pl. Br. at 8-9.

Defendants contest plaintiff's argument that question 39 is ambiguous and

emphasize that the question refers "clearly" to the price of "a" single teacup.  Def. Resp.

Br. at 14-15.  Defendants assert that Customs "did not confuse the price of a teacup

versus a dozen teacups." *Id.* at 15.  Rather, according to defendants, question 39

"reasonably required the test taker to calculate the price of a dozen teacups based on

the fact that one teacup costs $18." *Id.*  This calculation, in turn, would lead the

applicant to conclude that the subject merchandise is classified properly under

subheading 6911.10.2500. *See id.*  Accordingly, defendants contend that question 39 is

not ambiguous and that answer choice (A) is correct. *See id.*

On this basis, defendants argue that Customs' decision to deny plaintiff credit for

question 39 was supported by substantial evidence. *See id.* at 14-15.

## 2.   Analysis

Customs' decision to deny plaintiff credit for question 39 was supported by

substantial evidence.

Customs determined reasonably that answer choice (A) is correct.  The

merchandise described in question 39 — "a teacup that is made of porcelain containing

28 percent of tricalcium phosphate, valued at $18 and offered for sale in the same

pattern as all of the other articles listed in Additional U.S. Note 6(b)" — is classified

properly under subheading 6911.10.2500 of the HTSUS.  Am. Admin. R., Ex. N, at *16.

First, the merchandise, a teacup, constitutes "[t]ableware [or] kitchenware."

HTSUS, 6911.10.2500.

Second, the merchandise is made of "bone chinaware" because it contains "28

percent of tricalcium phosphate."  Am. Admin. R., Ex. N, at *16.  As Additional U.S. Note

5(b) states, "bone chinaware" encompasses "chinaware . . . the body of which contains

*25 percent or more* of . . . tricalcium phosphate."  Additional Note 5(b), Chapter 69,

HTSUS (emphasis supplied).

Last, the merchandise is valued at over $31.50 per dozen pieces.  HTSUS,

6911.10.2500.  Question 39 indicates that "a" teacup is valued at $18.  Am. Admin. R.,

Ex. N, at *16.  Accordingly, by multiplying the value of a single teacup by 12, the value

of the merchandise "per dozen pieces" is $216 — *i.e.*, greater than $31.50 per dozen

pieces.  Customs determined reasonably that question 39 "test[s] an understanding of

the structure of the HTSUS" by requiring an applicant to make the foregoing simple

mathematical calculation to determine the proper classification of the subject

merchandise.  *Harak*, 30 CIT at 915; *see* Additional U.S. Note 7, Chapter 69, HTSUS

("For the purposes of headings 6911 . . . an article is a single tariff entity which may

consist of more than one piece.").  Plaintiff's failure to make this calculation does not

indicate that question 39 is ambiguous.  This calculation indicates that the merchandise

is classified properly under subheading 6911.10.2500, rather than subheading

6911.10.1500, as plaintiff argues, and consequently that answer choice (A) is correct.

In addition, Customs determined reasonably that plaintiff's selection of answer choice (B) is not correct.  Answer choice (B) provides that the proper classification of the subject merchandise is subheading 6911.10.3810 of the HTSUS, which applies to "[o]ther . . . teacups and saucers . . . not over 22.9 cm in maximum" that have an "[a]ggregate value over $200."  HTSUS, 6911.10.3810.  The use of the term "[o]ther" indicates that merchandise classified under this subheading 6911.10.3810 is made of "[o]ther" than bone chinaware.  *Id.*  However, pursuant to Additional U.S. Note 5(b), the merchandise described in question 39 is made of "bone chinaware."  Additional Note 5(b), Chapter 69, HTSUS.  On this basis, Customs determined reasonably that this merchandise is not classified properly under subheading 6911.10.3810 and that answer choice (B) is not correct.

Accordingly, Customs' decision to deny plaintiff credit for question 39 was supported by substantial evidence.

### E.      Question 57

Last, plaintiff appeals Customs' decision to deny plaintiff credit for question 57 on the April 2018 exam.  *See* Pl. Br. at 11.  Question 57 states:

Which of the following shipments does not contain restricted gray market merchandise as defined in 19 C.F.R. § 133.23?

A. A shipment of jeans, bearing a trademark registered and recorded in the United States, applied by a U.S. trademark owner's foreign licensee independent of the U.S. trademark owner.

B. A shipment of shoes, bearing a trademark registered and recorded in the United States, applied under the authority of a foreign trademark owner other than the U.S. owner, a parent or subsidiary of the U.S. owner, or a party under common ownership or control with the U.S. owner, to whom the U.S. owner sold the foreign title.

C. A shipment of jackets, bearing a trademark registered and recorded in the United States, applied under the authority of a foreign trademark owner other than the U.S. owner, a parent or subsidiary of the U.S. owner, or a party under common ownership or control with the U.S. owner, from whom the U.S. owner acquired the domestic title.

D. A shipment of books, bearing a U.S. registered and recorded trademark applied by a foreign subsidiary of the U.S. owner, determined by CBP to be different from the books authorized by the U.S. owner for importation or sale in the United States. The books feature a conspicuous label that they are not authorized by the U.S. owner for importation into the U.S. and are physically and materially different from the authorized ones.

E. A shipment of shirts, bearing a genuine foreign trademark owned by a foreign trademark owner, identical with or substantially indistinguishable from a trademark registered and recorded in the United States. The shipment was imported without the authorization of the U.S. owner who is not related to the foreign owner.

Am. Admin. R., Ex. N, at *25.

### 1.    Positions of the parties

Customs designated answer choice (E) as the correct response to question 57. *See* Def. Resp. Br. at 20.  Plaintiff selected answer choice (D).  *See* Pl. Br. at 12*.*

Plaintiff argues that Customs' decision to deny plaintiff credit for question 57 was not supported by substantial evidence.  *See id.* at 13.  Plaintiff contends first that his selection of answer choice (D) is correct because the shipment described in this answer choice does *not* contain restricted gray market merchandise as defined in 19 C.F.R. § 133.23.  *See id.* at 12.  19 C.F.R. § 133.23(a) provides:

§ 133.23 RESTRICTIONS ON IMPORTATION OF GRAY MARKET ARTICLES.

(a) RESTRICTED GRAY MARKET ARTICLES DEFINED.  "Restricted gray market articles" are foreign-made articles bearing a genuine trademark or trade name identical with or substantially indistinguishable from one owned and recorded by a citizen of the United States or a corporation or association created or organized

within the United States and imported without the authorization of the U.S. owner.  "Restricted gray market goods" include goods bearing a genuine trademark or trade name which is:

> (1) INDEPENDENT LICENSEE.  Applied by a licensee (including a manufacturer) independent of the U.S. owner; or
>
> (2) FOREIGN OWNER.  Applied under the authority of a foreign trademark or trade name owner other than the U.S. owner, a parent or subsidiary of the U.S. owner, or a party otherwise subject to common ownership or control with the U.S. owner . . . from whom the U.S. owner acquired the domestic title, or to whom the U.S. owner sold the foreign title(s); or
>
> (3) "LEVER-RULE".  Applied by the U.S. owner, a parent or subsidiary of the U.S. owner, or a party otherwise subject to common ownership or control with the U.S. owner . . . to goods that [Customs] has determined to be physically and materially different from the articles authorized by the U.S. trademark owner for importation or sale in the U.S.

19 C.F.R. § 133.23(a)(1)-(3).

Plaintiff argues that the shipment described in answer choice (D) does not contain restricted gray market merchandise for three reasons: (1) the labels are "attached in close proximity to the trademark;" (2) the labels "appear[] in [their] most prominent location on the books;" and (3) the described books are "different from the books authorized by the U.S. owner for importation or sale in the United States."  Pl. Br. at 12.  According to plaintiff, merchandise that bears the foregoing characteristics does not constitute restricted gray market merchandise within the meaning of 19 C.F.R. § 133.23.  *See id.*  On this basis, plaintiff contends that answer choice (D) is correct.  *See id.*

Next, plaintiff contends that Customs' selection of answer choice (E) is not correct because the shipment described in this answer choice *contains* restricted gray

market merchandise.  *See id.*  Answer choice (E) describes a "shipment of shirts, bearing a genuine foreign trademark owned by a foreign trademark owner, identical with or substantially indistinguishable from a trademark registered and recorded in the United States[,] . . . [which] was imported without the authorization of the U.S. owner who is not related to the foreign owner."  Am. Admin. R., Ex. N, at *25.  Based on this description, plaintiff argues that this merchandise falls within the "exact definition" of restricted gray market merchandise as set forth in 19 C.F.R. § 133.23(a).  Pl. Reply Br. at 9.

In response, defendants challenge first plaintiff's argument with respect to answer choice (D).  Defendants argue that the three characteristics of the merchandise as described by plaintiff "have no bearing on the definition of 'gray market' goods as set forth in 19 C.F.R. § 133.23(a)."  Def. Resp. Br. at 20 (citing Pl. Br. at 12).  Further, defendants argue that the merchandise described in answer choice (D) meets the definition of restricted gray market merchandise provided in 19 C.F.R. § 133.23(a).  *See id.*

Turning to answer choice (E), defendants contend that this answer choice is correct because the described merchandise bears "a genuine *foreign* trademark."  Am. Admin. R., Ex. N, at *25 (emphasis supplied).  According to defendants, 19 C.F.R. § 133.23(a) provides that restricted gray market merchandise comprises only merchandise that bears a "genuine trademark."  Def. Resp. Br. at 20.  Defendants argue that "regulations of foreign trademarks and their owners are not found in 19 C.F.R. § 133.23 because such facts have no bearing on the definition of a gray market good."  *Id.*

Consequently, defendants assert that Customs determined reasonably that the shipment described in answer choice (E) does not fall within "the definition of a gray market good" and that this answer choice is correct. *Id.* at 20-21.

Accordingly, defendants argue that Customs' decision to deny plaintiff credit for question 57 was supported by substantial evidence. *See id.* at 21.

### 2.    Analysis

The court concludes that Customs' decision to deny plaintiff credit for question 57 was not supported by substantial evidence.[10]

The court addresses first the parties' arguments with respect to answer choice (D).  As noted, plaintiff argues that the shipment described in answer choice (D) does *not* contain restricted gray market merchandise based on three characteristics, Pl. Br. at 12, while defendants contend that the three characteristics that plaintiff identifies "have no bearing on the definition of 'gray market' goods as set forth in 19 C.F.R. § 133.23(a)."  Def. Resp. Br. at 20.

---

[10] Based on the foregoing analysis of questions 5, 27, 33 and 39, plaintiff has not met the "minimum threshold" to establish entitlement to credit for at least three questions to attain a passing score on the CBLE.  *Harak*, 30 CIT at 929.  Nonetheless, the court offers a brief statement of its analysis and conclusions with respect to question 57.  This approach highlights that the fullest possible consideration has been given to Mr. Chae's claims and appeals in this matter.  This approach is also consistent with past decisions of the Court.  *See id.* (concluding that a contested question "technically ha[d] two answers," despite determining that the receipt of credit for the question would not enable the plaintiff to attain a passing score on the exam).

The books described in answer choice (D) satisfy the requirements set forth in 19

C.F.R. § 133.23(b) and accordingly do not constitute restricted gray market

merchandise.  19 C.F.R. § 133.23(b) provides:

> (b) LABELING OF PHYSICALLY AND MATERIALLY DIFFERENT GOODS.  Goods
> determined by [Customs] to be physically and materially different under the
> procedures of this part, bearing a genuine mark applied under the authority
> of the U.S. owner, a parent or subsidiary of the U.S. owner, or a party
> otherwise subject to common ownership or control with the U.S. owner . . .
> shall not be detained under the provisions of paragraph (c) of this section
> where the merchandise or its packaging bears a conspicuous and legible
> label designed to remain on the product until the first point of sale to a retail
> consumer in the United States stating that: "This product is not a product
> authorized by the United States trademark owner for importation and is
> physically and materially different from the authorized product."  The label
> must be in close proximity to the trademark as it appears in its most
> prominent location on the article itself or the retail package or container.
> Other information designed to dispel consumer confusion may also be
> added.

19 C.F.R. § 133.23(b).

Pursuant to 19 C.F.R. § 133.23(c), merchandise that bears the characteristics set

forth in 19 C.F.R. § 133.23(b) shall not be subject to restrictions such as "deni[al] [of]

entry" and "detention."  19 C.F.R. § 133.23(c); *see XYZ Corp. v. United States*, 41 CIT

__, __, 253 F. Supp. 3d 1257, 1269 (2017) ("'Importation of the . . . subject gray market

[merchandise] is restricted, unless the labeling requirements of 19 CFR § 133.23(b)

have been satisfied.'" (quoting U.S. Customs and Border Protection Grant of "Lever–

Rule" Protection, 51 Cust. Bull. & Dec. No. 12 at 1 (Mar. 22, 2017))).

The merchandise described in answer choice (D) bears each of the

characteristics set forth in 19 C.F.R. § 133.23(b).  First, the books described in answer

choice (D) are "physically and materially different" from books that are authorized by the

U.S. owner for importation into the United States.  Am. Admin. R., Ex. N, at *25.

Second, the books bear a "conspicuous label" that indicates that the books "are not

authorized by the U.S. owner for importation into the U.S. and are physically and

materially different from the authorized ones."  *Id.*  Third, along with this label, the books

feature a "U.S. registered and recorded trademark."  *Id.*  Based on the fact that the

articles described in answer choice (D) are books, rather than articles of a larger

dimension, it was not reasonable for Customs to reject plaintiff's position that the labels

featured on each book are in "close proximity" to the trademarks.  *Id.*; 19 C.F.R. §

133.23(b).  Last, the books "bear[] a U.S. registered and recorded trademark applied by

a foreign subsidiary of the U.S. owner."  Am. Admin. R., Ex. N, at *25.  19 C.F.R. §

133.23(b) requires that the goods "bear[] a genuine mark applied under the authority of

the U.S. owner, a parent or subsidiary of the U.S. owner, or a party otherwise subject to

common ownership or control with the U.S. owner."  19 C.F.R. § 133.23(b).

Customs' regulations do not specify that the phrase "subsidiary of the U.S.

owner" applies only to a U.S. subsidiary.  *Id.*; Am. Admin. R., Ex. N, at *25.  Moreover,

the regulatory history of 19 C.F.R. § 133.23(b) supports this conclusion.  *See* Gray

Market Imports and Other Trademarked Goods, 64 Fed. Reg. 9,058, 9,058-59 (Dep't of

the Treasury Feb. 24, 1999) (final rule).  Accordingly, it was not reasonable for Customs

to reject the conclusion that the labeling requirements of 19 C.F.R. § 133.23(b) apply

with respect to a foreign subsidiary of the U.S. owner.

On this basis, it was not reasonable for Customs to reject the position that the

merchandise described in answer choice (D) falls within the description provided in 19

C.F.R. § 133.23(b), and, pursuant to 19 C.F.R. § 133.23(c), the merchandise is not

subject to restrictions such as denial of entry or detention.  *See* 19 C.F.R. §§ 133.23(c),

133.25.

       Plaintiff identified correctly that the merchandise described in answer choice (D)

does not constitute "restricted gray market merchandise" within the meaning of 19

C.F.R. § 133.23.  Pl. Br. at 12; 19 C.F.R. § 133.23.  Customs' decision to deny plaintiff

credit for his selection of this answer choice was not reasonable, as Customs did not

address the applicability of 19 C.F.R. §§ 133.23(b) and (c) to question 57 in evaluating

plaintiff's selection.

       Turning to answer choice (E), the court concludes that Customs determined

reasonably that this answer choice is a correct response to question 57.  19 C.F.R. §

133.23(a) defines restricted gray market merchandise as "foreign-made articles bearing

a *genuine trademark* or trade name."  19 C.F.R. § 133.23(a) (emphasis supplied).

Answer choice (E) describes a "shipment of shirts, bearing a *genuine foreign*

*trademark*."  Am. Admin. R., Ex. N, at *25 (emphasis supplied).

       The inclusion of the term "foreign" in the phrase "genuine foreign trademark" in

answer choice (E) distinguishes the merchandise described in this answer choice from

merchandise that constitutes "restricted gray market merchandise" pursuant to 19

C.F.R. § 133.23(a).  *Id.*  Further, 19 C.F.R. § 133.23(a) is located in Part 133 of Title 19

of the CFR, which concerns the "the recordation of trademarks, trade names, and

copyrights with *the U.S. Customs and Border Protection*."  19 C.F.R. § 133.0 (emphasis

supplied).  The language of 19 C.F.R. § 133.23(a) and the context within which the

provision is located in Customs' regulations demonstrate that "restricted gray market

merchandise" does not encompass merchandise that bears a foreign trademark.  On

this basis, Customs determined reasonably that answer choice (E) does not contain

restricted gray market merchandise and consequently that this answer choice is correct.

Plaintiff's counsel argued cogently in support of the position that Customs

unreasonably denied plaintiff credit for his selection of answer choice (D).  For the

foregoing reasons, the court concludes that both answer choices (D) and (E) are correct

and that Customs' decision to deny plaintiff credit for question 57 was not supported by

substantial evidence.

## II.     Customs' decision to deny plaintiff a customs broker's license

### A.     Positions of the parties

As discussed *supra* Sections I.A-E, plaintiff contends that he is entitled to credit

for the contested questions such that he "achieved the requisite minimum passing score

of 75%" on the April 2018 exam.  Pl. Br. at 1.  On this basis, plaintiff asserts that

Customs' decision to deny plaintiff a customs broker's license was "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law."  *Id.* at 3; Am. Compl. at

1-2, 14; *Kenny*, 401 F.3d at 1361 n.3 ("[T]he denial of a license is a foregone conclusion

for an unsuccessful examinee.").  Defendants' view is that Customs' "decision not to

grant plaintiff a license due to his failure to attain a passing score on the [CBLE] was not

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

Def. Resp. Br. at 22-23.

### B.    Analysis

In reviewing Customs' decision to deny a customs broker's license, the Court is required to determine whether such a decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see Kenny*, 401 F. 3d at 1361; *Dunn-Heiser*, 29 CIT at 555, 374 F. Supp. 2d at 1279; *Di Iorio*, 14 CIT at 747.  A lawful ground for such a decision is an applicant's failure to pass the CBLE.  *See* 19 U.S.C. § 1641(b)(2); 19 C.F.R. § 111.16(b)(2).

As discussed, a passing score on the CBLE is 75% or higher.  19 C.F.R. § 111.11(a)(4).  In addition, each question on the 80 question exam is worth 1.25% of the total score.  *See* Am. Admin. Rec, Ex. N, at *1.  The Court previously has stated that to appeal successfully a result on the CBLE, an applicant is required to establish entitlement to credit for the "minimum" number of questions that the applicant requires to achieve a passing score.  *Harak*, 30 CIT at 929.  Should the applicant fail to meet this "minimum threshold," then Customs' denial of a customs broker's license is not "arbitrary, capricious, or otherwise not in accordance with law."  *Id.* (citing 5 U.S.C. § 706(2)(A)).

Plaintiff's score on the April 2018 exam is 71.25%.  *See* Am. Admin. R., Ex. L, at *1.  Consequently, to attain a passing score of 75% or higher, plaintiff is required to establish that he is entitled to receive credit for at least three of the five contested questions.  Based on the foregoing analysis, the court concludes that Customs' decision to deny plaintiff credit for four of the five contested questions was supported by substantial evidence.  Accordingly, plaintiff does not meet the "minimum threshold" to

establish entitlement to credit for at least three questions.  *Harak*, 30 CIT at 929.  For

this reason, Customs' decision to deny plaintiff's appeal was not "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A);

*see* 19 C.F.R. § 111.16(b)(2).

## III.    EAJA attorney fees and other expenses

### A.    Positions of the parties

The EAJA provides that "a court shall award to a prevailing party other than the

United States fees and other expenses . . . unless the court finds that the position of the

United States was substantially justified or that special circumstances make an award

unjust."  28 U.S.C. § 2412(d)(1)(A).  Plaintiff contends that, provided that he prevails in

the instant appeal, he also is entitled to attorney fees and other expenses under the

EAJA.  28 U.S.C. § 2412(d)(1)(A); Pl. Br. at 13-14.  Plaintiff argues that defendants'

position in this appeal was not "substantially justified" because the contested questions

— as well as Customs' decision to deny plaintiff credit for those questions — were

"vague, ambiguous, and unfairly confusing."  *Id.* at 14.  Defendants argue for several

reasons that the court should deny plaintiff's request for attorney fees and other

expenses under the EAJA.  *See* Def. Resp. Br. at 22-23 (citing 28 U.S.C. §

2412(d)(1)(A)).

### B.    Analysis

The EAJA provides that "a court shall award to a *prevailing party* other than the

United States fees and other expenses . . . unless the court finds that the position of the

United States was substantially justified or that special circumstances make an award unjust."[11]  28 U.S.C. § 2412(d)(1)(A) (emphasis supplied).

Based on the foregoing analysis, plaintiff is not a "prevailing party" within the meaning of the EAJA.  *Id.*; *see Former Emps. of IBM Corp., Glob. Servs. Div. v. U.S. Sec'y of Lab.*, 30 CIT 1591, 1593, 462 F. Supp. 2d 1239, 1241-42 (2006), *aff'd sub nom. Former Emps. of IBM Corp. v. Chao*, 292 F. App'x 902 (Fed. Cir. 2008) ("According to the Supreme Court, a 'prevailing party' for the purposes of fee-shifting statutes, such as the EAJA, must have obtained sought-after relief through . . . a 'judgment[] on the merits' of its case.") (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & H.R.*, 532 U.S. 598, 604 (2001)).  Whether plaintiff is a "prevailing party" is a threshold consideration with respect to relief under the EAJA, and consequently the court is not required to determine whether defendants' position was "substantially justified" or whether "special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  Accordingly, the court denies plaintiff's request for attorney fees and other expenses under the EAJA.  *See DePersia,* 33 CIT at 1112, 637 F. Supp. 2d at 1252-53 (concluding that the plaintiff's "request for relief under the EAJA cannot lie" because the denial of the plaintiff's appeal was "not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").

---

[11] In addition, to be eligible for relief under the EAJA, the party requesting relief must not have had a net worth that exceeds $2,000,000 at the time the civil action was filed.  *See* 28 U.S.C. § 2412(d)(2)(B).  The parties do not contest that plaintiff did not have a net worth exceeding $2,000,000 at the time he filed the instant appeal.

## CONCLUSION

For the foregoing reasons, the court concludes that Customs' decision to deny plaintiff credit for questions 5, 27, 33 and 39 on the April 2018 exam was supported by substantial evidence, and consequently that Customs' decision to deny plaintiff a customs broker's license was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  In addition, the court concludes that plaintiff is not entitled to attorney fees and other expenses under the EAJA.

Accordingly, it is hereby

**ORDERED** that plaintiff's motion for judgment on the agency record pursuant to USCIT Rule 56.1 is denied; and it is further

**ORDERED** that judgment is entered for defendants and the action is dismissed.


/s/      Timothy M. Reif
Timothy M. Reif, Judge

Dated: June 6, 2022
           New York, New York